Michael C. Geraghty, ABA#7811097
Email: Geraghty@oles.com
William G. Cason, ABA#2009083
Email: Cason@oles.com

*Attorneys for Alaska Railroad Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION,<br><br>      Plaintiff,<br><br> v.<br><br>FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS ASSOCIATION, A NON-PROFIT; and also all other Persons or Parties Unknown Claiming a Right, Title, Estate, Lien, or Interest in the Real Estate Described in the Complaint in this Action,<br><br>      Defendant. | Case No. 3:20-cv-00232-JMK |

## MOTION FOR SUMMARY JUDGMENT

Plaintiff Alaska Railroad Corporation, by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56, respectfully moves the Court for an Order granting summary judgment on the issue of its exclusive-use interest in the Railroad Right-of-Way conveyed by Federal Patent 50-2006-0363.

This Motion is supported by the attached Memorandum of Law and exhibits thereto.

**MOTION FOR SUMMARY JUDGMENT** - Page 1 of 2
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 1 of 24

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
Attorneys for Plaintiff

Dated:  November 20, 2020     By:  s/ Michael C. Geraghty
                                   Michael C. Geraghty, ABA#7811097
                                   William G. Cason, ABA#2009083

CERTIFICATE OF SERVICE
I hereby certify that on November 20, 2020, a copy of the
foregoing document was served electronically on the following
party(ies):

Donald W. McClintock, III
Eva Rivka Gardner
Thomas E. Meacham
*Attorneys for Flying Crown Subdivision*

OLES MORRISON RINKER & BAKER LLP

s/ Michael C. Geraghty

4831-2495-2502, v. 11

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

**MOTION FOR SUMMARY JUDGMENT** - Page 2 of 2
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Michael C. Geraghty, ABA#7811097
Email: Geraghty@oles.com
William G. Cason, ABA#2009083
Email: Cason@oles.com

*Attorneys for Alaska Railroad Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

ALASKA RAILROAD CORPORATION,

                    Plaintiff,

    v.

FLYING CROWN SUBDIVISION
ADDITION NO. 1 AND ADDITION NO.
2 PROPERTY OWNERS ASSOCIATION,
A NON-PROFIT; and also all other
Persons or Parties Unknown Claiming a
Right, Title, Estate, Lien, or Interest in the
Real Estate Described in the Complaint in
this Action,

                    Defendant.          Case No. 3:20-cv-00232-JMK

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

In 1982, Congress passed the Alaska Railroad Transfer Act ("ARTA"), requiring the

federal government to transfer the Alaska Railroad from federal to state ownership. This

transfer included the government's <u>entire</u> interest in the Alaska Railroad's right-of-way

("ROW"), a 200-foot wide strip of land running coextensively with the Railroad's track and

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

comprising roughly 12,000 acres in total. At the time ARTA was passed, the federally-owned Alaska Railroad had been in continuous operation since approximately 1918, and the federal government had held and exercised the right to exclusive use and possession of the Railroad's ROW since then.

Following ARTA's passage, the federal government's interest in the ROW was transferred to the state of Alaska. Today, the Alaska Railroad Corporation ("ARRC") holds the same right to exclusive use and possession of the ROW that was held by the federal government at the time of transfer. Defendant Flying Crown Homeowner's Association ("FCHA") has disputed this – formally challenging the scope of ARRC's interest in its ROW and claiming it constitutes a cloud on their title. This action is therefore brought to quiet title to the ROW and to affirm ARRC's interest in the land.

## II.    FACTUAL BACKGROUND

### A.    Creation of the Alaska Railroad and Reservation of the ROW.

The Alaska Railroad is the only railroad ever constructed, owned and operated by the United States federal government. Accordingly, the history of its establishment, operation and eventual transfer to the state of Alaska is unique. During the early 1900s, several privately-owned railroads were built and operated in the Territory of Alaska. Each of these railroads ultimately failed or faced dire financial circumstances.[1]

---

[1] *The Alaska Railroad: Probing the Interior*, by Charles Michael Brown (ed. Michael S. Kennedy), October 1975 ("Brown"), at 27-28. If the Court or Defendants have difficulty locating this or any other materials referenced herein, Plaintiff will gladly provide copies on request.

