ASHBURN & MASON, P.C.
Donald W. McClintock
Eva R. Gardner
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Fax: (907) 277-8235
E-mail: don@anchorlaw.com
E-mail: eva@anchorlaw.com

THOMAS E. MEACHAM, ATTORNEY AT LAW
Thomas E. Meacham
9500 Prospect Drive
Anchorage, Alaska 99507
Telephone (907)346-1077
E-mail:  tmeacham@gci.net

Attorneys for Defendant Flying Crown Subdivision Addition No. 1
and Addition No. 2 Property Owners Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION.,<br><br>          Plaintiff,<br><br>v.<br><br>FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS ASSOCIATION, a non-profit corporation; and also, all other Persons or Parties Unknown Claiming a Right, Title, Estate, Lien, or Interest in the Real Estate Described in the Complaint in this Action,<br><br>          Defendants. | **Case No. 3:20-cv-00232-JMK** |

### DEFENDANT'S RULE 56(d) MOTION TO DEFER OR DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Alaska Railroad Corporation ("ARRC") has filed a Motion for Summary

Judgment [Docket 13] that attempts to end this case before it has even begun. ARRC

clearly seeks a ruling that it can use to establish its rights not just against Defendant Flying Crown Subdivision Addition No. 1 and Addition No. 2 Property Owners Association ("Flying Crown"), but also against landowners across Alaska who are affected by the right of way easement at issue in this case. Flying Crown comprises a group of residents who live on developed lots near the southern half of the airstrip and use the airstrip as a base for their private airplanes—a use that predated statehood.  As a nonprofit homeowners association, Flying Crown is hardly a legal powerhouse compared to the many utilities, municipalities, and other entities who have economic ties to the administration of the ARRC right-of-way.  ARRC's summary judgment motion is only nominally targeted at Flying Crown—indeed, it describes the actual Flying Crown real property at stake in this case only in passing, in a footnote.[1] ARRC's intent to establish its rights in this case will have far-reaching effects, and should not be issued lightly or hastily.

ARRC's Motion, which seeks a complete judgment in ARRC's favor, was filed a mere eight days after Flying Crown answered the Complaint in this suit, before the parties had exchanged initial disclosures or had any opportunity to engage in discovery. ARRC asserts, in an accompanying request to stay discovery, that discovery is unnecessary to the Court's decision on summary judgment.  It therefore opposes any discovery process that would allow Flying Crown to probe into its factual allegations, including the history of how ARRC or its federal predecessor managed its easements over the past century along

---

[1] Docket 13 at 21 n.7.

DEFENDANT'S RULE 56(D) MOTION  Page 2 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 2 of 15

its hundreds of miles of track. Such facts are, however, highly relevant to the issues ARRC has explicitly raised in its summary judgment motion.

The Court should not allow this significant case to be decided without allowing Flying Crown even a basic opportunity to engage in discovery and explore facts relevant to ARRC's claims and Flying Crown's defenses. For these reasons, Flying Crown requests that the Court defer or deny ARRC's Motion for Summary Judgment to allow the parties to engage in discovery.

## I. FACTUAL BACKGROUND

ARRC's Motion for Summary Judgment tells what appears to be a simple story, but its narrative glosses over multiple points of possible factual contention.

In 1914, Congress passed an act reserving a 200 foot-wide federal right-of-way "for the construction of railroads, telegraph and telephone lines" in patents for land within Alaska. The Act provided that this wide reservation was for the "construction" of such improvements, and did not specify that the area would be for the federal government's "exclusive use." In 1950, Flying Crown's predecessor-in-interest Thomas Sperstad obtained a patent to homestead the land at issue from the federal government.[2] The patent reserved a federal right-of-way for "the construction of railroads, telegraph and telephone lines" in accordance with the 1914 Act. It did not reserve an "exclusive use" easement or otherwise put Mr. Sperstad (and his successors) on notice that the federal railroad claimed

---

[2] Docket 13-1 at 1.

