Matt Mead
David A. Wilkinson
Landye Bennett Blumstein LLP
701 W. 8th Avenue, Ste. 1100
Anchorage, AK 99501
Tel: (907) 276-5152; Fax: (907) 276-8433
Email: mattm@lbblawyers.com
Email: davidw@lbblawyers.com

*Attorneys for Proposed Intervenor-Defendants*
*ENSTAR Natural Gas Company, a division of SEMCO Energy, Inc., and Alaska Pipeline Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS ASSOCIATION,<br><br>    Defendant. | Case No. 3:20-cv-00232-JMK |

**REPLY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**

The Alaska Railroad Corporation (the Railroad) filed this quiet title action to establish an exclusive use easement within a corridor that runs throughout Alaska. ENSTAR Natural Gas Company, a division of SEMCO Energy, Inc., and Alaska

REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE     PAGE **1** OF **11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK    Document 37    Filed 01/13/21    Page 1 of 11

Landye Bennett Blumstein LLP
701 West Eighth Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone (907) 276-5152, Fax (907) 276-8433

Pipeline Company (collectively, ENSTAR) together own and operate a natural gas transmission pipeline that services communities in southcentral Alaska and occupies subsurface portions of the same corridor. ENSTAR meets the standards for both intervention as a matter of right and permissive intervention. In its opposition, the Railroad raises no persuasive arguments to the contrary.

## ARGUMENT

**I.  ENSTAR has a right to intervene.**

The Railroad challenges only the sufficiency of ENSTAR's interest in the subject of the action and the adequacy of representation by existing parties.[1] ENSTAR meets the standard for intervention on both issues.

### A.  ENSTAR has a significant protectable interest in the scope of the right-of-way.

ENSTAR is the owner of a gas pipeline that at several locations runs within the railroad transportation corridor's subsurface. Based on the Railroad's assertion that it owns an exclusive use easement, the Railroad required ENSTAR to enter a permit agreement and pay rent in order to continue to supply natural gas through a portion of its gas pipeline from the Kenai Peninsula to communities like Anchorage.

The Railroad disputes the adequacy of ENSTAR's interest in the action stating that "[o]utside of its ongoing permit" with the Railroad, ENSTAR has "no legal right

---

[1]  Docket 31, Alaska R.R. Corp.'s Opp'n to ENSTAR & Alaska Pipeline Co.'s Mot. to Intervene as Defs. 2, Dec. 30, 2020.

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**  **PAGE 2 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Landye Bennett Blumstein LLP
701 West Eighth Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone (907) 276-5152, Fax (907) 276-8433

to access the ROW."[2] But that argument is premised on the Railroad prevailing on its claim to an exclusive use easement—the very issue in this litigation—and thus turns the standard for intervention on its head. The Railroad cannot prevent the intervention of a quiet title defendant by invoking the disputed title and attempting to use it to stonewall the intervenor's interest and participation.

The Railroad is likewise incorrect to argue that ENSTAR is estopped from challenging the Railroad's title.[3] Contrary to the Railroad's argument, it is not clear at all that Alaska law applies a general principle estopping tenants from disputing a landlord's title. *AAA Valley Gravel, Inc. v. Totaro*, relied on by the Railroad, mentions the doctrine only in a footnote in a dissent, and even there found the rule inapplicable on the facts.[4]

But even if adopted from other jurisdictions, the rule does not apply here. For one, when a landlord brings a quiet title action seeking to preclude the tenant from the title or seeking an interest greater than that needed to support the tenancy, it cannot invoke estoppel to avoid adverse claims.[5] And more, the principle behind the rule rests

---

[2] *Id.* at 4.
[3] *Id.*
[4] *AAA Valley Gravel, Inc. v. Totaro*, 219 P.3d 153, 169 n.7 (Fabe, J., concurring and dissenting in part) (Alaska 2009).
[5] *See Findley v. Lynn*, 164 P.2d 989, 991 (Okla. 1945) (holding defendant "not estopped to set up his superior title against the landlord" where case was "instituted by plaintiffs to quiet title, and to determine adverse claims of title"); *see also Merchants' & Farmers' State Bank of Grove City v. Olson*, 250 N.W. 366, 369 (Minn. 1933) (explaining that while estoppel may apply in action where landlord seeks possession

