Thomas E. Meacham, Attorney at Law
9500 Prospect Drive
Anchorage, Alaska 99507
Tel: 907-346-1077
Email: tmeacham@gci.net

*Attorney for Proposed Intervenor-Defendant*
*Matanuska Telephone Association, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| FLYING CROWN SUBDIVISION ) | |
| ADDITION NO. 1 AND ADDITION ) | |
| NO. 2 PROPERTY OWNERS ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ALASKA PIPELINE COMPANY, ) | |
| and ENSTAR NATURAL GAS ) | |
| COMPANY, a division of SEMCO ) | |
| Energy, Inc. ) | Case No. 3:20-cv-00232-JMK |
| ) | |
| [Proposed] ) | |
| Intervenor-Defendants, ) | |
| ) | |

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 1 of 27

|  |  |
|---|---|
| and | ) |
|  | ) |
| MATANUSKA TELEPHONE | ) |
| ASSOCIATION, INC., | ) |
|  | ) |
| [Proposed] | ) |
| Intervenor-Defendant. | ) |

## MEMORANDUM OF MATANUSKA TELEPHONE ASSOCIATION, INC. IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT IN THE ABOVE-CAPTIONED CASE

Matanuska Telephone Association, Inc. including its wholly-owned subsidiaries MTA Communications, LLC, and MTA Fiber Holdings, LLC (collectively, "intervenor-defendant MTA") has moved for the Court's permission to intervene as a defendant in this action, pursuant to Federal Rule of Civil Procedure 24. This Memorandum of Law is filed in support of MTA's Motion to Intervene.

## I.
## INTRODUCTION.

MTA is an Alaska cooperative corporation that provides public utility services in the form of telephone and other telecommunications services in the Alaska "Railbelt" area, north to the Fairbanks, Alaska area, and east to the Alaska-Canada border.[1] MTA has an immediate and continuing interest in the correct legal interpretation of the

---

[1] MTA's wholly-owned subsidiaries are not themselves cooperative corporations.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

easement rights claimed by the Alaska Railroad Corporation ("ARRC") under the 1914 federal right-of-way easement reservation (the "1914 Easement")[2], and under the Alaska Railroad Transfer Act of 1982 ("ARTA").[3]  Where MTA's lines and facilities crossed the 1914 easement (either overhead or underground), or were parallel and lay buried within it, MTA had, since its founding in 1953, coordinated its installations and activities with the federal Alaska Railroad under  "blanket" co-location permits from the Railroad, at a reasonable annual charge.[4]

MTA has always believed, and has acted on its belief, that its right to occupy and use up to a 50-foot-wide easement for telecommunications purposes, within the overall 100-foot-wide railroad right-of-way reserved in the 1914 Easement, is co-extensive with the rights of the Railroad, subject only to the health, safety and operational concerns of both the Railroad and MTA.[5]  The 1914 federal easement reservation stated,

> Terminal and station grounds and rights of way through the lands of the United States in the Territory of Alaska are hereby granted for the construction of railroads, telegraph and telephone lines authorized by this Act, and in all patents for lands hereafter taken up, entered or located in the Territory of Alaska there shall be expressed that there is reserved to the United States a right of way for the

---

[2] Section 1 of the Act of March 12, 1914 (codified at 43 U.S.C. §§ 975c and 975d); 38 Stat. 305, repealed by ARTA, Pub. L. 97-468, Title VI, § 615(a)(1).

[3] 45 U.S.C. Sec. 1201, *et seq.,* Pub. L. 97-468, 96 Stat 2556 (Jan 14, 1983).

[4] Page 2, Declaration of Eric Anderson, attached.

[5] *Id.,* p. 3.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown,* No.  3:20-cv-00232-JMK

Page 3 of 27

construction of railroads, telegraph and telephone lines to the extent of one hundred feet on either side of the center line of any such road and twenty-five feet on either side of the center line of any such telegraph or telephone lines, and the President may, in such manner as he deems advisable, make reservation of such lands as are or may be useful for furnishing materials for construction and for stations, terminals, docks, and for such other purposes in connection with the construction and operation of such railroad lines as he may deem necessary and desirable.

