**EXHIBIT A**

**TO DECLARATION OF ERIC ANDERSON**

**(2 pages)**

ALASKA RAILROAD CORPORATION
FEE SCHEDULE


| TYPE OF CONTRACT | | FEE |
|---|---|---|
| A. Permit Application Fee | | $200.00 |
| Fee is non-refundable; however it may be applied towards the Permit Fee upon approval. | | |
| B. Permits for Distribution Utility lines (sewer, water, storm, gas, electric, telephone cable) | | |
| 1. Aerial or underground crossings | | $200.00 per year |
| 2. Within right-of-way | | $0.50 per linear foot per year ($200 minimum) |
| C. Permits for Transmission Lines | | $0.50 per linear foot ($500 minimum) per year or by appraisal |
| D. Industry Track Permit | | $250.00 one time administrative fee |
| E. Floating Track Permit | | $8.00 per linear foot per year |
| F. Permit for Road Crossings and Roadways | | |
| Roadways | | $200.00 per year or $.05 per linear foot |
| Road Crossings | | |
| 1. Public | | $200.00 one-time |
| 2. Private | | $200.00 per year |
| 3. Commercial | | $300.00 per year |
| G. Entry Permit (short term) | | $200.00 |
| H. Special Land Use Permit | | $500.00 minimum per year |
| | Anchorage: | $0.32 - $0.60 psf per year |
| | Fairbanks: | $0.12 - $0.20 psf per year |
| | Seward: | $0.50 - $0.55 psf per year (waterfront) |
| | | $0.16 - $0.20 psf per year (nonwaterfront) |
| | Whittier: | $0.15 psf per year (waterfront) |
| | | $0.10 psf per year (nonwaterfront) |
| | All Others: | $0.05 psf per year ($500.00 min. per year) first acre |
| | | $0.02 psf per year excess over one acre |

NOTE: Permit fees will be established based on appraisal information of parcels in immediate vicinity of permit area. If no appraisal information is available, permit fee will be established at the minimum unless an appraisal is obtained.

EXHIBIT A

PAGE 1 OF 2 PAGES OVER→

| | |
|---|---|
| **NOTE I:** | A $500.00 rush fee may be applied to permits if application is received less than 6 weeks prior to date requested. |
| **NOTE II:** | Public notice may be required for certain permits. If notice is required, an additional fee of $300.00 may be required. |

ALASKA RAILROAD CORPORATION
FEE SCHEDULE


| TYPE OF CONTRACT | | FEE |
|---|---|---|
| I. | Recreational Use Permit | 01-05 acres - $200 per year;<br>06-25 acres - $35 per acre per year;<br>26-50 acres - $25 per acre per year;<br>51 acres - $15 per acre per year |
| J. | Warehouse Lease | $0.40-$0.60 per square foot per month including utilities |
| K. | Permit for Pole Contact/Attachment | $10.00 per pole per yr. |
| L. | All Other Permits | $200.00 minimum per year or to be determined on a case by case basis but no less than $200.00 per year |

M. Blanket Permits: Blanket permits will apply when there are 10 or more utility crossing permits issued to the same Permittee.

| | |
|---|---|
| Base fee:<br>*Applies to utilities in ARRC reserve properties*<br>*Excludes utilities in the right-of-way covered under items A and B of this schedule or the crossing fees outlined below:* | $1,000.00 |
| 10-50 crossings | $ 400.00 per year |
| 51-100 crossings | $ 800.00 per year |
| 101-150 crossings | $1200.00 per year |
| 151-200 crossings | $1600.00 per year |
| 200 + crossings | $3200.00 per year |
| Administrative processing fee:<br>Charged for adding new items to blanket permits. | $ 200.00 per request |

| | | |
|---|---|---|
| N. | Long-Term Ground Leases | Fair Market Value determined by appraisal |
| | Lease application fee | $300.00 |
| | Application for Assignment of Lease | $300.00 |
| | Industry Track (for Leases) | $6.00 per lineal foot per year |
| O. | Short-Term Lease | Same as Permit Fee |

P. Other Fees

Engineering design review charged on plus cost basis.