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 2 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK    Document 13    Filed 11/20/20    Page 4 of 24

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106  Fax: (907) 258-5519

Having seen the difficulties faced by private entities constructing and operating railroads in Alaska and recognizing the importance of rail service to the development of the Territory, Congress took a different approach. It passed legislation – the Alaska Railroad Act of 1914 – authorizing the creation of a federally-owned and operated railroad in Alaska.[2]

The 1914 Act authorized and directed the President to take a broad range of actions to locate, construct and operate a railroad on a route of up to 1,000 miles in the Territory of Alaska.

For instance, the 1914 Act authorized the federal government to purchase or otherwise acquire real and personal property, including through eminent domain, and "to acquire rights of way, terminal grounds, and all other rights" necessary for creation of the Railroad.[3] The Act also required the federal government to <u>reserve</u> a ROW for the Railroad in any land patents issued in the territory of Alaska. Specifically, it required that:

> [I]n all patents for lands hereafter taken up, entered or located in the Territory of Alaska <u>there shall be expressed that there is reserved to the United States a right of way for the construction of railroads</u>, telegraph and telephone lines to the extent of one hundred feet on either side of the center line of any such road.[4]

The federal government wasted no time in complying with Congress's directives. Pursuant to the 1914 Act, rights-of-way were established between the seaport of Seward and

---

[2] Act of March 12, 1914, 43 U.S.C. 975 *et seq*.; 38 Stat. 305 ("1914 Act"), repealed by ARTA, Pub.L. 97-468, Title VI, §615(a)(1).

[3] 1914 Act, Section 1.

[4] 1914 Act, Section 1 (emphasis added).

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 3 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 5 of 24

the interior mining community of Fairbanks. Preliminary construction began on the railroad in 1915.[5]  The Alaska Railroad's "golden spike" was driven by President Harding in Nenana in July 1923.[6]

The original ROW of the federal Alaska Railroad included the portion crossing what is now the Flying Crown Subdivision. For several decades after its construction – from approximately 1918 to ARTA's passage in 1982 – the federal government operated the Alaska Railroad, including along this section of the ROW. That use has continued, uninterrupted, since the transfer of the Alaska Railroad and its ROW to state ownership.

**B.     The Federal Government Reserved its ROW in the Sperstad Patent, Pursuant to the 1914 Act**

The United States issued Federal Land Patent #1128320 on February 15, 1950, to FCHA's predecessor in interest, Thomas Sperstad.[7]  Patent #1128320 conveyed a tract of land out of federal ownership but did not impact the continued operation of the Railroad across that land in any way.  The Patent issued to Mr. Sperstad reserved the government's right to continue using its ROW, specifically reserving a right-of-way for "railroads, telegraph and telephone lines in accordance with the [1914 Act]." Ex. A, p. 1. The Patent also reserved rights-of-way for "roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under authority of the United States or of any State created out of the Territory of Alaska[.]" *Id.*

---

[5] Brown, pp. 35-41.

[6] Brown, p. 49.

[7] A copy of Patent #1128320 is attached hereto as **Exhibit A.**

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

Thus, the newly issued Patent allowed the Railroad to continue operating as it had already been doing for decades, by unambiguously reserving the ROW in question.

### C.   The Federal Government Transferred its Entire Interest in the Alaska Railroad's ROW to State Ownership

In 1982, Senator Ted Stevens, along with co-sponsor Senator Frank Murkowski, introduced legislation into Congress authorizing the transfer of the Alaska Railroad, including all of its real and personal property, to the state of Alaska. As the legislation worked its way through Congress, one of the most thoroughly discussed issues was the appropriate level of title that would pass to Alaska in lands owned by the Railroad, including its ROW.

Congressional committees determined that most of the federally-owned Alaska Railroad, including its ROW, was held in fee simple title by the United States. Thus, the original intent of Congress in passing ARTA was that most federal Alaska Railroad land would be transferred to the State in fee simple. As the Senate Committee on Commerce, Science and Transportation stated following hearings on the bill:

> [ARTA] would convey to the State a fee interest in the 200-foot strip comprising the railroad track right-of-way, amounting to roughly 12,000 acres. This fee estate is recognized by the Committee to be the current interest of the Alaska Railroad derived from common practice and authorized under section 1 of the March 12, 1914 Alaska Railroad Act.[8]