DEFENDANT'S RULE 56(D) MOTION                                                                                          Page 3 of 14
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 3 of 15

to have exclusive use of the easement area (i.e., the right to exclude him from his own property). At that time, the federally-owned Alaska Railroad had been in existence for several decades and already had track that crossed the Sperstad homestead.

An airstrip was developed on the Sperstad homestead in the 1950s along the Alaska Railroad right-of-way.[3] When the Flying Crown subdivision was developed, a portion of the airstrip was included within the subdivision.[4] The airstrip is actively used by Flying Crown's homeowners, many of whom are pilots and purchased their homes because of the unique airstrip access.

In 1982, Congress passed ARTA, which transferred the United States' rights along the Alaska Railroad right-of-way to the State of Alaska. Where the United States owned the land in fee, fee title was transferred; where it held an easement, the easement was transferred. ARTA provided that "the entire Federal interest" must be transferred to Alaska and further stated that "not less than an exclusive-use easement" should be transferred.[5] ARTA did not, however, explain how the United States could convey an "exclusive use easement" on a given parcel to the state-owned railroad if it in fact held only a limited purpose easement—for example, a non-exclusive easement for the construction of railroads.

---

[3] *Oceanview Homeowners Association, Inc. v. Quadrant Const. and Engineering*, 680 P.2d 793, 795 (1984).

[4] *Id.*

[5] 45 U.S.C. §1205(b)(4)(B). The actual interpretation of the intent behind this language and its proper construction is one of the issues in dispute.

DEFENDANT'S RULE 56(D) MOTION                                                        Page 4 of 14
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 4 of 15

In ARRC's narrative, the United States "fully transferred" its interest in the Flying Crown easement to Alaska through Patent No. 50-2006-0363.[6] ARRC presents this as a seamless process, but fails to mention that the patent was not issued until 2006—*24 years after ARTA's passage.* Flying Crown does not presently know the reasons for the lengthy delay or the circumstances that prompted the 2006 issuance of the patent—for example, if it was issued in an effort to plug a perceived gap in ARRC's rights. For some years, ARRC has insisted on entering a special land use agreement with Flying Crown regarding the airstrip, but the agreement's terms expressly preserve both parties' legal arguments regarding the ARRC right-of-way.[7] The parties have disagreed over the extent of ARRC's rights in the past via letter correspondence, which ARRC asserts prompted it to file this suit.[8]

## II. PROCEDURAL HISTORY

ARRC filed suit on September 21, 2020. Flying Crown answered on November 12, 2020. The Court issued a pretrial order on November 13, 2020 that required the parties to confer and ordered ARRC to file a joint scheduling and planning report on the court form within 21 days. [Docket 12] On November 20, 2020—a mere eight days after Flying Crown filed its answer—ARRC filed a Motion for Summary Judgment seeking judgment in its favor on all of its claims. [Docket 13]

---

[6] Docket 13 at 10.

[7] *Id.* at 21 n.27.

[8] *Id.* at 11.

DEFENDANT'S RULE 56(D) MOTION     Page 5 of 14
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK    Document 21    Filed 12/11/20    Page 5 of 15

In accordance with the Court's November 13 pretrial order, counsel for Flying Crown duly reached out to ARRC's counsel by letter on November 24 with a description of its planned areas of discovery[9] only to learn that ARRC had no intention of engaging in discovery.[10] Flying Crown subsequently provided a draft scheduling and planning report to ARRC, but ARRC declined to negotiate the draft[11] and instead filed a Motion to Stay Discovery Pending Resolution of Motion for Summary Judgment on December 3. [Docket 16]

On December 4, counsel for ARRC responded formally to Flying Crown's November 24 letter regarding discovery and provided information on the location, nature, and volume of certain records Flying Crown had identified as discoverable.[12] ARRC confirmed that it was in possession of significant responsive information—"reams and reams and reams" of documents, in fact.[13]

Flying Crown now asks the Court to defer or deny ARRC's Motion for Summary Judgment to allow it an opportunity to engage in discovery, which is necessary for Flying Crown to mount a full and fair defense in this case.

---

[9] Decl. of Counsel ¶2 and Ex. 1.

[10] Decl. of Counsel ¶2.