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**    PAGE **3** OF **11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

on a landlord-tenant relationship and is "founded on considerations of public policy and on basic considerations of good faith and fair dealing."[6] There is no estoppel "[w]here equities are to be adjusted and a conventional landlord-and-tenant relationship does not exist."[7] Nor may the principle be used "for the purpose of covering wrongs and permitting injustices to escape investigation."[8]

Thus, the principle of estoppel is inapplicable where a lease is entered under a mutual mistake or misapprehension as to the actual title.[9] For example, in *Stratton v. Hanning*, a California rancher leased land to miners that a survey later revealed the rancher did not own.[10] The court held the miners were not estopped to deny the rancher's title, explaining "the usual rule does not apply where a lease is executed either through fraud or through a misapprehension as to the actual title."[11] The court also held that "in equity and good conscience" the rancher had to repay the rents.[12] In the same

---

under a lease, "if [the landlord] goes further and claims the premises in fee, the tenant is not estopped from denying any right claimed by the plaintiff further or greater than that of possession"); *see also* 49 Am. Jur. 2d Landlord and Tenant § 744.

6   52 C.J.S. Landlord & Tenant § 615.
7   *Id*.
8   *Id.*; *see, e.g., Springs v. Atlantic Refining Co.*, 171 S.E. 635, 637 (N.C. 1933) (noting tenant estoppel "does not extend to instances where title to the property is brought in question or equities are to be adjusted between the parties").
9   *See* 49 Am. Jur. 2d Landlord and Tenant § 739 (collecting cases).
10  *Stratton v. Hanning*, 294 P.2d 66, 68 (Cal. Ct. App. 1956).
11  *Id*.
12  *Id.*; *see also Galleger v. Duhigg*, 255 N.W. 867, 871 (Iowa 1934) ("[C]ollection of rents for the property under a claim of title which did not exist would constitute a legal fraud which this court cannot approve.").

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**      **PAGE 4 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

way, ENSTAR has entered a permit agreement with the Railroad under the misapprehension that the Railroad had the right to require it. When ENSTAR learned that the Railroad's interest was not enough to support the permit and rent requirements, ENSTAR began paying under protest. Now that the Railroad is putting the legality of its ownership interest to the test through this action, ENSTAR is not estopped from disputing the Railroad's easement claim.

Finally, the Railroad's reliance on the Texas case *Air-Ag, Inc. v. F&H Santa Fe Rail, Inc.* is misplaced. In *Air-Ag*, a company gave tenants notice to vacate, the tenants sued disputing title, and the company moved to dispossess the tenants.[13] *Air-Ag* was an action for possession under a lease and it is thus unremarkable—and inapplicable here—that the court applied estoppel against the tenants and held they could not assert the rights of third parties that allegedly held superior title.[14] This matter is different. Here, the permit agreement was entered with a mistaken understanding of the Railroad's rights. The Railroad has now placed its title at issue by bringing this quiet title action. And, in seeking to recover rents that were unfairly collected, ENSTAR seeks to exercise only its own rights, not the rights of others.

---

[13]  *Air-Ag, Inc. v. F&H Santa Fe Rail, Inc.*, 22 S.W.3d 596, 598 (Tex. Ct. App. 2000).

[14]  *Id.* at 598-99; *see* 49 Am. Jur. 2d Landlord and Tenant § 733 ("Claimed defects in the landlord's title to the premises therefore cannot be raised as a defense to a proceeding for possession of a property held by a tenant . . . .").