The expense of the annual permits obtained by MTA from the Railroad were, and will be, ultimately borne by MTA's rate-payers and member-owners. When the Railroad was federally owned, and up through expiration of the Railroad's last 20-year blanket permit in 2002, the cost to MTA of the annual blanket co-location permit was a reasonable one.[6]

However, after enactment of the ARTA transfer legislation in 1983, and upon expiration of the federal Railroad's last permit with MTA in 2002, ARRC has demanded that MTA pay, for its annual telephone utility co-location permits, fees totaling hundreds of thousands of dollars.[7] In responding to MTA's strenuous objections to these new co-location permit and rental fees, ARRC has asserted its right to assess these drastically-increased fees against MTA because ARRC claims to hold an "exclusive-use" easement solely for railroad purposes under the 1914 Act and ARTA. The reservation was

_____

[6] *Id.*

[7] *Id.*, p. 4.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK  Document 42-1  Filed 03/02/21  Page 4 of 27

implemented, under the 1914 Easement Act, through individual reservations in the patents of land out of federal ownership. These 1914 Easement reservations were, after 1983, conveyed to ARRC under ARTA. These are fundamentally the same legal circumstances regarding the scope and transfer of the 1914 Easement that ARRC is seeking to confirm through its present lawsuit against Flying Crown.

Therefore, the legal questions raised in this case involve the purpose and scope of both the 1914 Easement and the ARTA legislation. Resolution of these issues will directly affect all other landowners and occupants (including MTA) whose properties or facilities lie anywhere within the 200-foot-wide 1914 Easement right-of-way from Seward, Alaska, to Fairbanks, Alaska and its environs.

After the expiration of MTA's last 20-year blanket co-location permit from the federal Railroad in 2002, MTA has resisted paying the drastically-increased new annual fees ARRC has demanded, and it has in correspondence disputed ARRC's interpretation of its claimed "exclusive-use" easement for railroad purposes under the 1914 Easement and ARTA.[8] This controversy is directly related to the blanket "exclusive-use" easement claim for its right-of-way that ARRC is asserting against Flying Crown in the present

_____

[8] *See* Exhibits A through G to Declaration of Eric Anderson, attached.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 5 of 27

litigation. MTA should be allowed to intervene to defend its own interests against ARRC's broad and exclusive interpretation of its statutory easement rights

## II.
## FACTUAL BACKGROUND.

MTA owns and operates approximately 6,600 miles of telephone cables and related telecommunications facilities, extending generally from Eagle River, Alaska to and beyond Fairbanks, Alaska, along the "Railbelt."[9] MTA serves approximately 32,000 customers, most of whom are member-owners of the cooperative corporation.[10]

At numerous locations along the Railbelt, MTA's lines and facilities either cross, or lie within, the 1914 Easement. Some of MTA's facilities at these locations of convergence are installed on the surface, while most are buried underground. MTA has always asserted that its co-location rights within the overall 1914 Easement are assured by that Easement's stated purposes as being for "railroad, telephone, and telegraph" uses.[11] Since the founding of MTA in 1953, the utility had obtained, from the federal

------

[9] Declaration of Anderson, p. 2.

[10] *Id.*

[11] *Id.*, p. 3.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 6 of 27

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 6 of 27

Railroad, permits to coordinat the co-location and installation of MTA's telephone communications facilities within the overall 1914 Easement.[12]

After enactment of ARTA, ARRC has asserted that it has the right to drastically increase its co-location permit fees from MTA, becoming essentially annual "rentals," under its asserted claim to an "exclusive-use" easement solely for railroad purposes throughout the entire 1914 Easement. After ARTA's enactment and the expiration of MTA's last blanket permit from the federal Railroad, ARRC's has asserted new annual fees against MTA on essentially a "per facility" basis, which has drastically increased MTA's claimed financial obligation for the co-location of its telephone facilities within the 1914 easement.[13] ARRC's financial claims against MTA appear to spring from its assertion that ARTA has required the United States to convey to the state railroad, at a minimum, an exclusive-use easement for the railroad right-of-way, under ARTA at 45 U.S.C. §§ 1202(6) and 1203(b). ARRC in the present litigation is seeking judicial confirmation of its claim to an exclusive-use easement for railroad purposes on lands that are not only subject to unresolved Native claims under ANCSA,[14] and federal lands

---

[12] *Id.*, p. 2.