Copying Fees:
$0.25 per page ($2.00 minimum) - contracts and like items
$5.00 per page - bluelines or aerial prints

Fees Subject to Change Without Notice
Effective October 1, 1987
Revised October 15, 2002
Revised January 1, 2005

**EXHIBIT B**

**TO DECLARATION OF ERIC ANDERSON**

**(1 page)**

| Year | Total Fees Paid by MTA to ARRC (excludes flagging fees) |
|---|---|
| 2000 | $2,340.16 |
| 2001 | $1,591.97 |
| 2002 | $2,079.84 |
| 2003 | $1,179.36 |
| 2004 | $2,021.76 |
| 2005 | $3,221.76 |
| 2006 | $3,121.76 |
| 2007 | $2,721.76 |
| 2008 | $3,690.24 |
| 2009 | $2,254.48 |
| 2010 | $2,470.84 |
| 2011 | $2,098.27 |
| 2012 | $5,798.27 |
| 2013 | $3,570.84 |
| 2014 | $2,443.41 |
| 2015 | $3,998.27 |
| 2016 | $3,770.84 |
| 2017 | $5,826.76 |
| 2018 | $7,198.27 |
| 2019 | $15,782.51* |
| 2020 | $6,893.41 |

***MTA purchased GVEA's subsidiary, AlasConnect and in 2019 the ARRC permit was transferred to MTA for the fiber facilities placed by GVEA/AlasConnect. The annual fee was $21,148 with 7 months (or $12,336.33) waived, leaving MTA with a payment of $8,811.67, for this one permit with multiple facilities, in 2019.**


EXHIBIT B
PAGE 1 OF 1 PAGES

**EXHIBIT C**

**TO DECLARATION OF ERIC ANDERSON**

**(1 page)**

# ARRC Proposed Fees for MTA Blanket Permit

| Number of Crossings* | Rate per Crossing | Annual Total for Crossings |
|---|---|---|
| 114 | $500 | $57,000 |

| Linear Footage* | Rate per Foot | Annual Total for Footage |
|---|---|---|
| 188,000 | $1.00 | $188,000 |

| Total Annual Fees |
|---|
| $245,000 |

*Approximate number of Crossings and Footage as of 2/1/2021

EXHIBIT C
PAGE 1 OF 1 PAGES

**EXHIBIT D**

**TO DECLARATION OF ERIC ANDERSON**

**(2 pages)**

May 3, 2016



Mr. Andrew Donovan
Director, Real Estate
Alaska Railroad Corporation
P. O. Box 107500
Anchorage, Alaska 99510-7500

Subject: Proposed "Blanket Permit" Terms for Crossing ARRC Right-of-Way.

Dear Mr. Donovan:

I am responding to the draft "Blanket Permit" that the Alaska Railroad Corporation (ARRC) has tendered to Matanuska Telephone Association, Inc. (MTA) for its execution and payment.

On behalf of our company, I want to inform you that MTA declines to accept the proposed "Blanket Permit" and the presumed legal premises upon which it appears to be based.

As you know, MTA has (both before and after transfer of the Alaska Railroad from federal to state ownership) paid reasonable fees to the Railroad to insure effective coordination between our organizations. These fees assured on-the-ground coordination in the uses of our respective rights-of-way, including the installation of upgrades, where these rights-of-way intersected or were parallel with each other. The last such agreement MTA had with the Railroad began with the federal Alaska Railroad in 1982, and expired in 2002.

Many of MTA's existing telecommunications rights-of-way originated in the blanket patent reservation required in all patents of land conveyed out of federal ownership, beginning in 1914. This required patent reservation was for "railroad, telegraph and telephone lines." ARRC's proposed "Blanket Permit" would inexplicably subordinate MTA's existing "telephone line" rights-of-way entirely to the Railroad's co-equal right-of-way where the two either cross, or are parallel to each other.