---

[8] *See* Report No. 97-479, Senate Committee on Commerce, Science and Transportation, 97th Congress, 2d Session June 22, 1982 ("Report No. 97-479") at 8; *see also* Report No. 97-479, pp. 1-14 (ARTA "provides for the conveyance of the track right-of-way in fee" and "[t]he track right-of-way is to be transferred in fee simple.") Notably, the 12,000-acre estimate for the area of the ROW to be transferred in fee simple contained in Report No. 97-

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 5 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 7 of 24

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

Therefore, the Committee recognized that the 1914 Act, and the subsequent operation and use of the ROW by the Alaska Railroad, resulted in the federal government owning fee simple title in the ROW. The Committee went on to explain the reason for conveying the ROW in fee: "The reported bill . . . ensures conveyance of the track right-of-way in fee so that the State can continue to operate the railroad."[9]

As the proposed ARTA progressed through Congress, however, it was acknowledged that some Alaska Railroad lands could be subject to third-party claims.[10] Congress recognized that the proposed transfer legislation must set forth a process for resolving third-party claims – and that it was critical for the United States to provide the State of Alaska with exclusive control of the ROW when it did so.[11] As Senator Ted Stevens explained in describing ARTA's third-party claims adjudication process, just a few weeks before ARTA passed Congress:

> On the date of the transfer, the State would be granted fee title to lands not subject to such claims of valid existing rights pending expedited adjudication, and, with respect to lands so subject, an operating license to ensure that operations of the railroad are not affected in any way by the new process.[12]

479 nearly equals the approximate extent of the entire Alaska Railroad ROW transferred to ARRC in 1985.

[9] Report No. 97-479, p.8 (emphasis added).

[10] *See* Report No. 97-479, p. 7.

[11] *See* Congressional Record-Senate, Dec. 21, 1982, at S 15956 (remarks of Senator Ted Stevens).

[12] Congressional Record-Senate, Dec. 21, 1982, at S 15956.

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 6 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

Senator Stevens emphasized that ARTA's claims adjudication process would <u>not</u> interfere with the State-owned railroad receiving exclusive rights in the ROW:

> The concept of an exclusive use easement also is introduced in the substitute. This defined interest represents <u>the minimal interest</u> the State is to receive in the Alaska Railroad right-of-way <u>following completion of</u> the expedited adjudication process. . . <u>It is also</u> the interest the State will receive through the Denali National Park and Preserve. In other areas, where the right-of-way crosses land owned in fee by the Federal Government, the full fee title to the right-of-way will be transferred to the State. . . Essentially, [the exclusive use easement] is defined to ensure that <u>the State-owned railroad will receive exclusive and complete control</u> over land traversed by the right-of-way.[13]

The plain language of ARTA itself confirms that ARRC was to receive exclusive control of the entire ROW: "Congress finds that exclusive control over the right-of-way by the Alaska Railroad has been and continues to be necessary to afford sufficient protection for safe and economic operation of the railroad."[14]  ARTA instructed that "<u>all</u> rail properties of the Alaska Railroad" were to be transferred to state ownership, and where the ROW crossed lands that had been transferred from federal ownership prior to ARTA's passage, the federal government would transfer "<u>not less than</u> an exclusive-use easement" to the state.[15]

An exclusive use easement is defined within ARTA as including:

---

[13] Congressional Record-Senate, Dec. 21, 1982, at S 15956 (emphasis added). *See also* Report No. 97-479, p. 9 (in adjudicating third party claims, the Secretary of the Interior "is directed to consider the findings and policies of this legislation, including the importance of transferring the right-of-way in fee to the continued operation of the railroad. . . [T]his determination is critical to the future of the railroad and must be made expeditiously.")

[14] 45 U.S.C. § 1205(b)(4)(A)(ii) (emphasis added).

[15] 45 U.S.C. § 1203(a); 45 U.S.C. § 1205(b)(4)(B) (emphasis added).

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 7 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 9 of 24

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

(A)    The exclusive right to use, possess, and enjoy the surface estate of the land subject to [the] easement for transportation, communication, and transmission purposes and for support functions associated with such purposes;

(B)    The right to use so much of the subsurface estate of the lands subject to [the] easement as is necessary for the transportation, communication, and transmission purposes and associated support functions for which the surface of such lands is used;

(C)    Subjacent and lateral support of the lands subject to the easement; and

(D)    The right (in the easement holder's discretion) to fence all or part of the lands subject to [the] easement and to affix track, fixtures, and structures to such lands and to exclude other persons from all or part of such lands.[16]

As required by ARTA, the federal government transferred its full interest in the ROW to the state of Alaska. The portion of the ROW crossing through the Flying Crown Subdivision (and disputed by FCHA here) was fully transferred (following an interim conveyance) to state ownership in Patent No. 50-2006-0363, attached hereto as **Exhibit B**. That Patent states plainly: "Pursuant to [ARTA], the right, title, and interest granted by the United States in the above-described real property that is located within the right-of-way of the Alaska Railroad shall be not less than an exclusive-use easement." Exhibit B, p. 2.