[11] *Id.* ¶2 and Ex. 2.

[12] *Id.* ¶3 and Ex. 3.

[13] Ex. 3 at 2.

DEFENDANT'S RULE 56(D) MOTION  Page 6 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 6 of 15

## III. LEGAL STANDARD

Flying Crown brings this motion under Federal Rule of Civil Procedure 56(d), which addresses grounds for delaying consideration of a motion for summary judgment:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

The rule's intent is to "safeguard against an improvident or premature grant of summary judgment[.]"[14] "Consistent with this purpose, courts have stated that the provision should be applied with a spirit of liberality."[15]

A party may technically file for summary judgment at any point.[16] However, the Ninth Circuit has held that in cases where a summary judgment motion is filed "early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely."[17]

For a party to prevail on a motion brought under Rule 56(d), it must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary

---

[14] 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740 (4th ed.).

[15] *Id.*

[16] *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

[17] *Id.* at 773 (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)).

DEFENDANT'S RULE 56(D) MOTION  Page 7 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 7 of 15

judgment."[18] This requirement is relaxed in cases where "no discovery whatsoever has taken place," because "the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid."[19]

IV. ARGUMENT

A. Discovery Is Necessary for Flying Crown to Present Its Defenses on Summary Judgment.

ARRC's Motion for Summary Judgment seeks to quiet its title and establish that it holds an exclusive easement over the ARRC right-of-way in question. A ruling in its favor would render the Flying Crown airstrip unusable by Flying Crown's homeowners *unless* ARRC granted permission.

As of the date of this filing, Flying Crown has received no factual information from ARRC. The parties have engaged in no discovery and have not even exchanged Rule 26(a)(1) disclosures. Flying Crown's ability to be specific about the discovery it needs is therefore hampered considerably. However, even at this early stage, it is clear that discovery is necessary in this case.

ARRC states that the motion "turns on two legal issues: (1) the nature of the interest reserved by the federal government in the ROW when it issued the Sperstad Patent; and

---

[18] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

[19] *Burlington*, 323 F.3d at 774.

DEFENDANT'S RULE 56(D) MOTION Page 8 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 8 of 15

(2) the nature of the interest that was to be conveyed to ARRC in the ROW under ARTA."[20] ARRC presents both of these as purely questions of law that can be resolved on summary judgment, and in its Motion to Stay Discovery, it represents that there is no possible discovery material that could affect the Court's analysis. This is an oversimplification that, if accepted, would cut off Flying Crown's right to explore facts material to ARRC's claims and Flying Crown's defenses (and potential counterclaims) in discovery.

It is Flying Crown's position that ARRC's easement is not exclusive. Instead, it entitles ARRC to use the easement area for necessary railroad purposes, but does not give it the right to act as the holder of a fee interest and prevent compatible uses. Flying Crown plans to engage in discovery to establish the nature of the easement reserved in the 1950 Sperstad patent (exclusive or for a specific purpose); how the federally-owned Alaska Railroad viewed and managed its reserved rights over time with regard to the Flying Crown easement and other similar easements; the factual circumstances giving rise to the 2006 patent; and how ARRC itself has interpreted its rights and managed this and similar easements over time. This factual information is directly relevant to the two legal issues ARRC raises in its Motion for Summary Judgment: (1) the nature of the interest reserved by the federal government in the Sperstad Patent; and (2) the nature of the interest conveyed to ARRC under ARTA.[21]

---

[20] Docket 13 at 12

[21] Docket 13 at 12

DEFENDANT'S RULE 56(D) MOTION  Page 9 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 9 of 15

### B. Flying Crown Has Clearly Identified the Facts It Intends to Seek in Discovery and Established that They Exist.

Below, Flying Crown describes the specific facts it hopes to obtain in discovery, how each area of factual inquiry relates to its defenses, and the reasons Flying Crown believe the information exists. As required by Rule 56(d), this motion is supported by a declaration of counsel, as well as the Scheduling and Planning Report Flying Crown proposed to ARRC and correspondence from ARRC counsel describing the documents in ARRC's possession.