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**  **PAGE 5 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

### B. ENSTAR's interests are not adequately represented by Flying Crown.

To establish inadequacy of representation "the applicant need only show that representation of its interests by existing parties 'may be' inadequate."[15] While a presumption of adequacy can arise where an intervenor and existing party share the same "ultimate objective,"[16] the Railroad overstates the import of that presumption.[17] Even in the face of the presumption, the Ninth Circuit has "emphasize[d] that the burden of showing inadequacy of representation is generally minimal."[18] Here, despite similarity in their ultimate objective, the burden is met because Flying Crown's interest lies in defending its rights to the surface estate; ENSTAR's interest is primarily in defending its use of the subsurface estate. This distinction is significant because the underlying law applies differently to the subsurface estates of the railway corridor.[19]

A heightened "compelling showing" of inadequacy, cited by the Railroad,[20] is required when the applicant not only shares a party's objective, but has *identical* interests.[21] Unlike the present matter, identical interests arise in cases such as class actions, formal representation by a fiduciary, a group representing its members, or the

---

[15] *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).
[16] *See id.* at 823.
[17] Docket 31 at 6-7.
[18] *Pete v. Bradbury*, 438 F.3d 949, 959 (9th Cir. 2006).
[19] 45 U.S.C. § 1202(6)(B).
[20] Docket 31 at 7.
[21] *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing 7C Wright, Miller & Kane § 1909, at 318-19).

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**   **PAGE 6 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Landye Bennett Blumstein LLP
701 West Eighth Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone (907) 276-5152, Fax (907) 276-8433

government representing the public interest.[22] The case primarily relied on by the Railroad, *League of United Latin Am. Citizens v. Wilson*, involved the State of California's defense of a ballot initiative which the foundation intervenors also sought to defend.[23] There, after waiting 27 months to intervene, the intervenor foundation unsuccessfully attempted to distinguish its interests by asserting the state was moving too slowly.[24]

Even if ENSTAR and Flying Crown are preliminarily aligned in disputing the Railroad's claim to exclusive use easements, their interests are by no means identical nor do they necessarily share the same objective and legal arguments. ENSTAR's interest is in confirming that the Railroad lacks the right to require ENSTAR to secure a permit and pay rent for subsurface not required by the Railroad's use of the surface. Flying Crown's interest as a private homeowner's association providing its members with an airplane runway is different from a largely subsurface natural gas utility. Indeed, the Alaska Railroad Transfer Act itself treats surface and subsurface estates differently, defining exclusive use easements as giving "exclusive" rights only with respect to the *surface estate* and narrower, use rights with respect to the *subsurface*.[25] Flying Crown and ENSTAR cannot be expected to make the same arguments.

---

[22] *See* 7C Wright, Miller & Kane § 1909.
[23] *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997).
[24] *Id.*
[25] 45 U.S.C. § 1202(6)(A), (B).

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**     **PAGE 7 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Landye Bennett Blumstein LLP
701 West Eighth Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone (907) 276-5152, Fax (907) 276-8433

Moreover, Flying Crown has distinguished itself from "the many utilities, municipalities, and other entities who have economic ties to the administration of the Railroad right-of-way."[26] It is apparent Flying Crown is not intending to stand in for utilities such as ENSTAR and does not represent their interests.[27]

## II. ENSTAR should be permitted to intervene.

ENSTAR's participation will provide for the complete development of the factual issues and the resolution of this matter. It should be permitted to intervene. On the specific conditions for permissive intervention,[28] the Railroad disputes only the need for an independent ground for jurisdiction, asserting that "as a permittee," ENSTAR "does not have standing to challenge the Railroad's title to the ROW."[29] The Railroad is mistaken.

First, the requirement that permissive intervenors have an independent ground for jurisdiction, including standing, falls away where the plaintiff raises a federal question and the intervenor seeks to participate as a defendant.[30] Standing is primarily concerned with the interests of the party invoking the court's jurisdiction—here, the

---

[26] Docket 21, Def.'s R. 56(d) Mot. to Defer or Deny Pl.'s Mot. for Summ. J. 2, Dec. 11, 2020.
[27] *See Berg*, 268 F.3d at 823 (noting party disclaimed intervenor's interests).
[28] *See* Federal R. Civ. P. 24(b); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (listing criteria as common question of law or fact, independent ground for jurisdiction, and timeliness).
[29] Docket 31 at 7.
[30] *Freedom from Religion Found.*, 644 F.3d at 844.