[13] *Id.*, p. 4.

[14] ARTA, §1205(b).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 7 of 27

within Denali National Park,[15] but also as to those lands conveyed out of federal ownership in the many decades prior to ARTA, but which were originally made subject to the 1914 easement reservation.[16] This reservation for "railroad, telephone nd telegraph" purposes was of course implemented in many land conveyances, and long before ARTA was enacted.

## III.
## ARGUMENT.

**A. MTA has a right to intervene to challenge AARCs' clam to an exclusive-use easement over 1914 Easement lands.**

Under Federal Rule of Civil Procedure 24(a)(2), an applicant is entitled to intervene as a matter of right where the participation it seeks has met four criteria: (1) the application is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the original

---

[15] ARTA, § 1203(b)(1)(D).

[16] Section 1 of the Act of March 12, 1914 (codified at 43 U.S.C. §§ 975c and 975d); 38 Stat. 305, repealed by ARTA, Pub. L. 97-468, Title VI, § 615(a)(1).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 8 of 27

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 8 of 27

parties to the action.[17] A liberal policy favoring intervention is to serve both the efficient resolution of issues before the court, and a broadened access to the courts.[18]

In the present litigation, MTA is entitled as of right to intervene to protect its property interests that are intimately bound up with ARRC's claim to an exclusive-use easement for railroad purposes over all of the 1914 Easement lands. MTA's motion to intervene is timely, because this litigation is at its early stage. No discovery has commenced, no dispositive rulings have been entered, and no delay prejudicial to either the plaintiff or defendant Flying Crown will occur. The intervention application of one intervenor-defendant that is already asserting such status (ENSTAR) is presently pending.[19]

As stated in the Declaration of Eric Anderson, the monetary claims made by ARRC against MTA for the coordination of MTA's facilities within the 1914 Easement arise from the same source as ARRC's claims against defendant Flying Crown -- its assertion of an "exclusive-use" easement for railroad purposes arising under the 1914 Act

---

[17] *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1176 (9th Cir. 2011); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

[18] *Id.* at p. 1179 (quoting *U.S. v. City of Los Angeles*, *id.*, at 396-99.

[19] *See* ENSTAR's Motion to Intervene as defendant, and supporting filings, December 16, 2020, Docket No. 25.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

and ARTA. MTA has a protectable legal interest in the outcome of the present litigation. Its interest in the security of its lines and facilities will be impaired if it is not permitted to intervene, and ARRC proceeds to litigate to conclusion its exclusive-use claim that in fact affects all of the 1914 Easement, from Seward to beyond Fairbanks -- including Easement lands in which MTA has a very substantial operational and financial stake.[20]

### 1. MTA's intervention is timely.

At this early stage of the proceedings, the issue of timeliness should not pose an impediment to MTA's joinder as an intervenor-defendant. Timeliness is to be determined by the totality of the circumstances facing the would-be intervenors.[21] "[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."[22]

In weighing the timeliness requirement, the courts focus on three primary factors: the stage of the proceedings, any prejudice to other parties, and the reason for and length

---

[20] *See* Declaration of Eric Anderson, *id*.

[21] *Smith v. Los Angeles Unified School. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

[22] *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).
**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

of any delay.[23] No dispositive or issue-limiting rulings have yet been issued in this case, thus making MTA's intervention entirely appropriate at this early stage in the litigation.[24]

ARRC has filed a very early motion for summary judgment on all issues, and has moved to stay any discovery by Flying Crown, and any discovery-related deadlines, including the deadline for filing a joint scheduling and planning conference report.[25] Defendant Flying Crown has responded by moving under Federal Rule of Civil Procedure 56(d) to defer briefing and ruling on ARRC's summary judgment motion until some discovery has been permitted.[26] Flying Crown's motion correctly raises the fact that ARRC's attempt to obtain a speedy ruling on its fundamental legal claim demonstrates ARRC's "intent to establish its rights in this case [that] will have far-reaching effects," which should not be resolved "lightly or hastily."[27] One of these "far-reaching effects" is the legal determination about ARRC's claimed "exclusive-use" railroad easement, a determination in which MTA also has a vital interest.