Further, the Railroad's proposed "Blanket Permit" does not cover so-called "Longitudinal Facilities," which are apparently proposed to be covered by separate permit for "new or additional facilities." See proposed Permit Section 1.02. This proposal by the Railroad is made even where MTA's existing longitudinal use (and any new or additional MTA facilities) lie within MTA's existing telephone line right-of-way

..anuska Telephone Association Inc.
1740 South Chugach Street
Palmer, Alaska 99645

907.745.3211
800.478.3211 (in Alaska)

www.mtasolutions.com



Local
Long Distance
Wireless
Business Solutions
Internet
Directory
DTV



reserved by the mandatory 1914 right-of-way reservation contained in most land patents along the Railbelt, and which has been exercised many times by MTA between 1914 and 1983.

Under these circumstances, MTA declines to execute the Railroad's proffered Blanket Permit, because it believes that the Permit's underlying premises are in error. MTA feels confident that these premises will be addressed and resolved in the reasonably near future by legislative, administrative, or legal actions.

Until such a resolution is reached, MTA will continue to pay to ARRC the reasonable permit and application fees which it has paid heretofore, to insure continued effective coordination between our companies where our respective rights-of-way intersect or are in a parallel configuration.

Sincerely yours,

Robbie Nash
OSP Engineering & Construction Manager,
Matanuska Telephone Association, Inc.

anuska Telephone Association Inc.
1740 South Chugach Street
Palmer, Alaska 99645

907.745.3211
800.478.3211 (in Alaska)

www.mtasolutions.com

EXHIBIT D
PAGE 2 OF 2 PAGES

Local
Long Distance
Wireless
Business Solutions
Internet
Directory
DTV

**EXHIBIT E**

**TO DECLARATION OF ERIC ANDERSON**

**(4 pages)**



*OFFICE OF THE GENERAL COUNSEL*
*TELEPHONE: 907.265.2305*
*FACSIMILE: 907.265.2443*
*EMAIL: behrenda@akrr.com*

**via U.S. and Electronic Mail**

June 3, 2016

Robbie Nash
OSP Engineering & Construction Manager
Matanuska Telephone Association, Inc.
1740 South Chugach Street
Palmer, Alaska 99645

**Re: Your Letter to Alaska Railroad Corporation Regarding Blanket Permit**

Dear Mr. Nash:

I am writing on behalf of the Alaska Railroad Corporation ("ARRC") regarding issues raised in your undated letter to ARRC's Director of Real Estate, Andrew Donovan, which he received on May 3, 2016. Your letter addressed ARRC's request that MTA renew its blanket permit for telephone and other communications lines on ARRC property, including its right-of-way ("ARRC ROW"). Your letter makes assertions regarding the respective legal rights of ARRC and Matanuska Telephone Association, Inc. ("MTA") with which ARRC respectfully, but strongly, disagrees. The purpose of this letter is to address those assertions from ARRC's perspective and, hopefully, to clear up any confusion about the legal situation pertaining to the ARRC ROW.

Before addressing the substance of MTA's legal assertions, it is important to clarify the current status of ARRC Contract No. 5157, which is a blanket permit issued to MTA in 1982 for telephone facilities located or to be constructed in the Alaska Railroad ROW or other Railroad property (the "Permit"). A copy of the Permit, without supplements, is attached. The Permit was scheduled to expire in 2002. Since that date, however, MTA has continued to maintain and operate its permitted facilities on ARRC land, continued to pay the annual Permit fee and regularly submitted to ARRC, for its approval, plans and specifications for new and modified telephone and fiber optic facilities to be constructed in the ARRC ROW.[1/] For its part, ARRC accepted MTA's continued permit payments, responded in due course to MTA's requests for additional and modified facilities and allowed MTA's existing facilities to remain on ARRC land.

[1/] In fact, ARRC's permit file contains ten volumes of materials generated over the past 34 years in conjunction with such requests for approval of new and modified facilities.

EXHIBIT G
PAGE 1 OF 4 PAGES

Notwithstanding the nominal expiration date of the Permit, the course of conduct undertaken by both parties described above demonstrates that, as a matter of law, the Permit has remained in force and effect continuously since it was issued in 1982. Consequently, ARRC's request for MTA to execute a new blanket permit constitutes a renewal of the existing Permit.