## D.    FCHA Challenges ARRC's Interest in the ROW

On October 23, 2019, ARRC received a letter from FCHA claiming that the federal transfer of the Alaska Railroad's ROW had "attempted to award property rights no longer owned by the federal government." Specifically, FCHA objected to the transfer of an exclusive interest in the ROW to ARRC.

---

[16] 45 U.S.C. § 1202(6).

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 8 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

FCHA's letter demanded that "ARRC immediately proclaim, by means of a legally recordable document, that it relinquishes any and all claim to 'exclusive use' of the right-of-way[.]" This demand, that ARRC relinquish the right to control its ROW, as guaranteed by ARTA, is the impetus for the present action. As discussed at greater length below, this is a critical safety and operational issue. Given the inherently dangerous nature of railroad operations – especially through residential areas – ARRC cannot operate safely or efficiently without retaining authority over its ROW.

### III.   STATEMENT OF ISSUES

1.  Did the federal government hold and reserve rights equivalent to at least an "exclusive use easement" in the Alaska Railroad's ROW when it issued the Sperstad Patent? (Answer: Yes, it did).

2.  Did the federal government transfer at least an "exclusive use easement" in the ROW when it transferred the Alaska Railroad to state ownership? (Answer: Yes, it did).

### IV.   LEGAL ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and of identifying those portions of the record which demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party can only overcome such

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 9 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

**OLES MORRISON RINKER & BAKER LLP**
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

a showing by adducing competent, admissible facts that could support a verdict by the factfinder in the non-moving party's favor on each and every element of its claim. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the non-moving party fails to adduce evidence supporting an essential element of its claim, then evidence on the other elements becomes immaterial, and summary judgment should be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

In this case, there are no disputed issues of material fact. Rather, the dispute between the parties turns on two legal issues: (1) the nature of the interest <u>reserved</u> by the federal government in the ROW when it issued the Sperstad Patent; and (2) the nature of the interest that was to be <u>conveyed</u> to ARRC in the ROW under ARTA. As such, this case should be resolved on summary judgment.

**B. The federal government reserved a railroad right-of-way that entitled it to exclusive use and possession of the ROW when it issued the Sperstad Patent in 1950.**

The Sperstad Patent conveyed 120 acres of land to FCHA's predecessor in interest but reserved to the United States its ROW for "railroads, telegraph and telephone lines in accordance with the Act of March 12, 1914."[17] Both when the Sperstad Patent was granted in 1950, and when Congress passed the 1914 Act, railroad rights-of-way were a well-defined legal concept that necessarily included rights to exclusive possession and control of all areas

---

[17] Exhibit A, p. 1.

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

within the ROW.[18]  Nothing in the 1914 Act or the Sperstad Patent limited this definition in any way. It is therefore clear that the railroad ROW reserved in the Sperstad Patent included broad rights to exclusive use and control, which were held – and exercised – by the federal government prior to the Railroad's transfer.

> 1. **The right-of-way reserved by the federal government included the maximum interest that a railroad right-of-way could reasonably entail**

The 1914 Act required that, in all land patents granted in the Territory of Alaska, there would be "reserved to the United States a right of way for the construction of railroads . . . to the extent of one hundred feet on either side of the center line of any such road."[19] The legal scope of the railroad ROW was not defined in the Act, but rather was a well-defined and understood term at the time the Act was passed. Absent any clear indications to the contrary, Congress is presumed to have adopted that settled understanding in the 1914 Act. *See Morissette v. United States*, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice,

---

[18] *See e.g.,* G. Thompson, Commentaries on the Modern Law of Real Property (1965), § 381 at 503, 512 ("a railroad right-of-way [generally] partakes more of the nature of an estate in fee than an easement. A railroad right-of-way includes the actual possession or the right to the actual possession of the entire surface for every proper use and purpose in construction and operation of the road.") *W. Union Tel. Co. v. Pennsylvania R. Co.*, 195 U.S. 540, 570 (1904) ("A railroad's right of way has, therefore, the substantiality of the fee, and it is private property. . . It cannot be invaded without guilt of trespass."); *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 272 (1903) ("The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad.")