First, if the federal Alaska Railroad did not consider its easements reserved under the 1914 Act to be "exclusive," that fact undermines ARRC's claim that it received an "exclusive easement" from the United States beginning in 1914. It is a basic principle of property law that a party cannot convey what it does not own.[22]

An initial area of inquiry is to examine the legislative history of both of the statutes that provided for the 1914 easement and the 2006 patent. Statutes are interpreted in "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[23] And while legislative history may not be a classic area of discovery, it is certainly a relevant area of inquiry here, where ARRC may in fact hold probative documents bearing on the issues in the case—not

---

[22] Thus a quit claim deed transfers only what the grantor owns, but nothing else. *See e.g.,* AS 34.15.050 ("A deed of quitclaim and release for the form in common use is sufficient to pass all the real estate which the grantor can convey by a deed of bargain and sale.").

[23] *McDonnell v. State Farm Mut. Ins. Co.*, 299 P3d 715, 721 (Alaska 2013)

DEFENDANT'S RULE 56(D) MOTION                                                                     Page 10 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 10 of 15

just the 1914 Alaska Railroad ACT, but ARTA itself.

Further, if the federal Alaska Railroad held a limited-purpose non-exclusive easement, ARTA could not have conveyed a greater easement to the State of Alaska—or if it did, that would be an uncompensated, and thus unconstitutional, taking of private property by the United States that could give rise to a counterclaim by Flying Crown.[24]

There is apparently a wealth of documentary information regarding how the federal government administered this right-of-way before its transfer to the State of Alaska. Flying Crown intends to explore the following specific areas in discovery that bear on this issue:

- Documentation of conflicts between the ARRC right-of-way and mining claims, patents, and leases, and how such conflicts were resolved. ARRC has represented that it has no knowledge or documentation of any such pre-ARTA conflicts.[25] Accordingly, Flying Crown plans to send subpoenas to the appropriate federal agencies in possession of these records.

- Documentation of each instance, pre-ARTA, in which the federal Alaska Railroad asserted that it held an exclusive-use easement on the Alaska Railroad right-of-way subject to the 1914 easement reserved for railroad, telephone, and telegraph purposes. ARRC has implied it does not have records that would address this, so

---

[24] Alaska law recognizes a taking when government action undermines reasonable investment backed expectations. *See Spinell Homes v. Municipality of Anchorage*, 78 P3d. 692, 702 (Alaska 2003). Certainly, the history of the decades of use of the right-of-way under the 1914 Act as administered by its federal owner is pertinent to the expectations of the affected owners when the right-of-way was transferred under ARTA

[25] Ex. 3 at 1.

DEFENDANT'S RULE 56(D) MOTION  Page 11 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 11 of 15

Flying Crown expects to subpoena the information from the appropriate federal agencies.[26]

- Documentation regarding the closure of any federal Alaska Railroad branch or ARRC spur at Sutton or at any other location along the federal Alaska Railroad from Seward, Alaska to Fairbanks, Alaska and the disposition of the federal railroad's land interest. ARRC has stated that it is not aware of any spurs that have been formally abandoned, but stated it probably has some records addressing the conveyance of closed spurs from the United States to ARRC.

- The terms of pre-ARTA permits between the federal Alaska Railroad, public utilities, and other landowners along the Alaska Railroad right-of-way. ARRC has stated these federal contract files exist in its archives.[27]

Second, ARRC's reliance on the patent that completed the transfer of the federal easement across Flying Crown's property to ARRC makes the patent a necessary area of factual inquiry as well. The patent was not issued until 2006, 24 years after ARTA was passed. It is possible that ARRC requested the patent to correct some perceived defect in its title, which may not have been corrected by the patent. The terms contained in patents for other easements along the right-of-way may be different from the patent at issue in this case. All of this information is relevant to ARRC's claim that it has possessed an exclusive use easement over the Flying Crown property and airstrip since the passage of

---

[26] *Id.*

[27] *Id.* at 1-2.