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**     **PAGE 8 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

Railroad has invoked the court's jurisdiction by seeking to quiet title under federal law.[31] Second, even if ENSTAR had to prove standing to defend against the quiet title action, as discussed above, it is not estopped from disputing the Railroad's title. The effect of not knowing the status of ownership in a right-of-way has been found to be an injury-in-fact establishing standing.[32]

Third, ENSTAR has clear standing to bring a counterclaim for restitution.[33] ENSTAR alleges it has been injured in fact by the Railroad's permit and rent requirements. ENSTAR alleges it has paid approximately $95,800 under protest since being made aware that the Railroad had overstated its property interests. This establishes an actual, concrete, and particularized injury that is causally connected to the Railroad's legal claim to an exclusive use easement. This injury can be redressed by determining the scope of the Railroad's rights and ordering restitution if warranted.[34]

Finally, the Railroad argues that the Court should exercise its discretion to either deny intervention or limit the issues because ENSTAR's claim for restitution "will

---

[31] *See Ditech Fin. LLC v. Paradise Springs One Homeowners Ass'n*, 799 F. App'x 526, 527-28 (9th Cir. 2020) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).

[32] *Avista Corp. Inc. v. Sanders Cty.*, 405 F. App'x 225, 226 (9th Cir. 2010).

[33] Standing requires injury in fact, a causal connection between the injury and the conduct complained of, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[34] *See Stratton v. Hanning*, 294 P.2d 66, 68 (Cal. Ct. App. 1956) (requiring restitution where landlord collected rent without valid claim to property); Rest. (3d) Restitution & Unjust Enrichment § 6, ill. 5 (2011).

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**    **PAGE 9 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

unnecessarily complicate the legal issues presently before the Court."[35] But resolving ENSTAR's restitution counterclaim will not cause undue delay or prejudice the Railroad. Rather, it streamlines matters by avoiding later lawsuits after the quiet title claim is resolved. Permitting ENSTAR's intervention both to dispute the Railroad's quiet title claim and to recover restitution allows for both a more complete and a more equitable resolution of the dispute over the Railroad's claimed exclusive use easement.

## CONCLUSION

The Railroad's opposition accepts ENSTAR's right to amicus status but raises no persuasive grounds to deny intervention. For the reasons stated above and in its opening memorandum, ENSTAR's motion to intervene should be granted.

DATED January 6, 2021.

> LANDYE BENNETT BLUMSTEIN LLP
> Attorneys for Proposed Intervenor-Defendants
> ENSTAR Natural Gas Company, a division of SEMCO Energy, Inc., and Alaska Pipeline Company
>
> By: /s/ Matt Mead
> Matt Mead, Alaska Bar No. 0711095
>
> By: /s/ David A. Wilkinson
> David A. Wilkinson, Alaska Bar No. 1211136

---

[35] Docket 31 at 8.

REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE — PAGE 10 OF 11
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 37   Filed 01/13/21   Page 10 of 11

Certificate of Service

I hereby certify that on January 6, 2021, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:20-cv-00232-JMK who are registered CM/ECF users will be served by the CM/ECF system.

LANDYE BENNETT BLUMSTEIN LLP
By: /s/ Dana Cupp or /s/ Cheri Woods
     Dana Cupp or Cheri Woods

LANDYE BENNETT BLUMSTEIN LLP
701 WEST EIGHTH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

**REPLY IN SUPPORT OF MOT. TO INTERVENE OR, IN THE ALTERNATIVE, TO PARTICIPATE AS AMICI CURIAE**     **PAGE 11 OF 11**
*Alaska Railroad Corp. v. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 37   Filed 01/13/21   Page 11 of 11