---

[23] *Smith v. Los Angeles, id.* at 854.

[24] *See, e.g., Abdurahman v. Alltran Financial, LP*, 330 F.R.D. 276, 280 (S.D. Cal. 2018).

[25] Docket 16, Mot. to Stay Discovery Pending Resolution of Mot. for Summary Jdmt., Dec. 3, 2020.

[26] Docket 21, Def.'s R. 56(d) Mot. to Defer or Deny Pl.'s Mot. for Summ. J., Dec 11, 2020.

[27] *Id.*, at p. 2.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Flying Crown's 56(d) motion has been argued, and is presently pending before the Court. Also pending is intervenor-applicant ENSTAR's motion. At this early stage in the litigation, the intervention that MTA is now seeking will not interfere with any adopted pre-trial schedule. If Flying Crown's Rule 56(d) motion is eventually denied, MTA's intervention may cause a minimal delay for summary judgment briefing, in order to allow reasonable time for MTA (as well as ENSTAR), as intervenor-defendants to prepare their own opposition briefs.

If the Court were to allow intervention at this stage, this decision would not prejudice either of the original parties, nor intervenor-applicant ENSTAR.[28] Existing parties are not prejudiced by the mere prospect that intervention may "prolong the litigation," or even make its resolution more difficult.[29] MTA's intervention will permit a more complete discussion about the scope and effect of ARRC's "exclusive use" legal claims. This is particularly true with regard to MTA's intervention, because MTA, a telephone utility, was a co-designee to use the 1914 Easement under the original 1914 statutory reservation.

---

[28] *Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977); *see also Smith*, 830 F.23d at 857 (the court noting that prejudice is the most important factor in considering the timeliness of an intervention).

[29] *Smith v. Los Angeles,* 830 F.3d at 857.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 12 of 27

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 12 of 27

MTA's involvement will bring into clear relief ARRC's claim that the 1914 Easement and ARTA have granted it an "exclusive-use" easement for railroad purposes only. Examining this claim from MTA's position will in no way prejudice the Railroad's ability to litigate its own assertions. However, if intervention is denied to MTA, the utility's own right to litigate its contrary position will be prejudiced if the lawsuit reaches a conclusion without MTA's counter-arguments being weighed as a part in that conclusion. Further, when determining if intervention might cause undue delay or prejudice, the Court should consider the desirable factor of promoting judicial economy.[30] Weighing MTA's position as a co-occupant and designee under the 1914 Easement will lead to a more complete resolution of ARRC's claim to an exclusive-use easement, with multiple parties adversely affected by that claim all participating in the same action.

MTA is seeking intervention within a reasonable period of time after it became aware of the pending litigation, and of ARRC's attempt (acting on its legal allegations, evident from its earlier correspondence with MTA),[31] to seek broad judicial confirmation of its claim to an "exclusive-use" easement for railroad purposes. ARRC's Complaint

---

[30] *See Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989), *aff'd sub nom.*, *Venegas v. Mitchell*, 495 U.S. 82 (1990); *Austell v. Smith*, 634 F. Supp. 326, 335 (W.D.N.C. 1986).

[31] *See* Attachments A through G to Declaration of Eric Anderson.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

was filed in late September, and Flying Crown's Answer was filed in mid-November. ARRC's summary judgment motion came very shortly thereafter, on November 20.

The timeliness of a party's intervention in a particular case must be evaluated under the totality of the circumstances in any given case. The Ninth Circuit Court of Appeals has held a party's intervention to be timely when it was applied for a year after changed circumstances could have prompted its motion to intervene, but mere weeks after it definitively learned that its interest was not adequately represented.[32] Therefore, an intervenor has a reasonable interval of time to review the totality of the circumstances, in order to determine if the effects of these circumstances, and the existing parties' positions in the litigation, support its application to intervene.