We also disagree with MTA's characterization of the Permit. Your letter refers to the Permit as an agreement under which MTA "paid reasonable fees to the Railroad to insure effective coordination between our organizations" with respect to "the uses of our respective rights-of-way, including the installation of upgrades . . . ." But the Permit is much more than a coordination or cooperation agreement, and by its terms relates solely to ARRC's right-of-way, with no mention of any MTA right-of-way.

The Permit is denominated a "Permit and Construction Agreement" that expressly grants to MTA the right to operate and maintain its existing facilities in the Alaska Railroad's right-of-way and to construct additional or modified facilities only upon application to and approval by the Railroad. The Permit does not refer to or provide any documentation of any MTA right-of-way located either on or off Railroad property. Moreover, the Permit provides ARRC with the unilateral right to terminate the Permit, either upon 180 days' notice without cause or immediately if MTA fails to comply with the terms of the Permit. The permit grant language and broad termination rights contained in the Permit are completely incompatible with the idea that MTA has an easement across ARRC's property, including its ROW, where its permitted facilities are located. Simply put, MTA's rights to construct, maintain and operate its facilities in the ARRC ROW flow solely from the Permit and not from any underlying right-of-way or easement rights.

MTA claims, in your letter, that it has existing telephone rights-of-way, separate from the property rights of ARRC, that arose under the Act of March 12, 1914 ("1914 Act"), the federal legislation that directed the President of the United States to create and operate the federally-owned Alaska Railroad. We strongly disagree.

The 1914 Act directed the President to create the Alaska Railroad by, among other things, withdrawing federal land from the public domain. The 1914 Act specifically authorized the establishment of a ROW for the construction of railroads, telegraph and telephone lines "<u>authorized by this grant.</u>" The authority granted in the 1914 Act includes "the power to construct, maintain, and operate telegraph and telephone lines so far as they may be necessary or convenient in the construction and operation of the railroad." The mandate in the 1914 Act that those lines "shall perform generally all the usual duties of telegraph and telephone lines for hire" is therefore limited to those lines constructed by the Alaska Railroad for its own purposes out of necessity and convenience. This conclusion is reinforced by the language regarding the Alaska Railroad's ROW required by the 1914 Act to be included in all Alaskan patents, which specifically reserves "<u>to the United States</u> a right-of-way for the construction of railroads,

telegraph and telephone lines". With respect to the authority to charge a fee for the construction, maintenance and operation of facilities within the ARRC ROW, the 1914 Act specifically granted the Alaska Railroad the power to "lease the said railroad . . . including telegraph and telephone lines . . . under such terms as [the President] may deem proper."

In sum, there was no provision requiring that ROWs created by the 1914 Act, whether for railroad or telegraph/telephone purposes, would provide ownership and operational rights for private entities except under a lease or permit on terms deemed appropriate by the Alaska Railroad. Instead, as the language of the 1914 Act noted above makes clear, the ROWs established pursuant to the 1914 Act, including those for telephone and telegraph lines, were granted to the United States and were intended to remain under the ownership and operation of the federal government.

And that is exactly what happened. For over 60 years, the ROWs designated under the 1914 Act were owned, controlled and operated by the federal government. In 1985, pursuant to the Alaska Railroad Transfer Act, 45 U.S.C. §§ 1200 et seq. ("ARTA"), the United States conveyed its entire interest in the Alaska Railroad's ROW to ARRC, the State of Alaska's statutory public railroad corporation. The conveyance documents issued in conjunction with the transfer of the Alaska Railroad to ARRC do not contain reservations of telephone ROWs to MTA arising under the 1914 Act. For example, the final conveyance documents for ARRC ROW are federal patents issued to ARRC which do not reserve to MTA telephone ROWs arising under the 1914 Act. An example of such a patent is the one conveying to ARRC its interest in the portion of the ARRC ROW where the current Parks Highway Phase II Project is being conducted by the Alaska Department of Transportation & Public Facilities. A copy of that patent is attached. In short, ARRC holds patents giving it exclusive control over the ROW conveyed to it pursuant to ARTA subject only to any pre-existing ROWs or easements expressly reserved in those patents. Your letter did not cite any document that grants an easement interest in the ARRC ROW from the United States to MTA, nor are we aware of any express reservations in ARRC's patents of such ROWs or easements held by MTA in the ARRC ROW that originated under the 1914 Act.