[19] Act of March 12, 1914, 43 U.S.C. 975 *et seq.*; 38 Stat. 305 ("1914 Act"), repealed by ARTA, Pub.L. 97-468, Title VI, §615(a)(1).

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.")

Additionally, the property rights granted to FCHA's predecessor in interest in the Sperstad Patent must be construed narrowly, because it was a grant of right from a sovereign grantor (the United States) to a private citizen (Thomas Sperstad). As stated by the Supreme Court, "any ambiguity in [such] a grant is to be resolved favorably to a sovereign grantor – nothing passes but what is conveyed in clear and explicit language." *Great N. R. Co. v. United States* 315 U.S. 262, 272 (1942) (internal citation omitted).

Thus, in determining the scope of the ROW reserved by the federal government in the Sperstad Patent (which explicitly refers to and incorporates the 1914 Act) the court should: (1) look to the meaning of a railroad "right-of-way" as that term was understood at the time of the 1914 Act; and (2) resolve any ambiguities in favor of the United States as sovereign grantor. Applied here, that approach inexorably leads to a finding that the federal government reserved a ROW equivalent to the type of "limited fee" described in *N. Pac. Ry. Co. v. Townsend,* 190 U.S. 267, 271 (1903) (finding that perpetual grant of a railroad right-of-way was "[i]n effect the grant . . . of a limited fee.")

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

## 2. Railroad rights-of-way have long been understood to include rights to exclusive use and control

A "right-of-way" in the context of railroads is a legal term of art, with an elevated meaning from how the term is used in other contexts. *See State v. Oregon Short Line R. Co.*, 617 F. Supp. 207, 210 (D. Idaho 1985) ("The term 'right-of-way,' in the context of railroad property interests, is a term of art signifying an interest in land which entitles the railroad to the exclusive use and occupancy in such land.") (citing 65 Am.Jur.2d § 73 at p. 385 (1972)); *Joy v. City of St. Louis*, 138 U.S. 1, 44 (1891) ("the term 'right of way' has a two-fold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed.").[20]

The legal rights attaching to a *railroad* ROW mirror those of a fee owner, and include the right to uninterrupted and exclusive possession, use, and control of the surface of the land within the ROW.[21] Thus, as long as a railroad company occupies any portion of its

---

[20] *See also* Black's Law Dictionary, 5th Edition 1979 ("The term 'right of way' sometimes is used to describe a right belonging to a party to pass over land of another [i.e. an easement], but it is also used to describe that strip of land upon which railroad companies construct their roadbed, and when so used, the term refers to the land itself, not the right of passage over it.")

[21] 74 C.J.S. Railroads § 225 (2002) (emphasis added; footnotes omitted). *See also* 65 Am.Jur.2d, Railroads, §104, at 403 (Railroad right-of-way easement is essentially different from any other in that it requires exclusive occupancy).

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 13 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

right-of-way, it has the exclusive use and right of control coextensive with the ROW's boundaries.[22] More than a century of Supreme Court precedent affirms this rule.

For instance, in *Western Union Telegraph Company v. Pennsylvania Railroad Company*, the Supreme Court held that:

> A railroad right-of-way is a very substantial thing. It is more than a mere right of passage.   [A right-of-way] is more than an  easement. . . [I]f a railroad's right-of-way was an easement it was "one having the attributes of the fee, perpetuity and exclusive use and possession. . . A railroad's right of way has, therefore, the substantiality of the fee, and it is private property, even to the public, in all else but an interest and benefit in its uses. It cannot be invaded without guilt of trespass. It cannot be appropriated in whole or part except upon the payment of compensation."[23]

Although different courts have conceptualized railroad rights-of-way as either "easements" or "limited fees" – the rule that a railroad holds the right to exclusive use and possession of its ROW has remained unchanged. In *New Mexico v. United States Trust Co. of New York*, the Supreme Court emphasized that whether a railroad's right-of-way was a fee interest or an easement was immaterial to the substantive rights attached to it, at least during the ROW's period of active use: "if it may not be insisted that the fee [in the ROW] was granted, surely more than an ordinary easement was granted—one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee." 172 U.S. 171 (1898).