DEFENDANT'S RULE 56(D) MOTION  Page 12 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 12 of 15

ARTA. It may also be relevant to a potential laches or estoppel argument, or to a defense or counterclaim based on justifiable and detrimental reliance, laches, or estoppel. On this subject, Flying Crown intends to request:

- Correspondence between ARRC (or related/predecessor entities) and the following agencies: the U. S. Bureau of Land Management, the Federal Railroad Administration, the Solicitor's Office, U. S. Department of the Interior, and the Alaska federal congressional delegation from January 1, 1980 to the present date that involve the subjects of Interim Conveyances and/or land patents issued, or to be issued, to ARRC from the United States pursuant to ARTA. ARRC has described the documents responsive to this request as "reams and reams and reams, thick inventories in three-ring binders, a very large three-drawer filing cabinet filled with draft MTPs [master title plats] and supporting documents, hundreds of letters between [former and present Land Services] managers and BLM."[28]

- Minutes of the meetings of the Board of Directors of ARRC that involve the subjects of Interim Conveyances and/or land patents issued, or to be issued, to ARRC from the United States under ARTA. ARRC has stated it has "several boxes" of information relating to the federal-state transfer.[29]

---

[28] *Id.* at 2.

[29] *Id.* at 2.

DEFENDANT'S RULE 56(D) MOTION  Page 13 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 13 of 15

Flying Crown also intends to explore whether ARRC, and the federal Alaska Railroad before it, has been consistent in its claim that it holds an exclusive use easement. Evidence that ARRC or the federal Alaska Railroad took a different view in the past would be material to an estoppel argument. For that reason, Flying Crown intends to seek the following information:

- ARRC's appraiser instructions for all appraisals of state-owned ARRC right-of-way lands. ARRC has not addressed these records, but they should be in ARRC's regular business records.

- All available appraiser instructions for any appraisals of the federal ARR right-of-way lands. ARTA required an appraisal, which was conducted by the U.S. Railway Association, and assigned values to easements. sARRC has not addressed these records, but Flying Crown believes them to be in ARRC's records or in federal agency archives.

It is difficult, at this early stage of the proceeding, before initial disclosures have even been exchanged, for Flying Crown to identify with certainty *all* relevant material facts it hopes to obtain in discovery. However, Flying Crown intends to explore at least the above areas, which are clearly material to the defenses it intends to assert in response to ARRC's Motion for Summary Judgment.

## V. CONCLUSION

ARRC may genuinely believe that all material facts in its summary judgment motion are beyond dispute, but Flying Crown—and the Court—should not have to take

DEFENDANT'S RULE 56(D) MOTION  Page 14 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 14 of 15

ARRC's word for that. ARRC's correspondence to date makes clear that the discovery information Flying Crown seeks does in fact exist, and there is no real question but that it is relevant to the facts raised in ARRC's Complaint and in its summary judgment motion.

ARRC chose to file this lawsuit, not Flying Crown. ARRC should be required to follow the rules and allow Flying Crown a fair opportunity to explore the numerous asserted facts that form the basis for its summary judgment motion. Accordingly, Flying Crown requests that the Court defer or deny ARRC's Motion for Summary Judgment, and allow discovery in this case to proceed.

DATED this 11th day of December, 2020.

                                      Ashburn & Mason, P.C.
                                      Co-Counsel for Defendants

                                By:    s/Donald W. McClintock
                                          Donald W. McClintock
                                          Alaska Bar No. 8108061

                                By:    s/Eva R. Gardner
                                            Eva R. Gardner
                                          Alaska Bar No. 1305017

                                Thomas E. Meacham, Attorney at Law
                                Co-Counsel for Defendants

                                By:    s/Thomas E. Meacham
                                          Thomas E. Meacham
                                          Alaska Bar No. 7111032

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court – District of Alaska by using the CM/ECF system. All participants in Case No. 3:20-cv-000232-JMK are registered CM/ECF users who will be served by the CM/EFC system.

ASHBURN & MASON, P.C.
By: s/Heidi A. Wyckoff
      Heidi A. Wyckoff

DEFENDANT'S RULE 56(D) MOTION                                                                      Page 15 of 14
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 21   Filed 12/11/20   Page 15 of 15