In the present instance, MTA is acting promptly. MTA needed to review the existing parties' pleadings, and the stated position of intervenor-applicant ENSTAR, before concluding that its own intervention in this litigation was necessary. MTA has sought to intervene quite early in the proceedings -- before any discovery has commenced, before any scheduling and planning conference has occurred, and before any responsive briefing on ARRC's motion for summary judgment has been ordered. Under the totality of these circumstances, MTA's application to intervene is timely.

_____

[32] *Smith*, 830 F.3d at 854, 859-60.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

**B.  MTA has a significant, protectable property interest in the 1914 Easement, and its ability to protect that interest may be impaired if its intervention is not granted.**

When federal courts are asked to determine whether a party has an adequate interest to support intervention as a matter of right, they follow "practical and equitable considerations" by construing Federal Rule 24(a)(2) "broadly in favor of proposed intervenors."[33]  No specific, quantifiable minimum legal or equitable interest is required to support such intervention, and the interest test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[34]   "It is generally enough that the [intervenor's] interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue."[35]

MTA's legally protected interests are directly affected in this suit by ARRC's claim to an exclusive-use railroad easement throughout the 1914 right-of-way.  In the same manner that ARRC is relying on a claimed exclusive-use easement in its quiet title

---

[33] *Wilderness Society*, 630 F.3d at 1179 (quoting *City of Los Angeles*, 288 F.3d at 397).

[34] *Id*. (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)); *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

[35] *Id*. (quoting *Sierra Club v. Envt'l Protection Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993)).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No.  3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 15 of 27

action against Flying Crown, ARRC has insisted that MTA obtain an annual permit (whose rental cost is to be calculated at near-fee interest rates and on a facility-by facility basis) to occupy any part of the 1914 Easement.[36]  MTA has a protectable legal interest in extending its telephone lines across or parallel to the tracks, overhead or buried, pursuant to a co-occupancy right that the 1914 Easement specifically reserved.

If the Court permits this lawsuit to mov forward to decision without MTA's participation, that disposition will impair or impede MTA's ability to protect its interest as a co-occupant under the 1914 Easement.  Without an authoritative judicial interpretation, it is clear that ARRC intends to continue asserting its claim to an exclusive-use easement, solely for railroad purposes, against private landowners, public utilities, municipalities, and even telephone companies that were granted specific recognition in the 1914 Easement.  Such an outcome will require MTA to obtain permits for its telephone facilities located within the Easement that will cost it -- and ultimately its rate-payers and member-owners --  hundreds of thousands of dollars annually, based on the market value of ARRC's claimed "exclusive-use" easement, in order to coordinate the placement and operation of MTA's facilities within the 1914 Easement.[37]

---

[36] Declaration of Anderson, *id*.

[37] *Id*.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No.  3:20-cv-00232-JMK

Page 16 of 27

The fact that MTA has no facilities or equipment located within the Flying Crown lands (over which it and ARRC is presently litigating) is not a bar to MTA's intervention. All entitles that must interact with ARRC and are unavoidably confronted with its claimed "exclusive-use" railroad easement, throughout the entire "Railbelt" extent of ARRC's trackage, are in all important respects similarly situated to Flying Crown in the present litigation. MTA should be permitted to intervene based on its "practical interest in the outcome of a particular case."[38] MTA meets Civil Rule 24(a)(2)'s interest requirements based on its continuing interest in a judicial determination of the scope and extent of ARRC's underlying railroad easement rights that are central to the Flying Crown litigation.