For the reasons noted above, where MTA's facilities occur in the ARRC ROW, they exist there by virtue of the rights granted under the Permit. Although MTA claims that it holds separate ROW rights on ARRC land, it has provided no documentation to support that claim. MTA also fails to explain why, if it holds such ROW rights, it has for many decades, recognized the Alaska Railroad's control of and permitting authority over its ROW. We contend that the reason for MTA's recognition of ARRC's ROW rights through the years simply reflects the fact that ARRC has exclusive control over its ROW absent express reservations in its patents. Lacking such reservations, MTA must obtain permits for its facilities in the ARRC ROW.

Your letter mentions legislative, administrative or legal actions that will "resolve" the issues in the near future. We would appreciate an explanation from MTA regarding that statement. ARRC would certainly expect MTA to have the courtesy of approaching ARRC with these issues before seeking outside action. That is especially true in light of the statements in your letter professing that MTA values coordination and cooperation between the ARRC and MTA. If MTA is seeking or expects to seek outside action affecting ARRC's property rights, we request that you explain what actions you are seeking so that ARRC may have a full and fair opportunity to have input into that process. If MTA is confident in its legal position, it should have no objection to complying with that request.

Finally, it has come to my attention that MTA recently refused to provide ARRC with shape file data for MTA's facilities in the ARRC ROW. I understand that MTA has already assembled those data files and had promised to provide them to ARRC's Real Estate Department. At about the same time that your letter arrived at ARRC, our Real Estate staff was suddenly told that MTA would not provide the data. That position is unacceptable. It is a matter of vital safety and operational concern to both ARRC and MTA that ARRC knows the nature and location of all MTA facilities in ARRC's ROW. MTA's refusal to provide this critical data also flatly contradicts its professed desire to coordinate its facilities and actions with ARRC. MTA's continued refusal to provide the existing shape file data poses unacceptable risks to ARRC's and MTA's facilities, personnel and operations. We urge MTA to provide that data now.

ARRC recognizes and values that it and MTA have long worked together with respect to MTA's permitted facilities. We have no wish to engage with MTA in disputes about ARRC's property rights in our ROW. We hope that the above explanation has helped to clarify those rights and that ARRC and MTA can continue to cooperate in the future under a renewed permit.

If MTA wishes to discuss the above, please have your legal counsel contact me. If MTA staff wishes to arrange to provide ARRC with the shape file data for MTA's facilities in the ARRC ROW, it should contact ARRC's Kristen McDonald at 907.265.2465.

Very truly yours,

Andy Behrend

Andy Behrend
Senior Attorney, Real Estate & Environmental

Enclosures as stated

cc: William R. Hupprich, ARRC, Vice President & General Counsel
Clark Hopp, ARRC, Vice President, Engineering
Andrew Donovan, ARRC, Director, Real Estate

**EXHIBIT F**

**TO DECLARATION OF ERIC ANDERSON**

**(5 pages)**



August 19, 2016

Mr. Andrew Donovan
Director, Real Estate
Alaska Railroad Corporation
327 W. Ship Creek Avenue
Anchorage, Alaska 99501

**Re: Response to Letter Regarding MTA's Blanket Permit**

Dear Mr. Donovan,

I apologize for the delay in responding to the letter dated June 3, 2016, sent by your Senior Attorney, Andy Behrend. Although it is clear that the Alaska Railroad Corporation (ARRC) and Matanuska Telephone Association, Inc. (MTA) have differing interpretations of the 1914 easement for "railroad, telegraph and telephone purposes" and the 1985 Alaska Railroad Transfer Act, we do agree that we both recognize and value a long term relationship between our two entities.