_____

[22] *Id.*

[23] 195 U.S. 540, 570 (1904) (emphasis added).

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 14 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 16 of 24

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

Although historic case law has more probative value to understanding the nature of the ROW reserved in the Sperstad Patent (pursuant to the 1914 Act), the rule that railroads hold exclusive control over their ROW has remained true throughout the modern era. For instance, in discussing the so-called "incidental use doctrine," in 2018, the Ninth Circuit held that "[i]t is beyond dispute that a railroad right of way confers more than a right to simply run trains over the land," in part because "a railroad company has the exclusive control of all the land within the lines of its roadway." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (holding, *inter alia*, that Congress' grant of a limited fee in the ROW allowed railroad to enter subsurface leases not strictly tied to a "railroad purpose.")

### 3. *Brandt Trust* provides no basis for overturning the settled expectations of the parties regarding ARRC's right-of-way

In 2014, the Supreme Court ruled in *Marvin M. Brandt Revocable Tr. v. United States* that a railroad ROW, which had been *formally abandoned* in the 1990s, terminated and did not revert to the federal government. 572 U.S. 93 (2014). In that opinion, the Court distinguished between various Congressional acts (though not the 1914 Act) which had granted rights-of-way to <u>private</u> railroad companies; finding that earlier acts (pre-1871) had granted a fee interest in railroad rights-of-way, and later acts (from 1875 on) granted an easement. *Id.* at 102. The holding in *Brandt* turned on the Court's finding that an easement merges into the underlying fee upon abandonment, whereas a fee interest may not. *Id.* at 106. Nowhere in *Brandt* did the Court make any findings about the rights associated with an

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 15 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

<u>active and current</u> ROW, such as that held by ARRC, and nowhere did the Court discuss a ROW reserved by the federal government, as was done in the Sperstad Patent.

Rather, the discussion in *Brandt Trust* makes clear that the historic policy shift from fee interests to easements was tied to "public resentment" against private railroads, and the government "granting subsidies in public lands to [privately owned] railroads and other corporations" in the 1870s. *Id.* at 97. As such it has little, if any, bearing on what Congress intended when providing for construction of the publicly owned Alaska Railroad in the 1914 Act.

Nevertheless, FCHA has made clear in its pre-suit communications that it views *Brandt Trust* as presenting an opportunity to dramatically reshape the underlying property interests in ARRC's right-of-way. This view is mistaken, and seriously misreads *Brandt Trust*. Even if *Brandt Trust* provided insight into the type of interest reserved pursuant to the 1914 Act (it does not), *Brandt Trust* did not undercut the rule that even right-of-way *easements* – while in use – allow railroads to exercise the same exclusive control as fee interests. This has been settled law since the Supreme Court's aforementioned 1904 ruling in *Western Union*: "if a railroad's right-of-way [is] an easement it [is] 'one having the attributes of the fee, perpetuity and exclusive use and possession.'" 195 U.S. 540, 570 (1904).

**OLES MORRISON RINKER & BAKER LLP**
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

**C.    The federal government transferred exclusive control over the right-of-way to the state of Alaska in ARTA**

The plain language of ARTA could not be clearer: Congress intended to, and did, transfer exclusive control of the entire Alaska Railroad ROW to ARRC. The statute itself contains an explicit Congressional finding that "exclusive control over the right-of-way by the Alaska Railroad has been and continues to be necessary to afford sufficient protection for safe and economic operation of the railroad," and contained clear instructions for the Secretary of Transportation to convey <u>all</u> rail properties of the Alaska Railroad to state ownership – including any interest held by the federal government in the Alaska Railroad's ROW.[24]

The Interior Board of Land Appeals, when considering a similar issue, held that ARTA required the federal government to convey "all Federal interest to the lands within the Alaska Railroad right-of-way, but at a minimum an exclusive use easement" to the state. *Appeal of Peter Slaiby & Rejani Slaiby*, 186 IBLA 143, 147, 2015 WL 7628320 (2015) (affirming BLM decision to convey exclusive use easement to ARRC across private lands). As such, if the Court finds that the federal government's previous use of the ROW and its reservation in the Sperstad Patent entitled it to exercise exclusive control over the ROW prior to ARTA, it should also find that ARRC holds such right to the ROW today.