**C. No other party adequately represents the interests of MTA, as a telephone utility, in this litigation.**

An intervenor is "adequately represented" in litigation if the interests of the existing parties are broad enough that these parties will no doubt make all of the intervenor-applicant's arguments, the present parties are capable of and willing to do so, and the intervenor-applicant will not be likely to offer any necessary aspect of the

_____

[38] *City of Los Angeles*, 288 F.3d at 398.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 17 of 27

proceedings that the other parties would not also offer.[39]  Although Flying Crown may align with intervenor-applicant ENSTAR and with applicant MTA in disputing ARRC's claim to an exclusive-use easement for railroad purposes, neither Flying Crown nor applicant ENSTAR is able to adequately represent MTA's unique position as a telephone utility providing services specifically recognized in the types of uses stated in the 1914 Easement Act.[40]

While ARRC's claim to an "exclusive-use" easement arises under its interpretation of the 1914 Easement Act, ARRC's assertion of  its claimed exclusive right of control is quite different between Flying Crown, applicant ENSTAR, and MTA.  Flying Crown is not subject to the same "transportation corridor" permit and rent requirements that the Railroad has imposed on ENSTAR.   Nor is ENSTAR, although a public utility, a particular type of public utility ("telephone and telegraph") that was specifically recognized and authorized in the 1914 Easement Act.

Flying Crown is primarily a surface occupant, while ENSTAR may be primarily a subsurface occupant.   MTA is a surface occupant in some locations within the 1914 Easement.  However, MTA also has substantial buried lines and facilities installed under

---

[39] *Fresno County v. Andrus,* 622 F.2d 436, 439 (9th Cir. 1980).

[40] Section 1 of the Act of March 12, 1914 (codified at 43 U.S.C. §§ 975c and 975d); 38 Stat. 305, repealed by ARTA, Pub. L. 97-468, Title VI, § 615(a)(1).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No.  3:20-cv-00232-JMK

the 1914 Easement, and significant engineering reasons to bury these facilities. ARRC is assessing exorbitant fees for MTA's facilities buried under the 1914 Easement. It has also actively prevented MTA from burying its facilities even where MTA's installation will both enter and exit the earth outside the 1914 Easement's exterior limits, claiming in error that under the 1914 Easement and ARTA, ARRC has subsurface rights or controls that extend beyond and beneath any acknowledged right to subjacent support for its surface railroad facilities.

MTA satisfies the required criteria for intervention as a matter of right. It should be allowed, by intervention, the opportunity to litigate and defend its significant easement and property interests on that basis.

### D. Alternatively, MTA should be allowed to intervene by permission.

In considering a request for permissive intervention under Rule 24(b), courts evaluate three conditions: (1) whether the intervenor-applicant's defense and the main action share a common question of law or fact, (2) whether there must be an independent ground for jurisdiction over the claims or defenses, and (3) timeliness.[41] Permissive intervention may be warranted where the intervenor will "significantly contribute to the

---

[41] Fed. R. of Civ. P. 24(b)(2); *see Freedom from Religion Fund., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *Beckman Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)..

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 19 of 27

full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[42]

As discussed earlier, MTA's request for intervention as of right also squarely satisfies all necessary conditions for permissive intervention. In advancing its requirement that MTA enter into occupancy agreements and annually pay rents to occupy any right-of-way lands reserved under the 1914 Easement Act, ARRC is relying on exactly the same interpretation of the federal patent reservations and ARTA transfers that it is presently asserting against Flying Crown this case. If MTA is granted the status of a permissive intervenor, its presence will not improperly affect the Court's jurisdiction over this case. Further, under the circumstances presently existing at this early stage of the case, MTA's permissive intervention will not cause unwarranted prejudice or delay to ARRC, to Flying Crown, or to intervenor-applicant ENSTAR. MTA has a unique role as a type of public utility specifically designated to exercise co-occupancy rights under the 1914 Easement Act. Yet ARRC requires it to apply for permits with annual rentals at near-market rates, based on the "exclusive use for railroad purposes" legal theory that it is already pressing in litigation against Flying Crown. MTA's intervention will contribute, to a significant degree, to the broader judicial determination of ARRC's appropriate and lawful extent of occupancy and use for railroad purposes under the 1914 Easement Act.

---

[42] *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 42-1   Filed 03/02/21   Page 20 of 27

**1. MTA's defense raises common questions of law and fact.**

The Civil Rules' requirement that the intervenor's claim or defense must raise a common question of law or fact is to be liberally construed.[43]   MTA's defense against ARRC's claim of an "exclusive-use" easement for railroad purposes under the 1914 Easement Act and ARTA, and its assessment of very substantial annual rents against an occupant of the 1914 Easement for telephone purposes, meet that liberal standard.