As you know, MTA is a member-owned cooperative that was founded in 1953 to bring telephone service to Southcentral Alaska. Since then, we have worked diligently to expand our services and meet our growing number of customers' needs. In fact, the Alaska Railroad itself has been a member-owner of MTA for over forty years. We do appreciate your continued service and MTA's opportunity to serve you. We hope you can understand why MTA is concerned with the enormous rate increases your Blanket Permit proposes, and the negative financial implications it could have on all of our member-owners.

Stepping back from the issue of the 1914 easement, the Alaska Railroad Transfer Act (ARTA) and the Alaska Railroad Corporation Act (ARCA), we want this letter to focus on just the issue of MTA's Blanket Permit over ARRC properties, and how we may work with the ARRC going forward. In order to move forward with a mutually-acceptable agreement, we would first like to cover the background of the expired Blanket Permit that MTA had been issued in 1982, and how we have been conducting business with the ARRC over the past thirty-plus years. On July 23, 1982 MTA and The Alaska Railroad entered into ARR Contract No. 69-25-0003-5157 (referred to as Contract 5157) for a Blanket Permit for MTA's facilities crossing or located within the federal ARR rights-of-way. MTA's original Blanket Permit committed MTA to pay $50.00 to cover the Railroad's cost incurred in issuing the permit, along with an annual "records maintenance-type" permit fee of $12.00 (Section 3, page 2).

On September 19, 1988 MTA received Supplement No. 1 to Contract 5157, after

Matanuska Telephone Association Inc.
PO Box 3550
Palmer Alaska 99645-3550

800.746.9510
907.761.2510
907.761.2646 (fax)

www.mtasolutions.com



Local
Long Distance
Wireless
Business Solutions
Internet
Directory
DTV

the State of Alaska became the successor in interest to the federally-owned Alaska Railroad effective January 6, 1985. This Supplement No. 1 deleted Section 3 of the original contract and replaced it with a new Section 3, stating that the permittee shall pay $400 per year, commencing on January 1, 1989 and ending upon the expiration of the permit (which was to be in 2002). After the expiration of Contract 5157 in 2002, MTA has continued to pay the ARRC a monthly amount of $168.48 from June 2003 to May 2009, and a monthly amount of $172.57 from May 2009 to present. MTA has also paid the application fees for any new MTA facilities that were being installed, which was $200 per new facility up until April of 2015, when the application fee was drastically increased to $750 per application.

Your June 3, 2016 letter summarized by stating MTA had recently refused to provide the ARRC with shape file data for MTA facilities located within the ARRC rights-of-way. MTA's continuing applications, notifications, and payments to the ARRC illustrate our willingness to cooperate with the Alaska Railroad for our mutual benefit, to promote safety and economic development. Every facility that MTA has placed within 100 feet of ARRC's railroad tracks has been preceded by a plan design delivered to ARRC. Your letter even references ARRC's ownership of a permit file that contains "ten volumes of materials generated over the past 34 years in conjunction with such requests for approval of new and modified facilities."

MTA's Right of Way Department was notified, to its surprise, of the drastic increase in the ARRC permit fee structure when this proposed increase was included in a Letter of Non Objection issued to MTA for a new facility on July 21, 2015 (attached). After receiving this unexpected letter, MTA did not receive any draft of the new proposed Blanket Permit until nearly a year later, on April 7th, 2016; and that draft did not even include proposed fee increases for longitudinal facilities, which we subsequently became aware of.

MTA has a two person Right-of-Way Department, and ARRC's request for shape file data will be a large undertaking. This would consume a large amount of our resources during our busiest time of the year, and it seems unnecessary for us to complete it as requested, when the Railroad already has in hand all of the information you are looking for. With that said, there may be MTA lines that have been abandoned, and we would be happy to advise ARRC of any MTA lines or facilities that can be removed from your records and/or maps.