---

[24] 45 U.S.C. § 1203(a) (instructing the Secretary to convey all rail properties to the state); 45 U.S.C. § 1202(10) (defining "rail properties of the Alaska Railroad" as including all interest held or reserved in real property); 45 U.S.C. § 1205(b)(4)(A)(ii) (requiring not less than an exclusive use easement to be transferred in portions of the ROW which overlap land conveyed out of federal ownership prior to ARTA's passage.)

## 1. The plain text of ARTA demonstrates that not less than an "exclusive use easement" was transferred

Congress' statement of intent that ARTA must provide "exclusive control over the right-of-way" applied fully to portions of the ROW that overlapped lands which had been previously conveyed from Federal ownership. Specifically, 45 U.S.C §1205(b)(4)(B) states that where lands have been "conveyed from federal ownership prior to January 14, 1983" (or are otherwise subject to claims of valid existing rights by a party other than a Village Corporation), "the conveyance to the State of the Federal interest in such properties. . . <u>shall grant not less than an exclusive-use easement in such properties</u>."[25]

In this case, the lands conveyed in the Sperstad Patent (and now owned by FCHA) fit the definition of lands "conveyed from Federal ownership prior to January 14, 1983." As such, under ARTA, the state received "not less than an exclusive-use easement" in the railroad ROW over those lands.

An "exclusive use easement" is a defined term in ARTA, and mirrors the rights commonly understood to attach to a railroad ROW generally. Under ARTA, an exclusive use easement includes "the exclusive right to use, possess, and enjoy the surface estate of the land . . . [and] [t]he right (in the easement holder's discretion) to fence all or part of the lands subject to [the] easement and to affix track, fixtures, and structures to such lands and to exclude other persons from all or part of such lands."[26]

---

[25] 45 U.S.C. §1205(b)(4)(B) (emphasis added).

[26] 45 U.S.C. § 1202(6).

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

Thus, in the portion of its ROW that crosses land owned by FCHA, ARRC holds the exclusive right to use, possess, and enjoy the surface estate of the land – including the right to fence the ROW, and exclude any others from trespass onto the right-of-way. [27] Looking to the 1914 Act, the federal government's historical use of the ROW before and after 1950, and the nature of the right-of-way reserved by the federal government in the Sperstad Patent, conveyance of an "exclusive use easement" under ARTA did not grant the state any greater right in the ROW than the federal government had previously held.

Rather, an exclusive use easement describes *exactly* the type of interest the federal government possessed. Looking again to *Western Union*, the federal government reserved for itself, at minimum "an easement. . . having the attributes of the fee, perpetuity and exclusive use and possession" in the Sperstad Patent. 195 U.S. 540, 570 (1904). Therefore, the federal government's conveyance of an exclusive use easement to ARRC did not exceed the United States' own rights in the ROW in any way.

---

[27] FCHA provides its members with a runway and an area for parking small planes. This activity encroaches the railroad's ROW, but it has been permitted for many years under a special land use agreement. The most recent version of the agreement was executed in the spring of 2017, and it provides for FCHA's use of "a taxiway and parking area for private aircraft" within the ROW. That agreement also states that by entering into the permit, "neither ARRC nor [FCHA] waives or compromises any legal interest or legal argument that either party may have with respect to the ARRC ROW affected by this Permit." ARRC believes that, beginning with its letter of October 2019, FCHA is challenging the scope of ARRC's claimed interest in its ROW, a right which it reserved in the 2017 special residential land use permit. To be clear, ARRC is *not* seeking to renounce or change the permit, or FCHA's permitted use of the ROW.

**OLES MORRISON RINKER & BAKER LLP**
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

## 2. An exclusive use easement has previously been adjudged to be the *minimum* interest conveyed by ARTA in the ARRC ROW.

This straightforward reading of ARTA is not unique and should not be controversial.

It represents the same conclusion reached by the Interior Board of Land Appeals (IBLA) in

*Slaiby.*[28] In that case, the court considered an appeal from two Anchorage landowners that

were challenging a decision by the Bureau of Land Management (BLM) to issue a patent to

ARRC conveying to it at least an exclusive use easement over land which the appellants held

title to.[29] *Slaiby* 86 IBLA at 146.