ARRC's claim  to quiet title against Flying Crown on the basis of  its occupancy of the Railroad's claimed "exclusive-use" easement, and its asserted authority to require MTA to obtain annual permits to occupy the 1914 Easement at expensive rents set by ARRC, involve the scope and purpose of the original 1914 Easement, which was reserved in federal patents and then later as conveyed to ARRC through ARTA, after 1982.  ARRC's June 3, 2016, letter to MTA elaborates on the same basic legal argument that it makes in its summary judgment motion in this case.[44]  ARRC bases its position on its interpretation of the history of the Alaska Railroad Act of 1914, and particularly the federal patent exceptions making all land patents subject to the 1914 Act's  right-of-way,

---

[43] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (citing *Securities & Exchange Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)).

[44] Exhibit E to Declaration of Eric Anderson.

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No.  3:20-cv-00232-JMK

through the enactment in 1983 of the Alaska Railroad Transfer Act (ARTA), in which the concept of an "exclusive-use" easement for railroad purposes was first defined and made explicit.[45]

There can be no doubt that the same basic questions of law should determine Flying Crown's, ENSTAR's, and MTA's legal rights as against the Railroad. There should be little question but that the scope and purpose of ARRC's claimed "exclusive-use" easement for railroad purposes will be central to the judicial determination of Flying Crown's rights, and of ENSTAR's rights if it is granted intervention, and of MTA's rights as a telephone service provider under the 1914 Easement Act, if it is permitted to intervene.

Permissive intervention does not require that the property subject to MTA's occupancy and its ARRC-issued annual permits are not coincident with the specific parcels owned by Flying Crown that are the subject of the Railroad's existing quiet title action. The grant of permissive intervention does not require any direct, personal interest in the specific subject of the litigation.[46] And even in the context of intervention as a

---

[45] *See* ARTA at 45 U.S.C. §1202(6)

[46] *Securities & Exchange Comm'n*, *id*., 310 U.S. at 459 (noting requirement of common question of law or fact "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation").

MEM. IN SUPPORT [PROPOSED] INTERVENOR
MATANUSKA TELEPHONE ASSOCIATION, INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 22 of 27

matter of right, parties may intervene based on a "practical interest in the outcome of a particular case,"[47] including any *stare decisis* consequences. [48]

## 2. Allowing MTA to intervene does not inappropriately enlarge or impermissibly alter the Court's jurisdiction.

The Rule's requirement that the intervenor's claim must have an independent ground for jurisdiction stems from the "concern that intervention might be used to enlarge inappropriately the jurisdiction of the district courts."[49]  Unlike in asserted diversity cases, this concern is lessened considerably where the district court's jurisdiction is based upon federal question  jurisdiction, as asserted here by the plaintiff itself.[50]  In the present litigation, ARRC has at the outset pleaded federal question jurisdiction, based on the nature of its claim to ownership of reserved  property interests contained in federal land patents, and their later conveyance to ARRC under ARTA.  To

---

[47] *City of Los Angeles*, 288 F.3d at 398.

[48] *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

[49] *Freedom from Religion Foundation*, 644 F.3d at 843.

[50] *Id*. at 844 ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant . . . ." (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1917 (3d ed. 2010)).

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp*. *v*. *Flying Crown*, No.  3:20-cv-00232-JMK

Page 23 of 27

the extent that federal jurisdiction lies for ARRC's claim against Flying Crown, it also lies for its easement dispute with MTA.

### 3. Discretionary factors weigh in favor of intervention.

The Court may consider several factors in determining whether to permit intervention, which include the following:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal   issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] ............whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.[51]

Applying these factors to MTA's proposed intervention, they weigh strongly in favor of allowing this proposed defendant to intervene.  MTA's interest is to protect its ratepayers and member-owners from the exorbitant annual rental charges that the Railroad is demanding pursuant to its erroneous assertion that it holds an "exclusive-use" easement solely for railroad purposes under the 1914 Easement Act.  MTA does not have an interest in the specific Flying Crown parcels that are the subject of ARRC's quiet title action, but MTA's defenses concerning ARRC's claimed easement involve the same basic legal question regarding the nature and extent of ARRC's legitimate easement rights.