The Alaska Railroad is proposing a new fee structure of $500 *per facility crossing* and $1.00 *per linear foot* for longitudinal facilities. This proposed annual fee would be increased by 3% each year, and this in addition to the per-application fee of $750 for new facilities. The accounting aspect alone of an annual, increasing fee (rather than a blanket fee), and calculated not as a blanket fee but on the basis of each individual MTA facility and each individual MTA crossing of an ARRC easement, seems painstaking, convoluted, and very, very expensive to MTA. We do, however, recognize the need to

increase existing blanket fees to account for inflation since 2002, in order to cover ARRC's costs incurred in issuing permits. We have two options to propose, as listed below:

**Option 1:** MTA has been paying $400 per year to cover the existing facilities under Blanket Contract 5157 from 1989. Using the Consumer Price Index Inflation Calculator, we propose a new adjusted annual blanket permit fee of $800. Also applying this Index calculation, we believe that the application fees for any new facilities should be set at $400 per application, rather than $750 (this is based on today's inflated value of 1988's $200).

**Option 2:** MTA respectfully declines a renewal of any Blanket Permit for crossings or longitudinal use and will pay the $1250 application fee for a Right-of-Way Use Permit on an as-needed basis for any new facilities.

These proposals are made in the spirit of MTA's cooperation with ARRC as a member-owner of MTA, and in the interest of resolving this matter in a mutually equitable way. Nothing in these proposals or in this letter should be construed as prejudicing or waiving any other remedy that MTA may have available to it, if neither of the proposals contained in this letter is acceptable to ARRC.

Again, MTA does acknowledge and appreciate the long-standing business and membership relationship we have had over many years with the Alaska Railroad. We hope that you will find one of our proposals acceptable, so that we may continue to provide service to Alaskans, including ARRC, at a fair and reasonable price and in a timely manner.

Sincerely,

Robbie Nash

Robbie Nash
Engineering & Construction Manager,

Enclosures as stated



**REAL ESTATE DEPARTMENT**
**TEL 907.265.2617**
**FAX 907.265.2450**

July 21, 2015

Matanuska Telephone Association, Inc.
PO Box 3550
Palmer, Alaska 99645-3550

Attn: Ms. Becky Glenn
Right-of-Way Department

Ref: Letter of Non-Objection
For Work at Parks Highway MP 47± and a New Facility at Parks Hwy & Vine
Alaska Railroad Corporation (ARRC) Contract No. 5157

Dear Ms. Glenn:

Alaska Railroad Corporation (ARRC) has no objections to the Matanuska Telephone Association (MTA) request dated May 14, 2015, to:

(1) Pull a telephone line through an existing underground conduit system bored beneath the tracks at ARRC Milepost 164.2. The existing conduit system was approved to be installed in 1991 under the ARRC tracks and right-of-way.

(2) Install an underground telecommunications line and innerduct at Parks Highway across from Vine Road, at approximately ARRC Milepost 165.25, as further described in your application.

Approval for this work is given subject to the following:

- Work is authorized to occur between July 15, 2015 and October 31, 2016. In the event that work cannot be completed in this time-frame, MTA must submit a new application, plans and work schedule for review and approval by ARRC.
- MTA must contact this office within 5 days in advance of work commencing and provide notice when work is completed.
- All work must be done in compliance with the Standard Specifications for Work on Railroad Property.

As you may know, MTA's Blanket Utility Permit, ARRC Contract No. 5157, expired in 2002. It is the desire of ARRC to work with MTA to issue a new blanket permit in the near future. ARRC will no longer accept requests to add new facilities to the expired permit.

EXHIBIT F

PAGE 4 OF 5 PAGES

MTA's existing facilities on ARRC property need to be identified for coverage under the new blanket permit. In preparation for the issuance of a new blanket permit, ARRC is requesting MTA identify all existing facilities that should be covered by the new blanket permit. Please provide MTA's as-built drawings of the facilities that will be covered. If you do not have this capability, we would appreciate a list of the facilities and their location.