The IBLA, limiting its decision to the statutory requirements of ARTA (rather than

the federal government's underlying property rights at the time of conveyance), held

unequivocally that ARTA required an exclusive use easement be conveyed in the ROW. *Id.*

at 148. Specifically, the court wrote that:

> ARTA [requires] if lands within a railroad ROW were conveyed out of Federal ownership prior to January 14, 1983, the U.S. Secretary of Transportation "shall grant not less than an exclusive-use easement in such properties [to ARRC]." . . . The language of ARTA is clear. . . the U.S. Secretary of Transportation must issue a patent to ARRC for not less than an "exclusive-use easement."

---

[28] 86 IBLA 143, 2015 WL 7628320 (2015).

[29] The facts in *Slaiby* differ somewhat from the facts here. Namely, *Slaiby* involved a portion of the ROW that was first acquired by ARRC <u>after</u> the underlying land had been transferred to private ownership, because the 1964 earthquake had caused land underlying the previous ROW to slide. In this case, the ROW adjoining FCHA had been in continuous use for decades <u>before</u> the Sperstad Patent was issued. Nevertheless, *Slaiby* is persuasive in interpreting ARTA's requirement that ARRC must hold <u>at least</u> an exclusive-use easement in all lands within the ROW.

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

*Id.* (affirming the Bureau of Land Management's decision to issue a patent for an exclusive use easement to ARRC).

FCHA has presented no basis for the *Slaiby* decision to be circumscribed by this Court. To the contrary, the *Slaiby* decision represents the settled expectations of the parties along the ROW since ARTA's passage in the 1980s. Undercutting *Slaiby* would open the floodgates for litigation along hundreds of miles of ARRC's right-of-way, and would throw the railroad's current operation into disarray – as well as the operations of the public utilities and other entities that make use of the ROW today.[30]

## V.   CONCLUSION

ARRC is a publicly owned corporation, and its ultimate purpose is to serve residents of Alaska through the management and operation of the Alaska Railroad and other utility corridor uses of its ROW. As such, it places great importance on being a good neighbor to the landowners adjoining its right-of-way. However, as stated by the Supreme Court: "It is of special importance that landowners know with certainty what their rights are, and the period during which those rights may be subject to challenge." *United States v. Beggerly*,

---

[30] The exclusive use easement transferred under ARTA granted ARRC the right to use the Railroad's ROW for "transportation, communication, and transmission purposes and for support functions associated with such purposes." 45 U.S.C.A. § 1202(6)(A); *see also* Exhibit B, p. 2 (granting "not less than an exclusive-use easement" in the ROW to ARRC). This language is mirrored in the Alaska Railroad Corporation Act, which defines ARRC's ROW as "railroad utility corridors," to be used generally for "transportation, communication, and transmission purposes and support functions associated with those purposes." AS § 42.40.350.

OLES MORRISON RINKER & BAKER LLP
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503-3985
Tel: (907) 258-0106   Fax: (907) 258-5519

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 21 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

524 U.S. 38, 49 (1998). As such, ARRC believes each party will benefit from this court finally quieting title to the ROW.

The question which must be answered to do so is simple: Did Congress have the power to transfer an "exclusive use easement" to ARRC when it passed ARTA in the early 1980s? The answer is clearly yes. The federal government's reservation of a ROW in the Sperstad Patent afforded it the right to continued exclusive use and possession of the ROW, in line with over a century of federal precedent. And Congress unambiguously required that interest to be transferred to the state when it passed ARTA. ARRC therefore asks the Court to enter summary judgment in its favor, to confirm this federal transfer of an exclusive interest in its right-of-way.

OLES MORRISON RINKER & BAKER LLP
Attorneys for Plaintiff

Dated: November 20, 2020      By:   s/ Michael C. Geraghty
                                    Michael C. Geraghty, ABA#7811097
                                    William G. Cason, ABA#2009083

CERTIFICATE OF SERVICE
I hereby certify that on November 20, 2020, a copy of the foregoing document was served electronically on the following party(ies):

Donald W. McClintock, III
Eva Rivka Gardner
Thomas E. Meacham
*Attorneys for Flying Crown Subdivision*

OLES MORRISON RINKER & BAKER LLP

s/ Michael C. Geraghty

4831-2495-2502, v. 11

**MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** - Page 22 of 22
*Alaska Railroad Corporation v. Flying Crown Homeowners' Association*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 13   Filed 11/20/20   Page 24 of 24