---

[51] *Perry v. Schwartzenegger*, 630 F.2d 898, 905 (9th Cir. 2011)

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 24 of 27

MTA's interests are not adequately represented by the existing parties. MTA's operation as a public telephone utility represents a type of use of the 1914 Easement that neither the existing defendant Flying Crown nor intervenor-applicant ENSTAR adequately represents. Further, MTA as a telephone service provider directly refutes ARRC's claim that the 1914 Easement gave it "exclusive" rights for railroad purposes within the easement reserved by the 1914 Act, and as transferred to it under ARTA. Thus, while MTA's interests are directly connected to the assertions made by ARRC against Flying Crown regarding the legal character and scope of the 1914 Easement, MTA's unique position as a type of easement user explicitly identified by the 1914 Act argues strongly in favor of its intervention in this lawsuit.

Allowing MTA to intervene as a defendant will enable the Court to resolve, in a single action, the broader dispute over the Railroad's claimed "exclusive" easement interest. Separate actions to determine the rights of various 1914 Easement occupants such as Flying Crown, ENSTAR and MTA would be an avoidable duplication of litigation, as well as creating the potential for inconsistent decisions in separate actions, notwithstanding that the same basic legal questions are involved.

At this early stage in the present litigation, in which no dispositive motions have been decided, Flying Crown has sought discovery and ARRC has sought to stay that

MEM. IN SUPPORT [PROPOSED] INTERVENOR
MATANUSKA TELEPHONE ASSOCIATION, INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 25 of 27

discovery, MTA's intervention will cause no prejudice to any party, and no undue delay. MTA's intervention will lead to a more comprehensive resolution of the dispute over ARRC's claims regarding its interests in the 1914 Easement and the ARTA conveyances. MTA urges that it be permitted to intervene as a defendant in this action.

## III.
## CONCLUSION.

As a telephone service provider throughout much of the "Railbelt" area affected by ARRC's easement assertions, MTA has a significant interest in the outcome of any judicial examination of the Railroad's claim to an "exclusive-use" easement for railroad purposes. This claim, which was not asserted to MTA's detriment during MTA's 30-year history with the federal Railroad, has only arisen after enactment of the Alaska Railroad Transfer Act. ARRC's attempt to extract from MTA the drastically increased land-use permit fees or rentals for the co-location of MTA's telephone facilities relies on the same arguments it has asserted against Flying Crown -- *i. e.*, that ARRC's claim of an "exclusive-use" easement for railroad purposes under the 1914 Easement Act and ARTA give it that right.

MTA's motion to intervene is timely. MTA's particular interests in its use of the 1914 Easement are not adequately represented by the present defendant, nor by defendant-intervenor applicant ENSTAR. MTA's ability to protect its interests in use of

**MEM. IN SUPPORT [PROPOSED] INTERVENOR**
**MATANUSKA TELEPHONE ASSOCIATION, INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK

Page 26 of 27

the 1914 Easement may be impaired to a substantial degree if it is not permitted to defend these interests in this litigation. MTA's motion to intervene raises common questions of law and fact, and does not raise jurisdictional barriers.

For all of these reasons, MTA requests that it be permitted to intervene as a defendant in this litigation.

Dated at Anchorage, Alaska this 2nd day of March, 2021.

_____/S/ Thomas E. Meacham_____
Thomas E/ Meacham
Alaska Bar No. 7111032
Attorney for Proposed Intervenor-Defendant
Matanuska Telephone Association, Inc.

Certificate of Service
I hereby certify that on March 2, 2021, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:20-cv-00232-JMK who are registered CM/ECF users will be served by the CM/ECF system.

By:   /S/ Thomas E. Meacham_____
Thomas E. Meacham, Attorney at Law
Alaska Bar No. 7111032