I also want to make you aware that ARRC has recently reviewed the permit fee structure, which has not been modified in 25 years. Fee structure will be as follows:

- **$500 per facility** (ROW utility crossing overhead or underground, vaults, man holes, pedestal, etc.); and
- **$1 per linear foot** (cable, fiber, pipe, etc.) that runs longitudinally within the Right of Way.

Permit Agreements consisting of multiple facilities or longitudinal occupancy may receive reductions in the above fee structure.

If you have any questions, please do not hesitate to call me at 265-2617 or Kristen McDonald at 265-2465.

Sincerely,

Andrew Donovan
Director, Real Estate

cc: Rachel Maddy ARRC
Kristen McDonald ARRC

---

**Notice of Work Completion:**
(Please fax or return by e-mail when work is completed)

Date Work Completed: Date: ____/____/____

______________________________ (Signature)

______________________________ (Date)

______________________________ (Name)

______________________________ (Title)

EXHIBIT F

PAGE 5 OF 5 PAGES

**EXHIBIT G**

**TO DECLARATION OF ERIC ANDERSON**

**(2 pages)**

ALASKA
RAILROAD

**REAL ESTATE DEPARTMENT**
**TEL 907.265.2617**
**FAX 907.265.2450**

***Via Certified Mail, Return Receipt Requested and First Class U.S. Mail***

October 28, 2016

Mr. Robbie Nash
Engineering & Construction Manager
Matanuska Telephone Association, Inc.
P.O. Box 3550
Palmer, Alaska 99645

Re: Your Letter of August 19, 2016

Dear Mr. Nash:

This letter responds to yours dated August 19, 2016. One of the ways forward you proposed in that letter was for the Alaska Railroad Corporation ("ARRC") and Matanuska Telephone Association, Inc. (MTA") to enter into a new blanket permit for MTA facilities located on ARRC land. In order to explore that option, I unsuccessfully attempted to contact you by telephone to review the process to enter a new permit agreement. In order to proceed with a permit to replace the expired blanket permit (ARRC Contract No. 5157), which has been in holdover status for many years, ARRC will need to have the enclosed permit application completed and returned. ARRC may request additional information and clarification as the information is reviewed. Once we process the application, it would then be appropriate to meet and review the fee structure for the permit in light of ARRC's statutory requirement to obtain market rent for use of its land.

As we previously discussed, ARRC is agreeable to include in the setting of rent under a new blanket permit consideration of an appraisal of the value of the permit rights associated with MTA facilities on ARRC property completed by an MAI-designated appraiser consistent with ARRC's Appraisal Instructions. Valuation by an independent third party would assist with our mutual objective of identifying a reasonable fee amount for permitting MTA's facilities.

We understand that our recent fee restructuring has resulted in a significant increase in MTA's permit cost. We appreciate your cooperation with respect to identifying a set of annual increases aimed at achieving the required market rent over a reasonable period of time.

In previous communications, ARRC and MTA discussed the submission by MTA of electronic drawings or shape files of MTA's facilities on ARRC property. As previously mentioned, information on the precise locations of MTA's facilities is critical to ARRC's ability to conduct safe railroad operations and to manage other uses of its land. In addition to those critical

**EXHIBIT** G

**PAGE** 1 **OF** 2 **PAGES**

functions, an understanding of the location of MTA facilities on ARRC land are essential to setting an appropriate rent under the blanket permit.

If you have any questions regarding the enclosed application, please feel free to contact me directly at (907)265-2617 or DonovanA@akrr.com

Sincerely,

Andrew Donovan
Director, Real Estate

Enclosure

EXHIBIT G
PAGE 2 OF 2 PAGES

Certificate of Service

I hereby certify that on February 22, 2021, I filed a true, correct and complete copy of the foregoing Declaration of Eric Anderson and attached Exhibits A through G with the Clerk of Court for the United States District Court, District of Alaska by using the CM/ECF system Participants in Case No. 3:20-cv-00232-JMK who are registered CM/ECF users will be served by the CM/ECF system.

Thomas E. Meacham, Attorney at Law
By: /S/ Thomas E. Meacham