Thomas E. Meacham, Attorney at Law
9500 Prospect Drive
Anchorage, Alaska 99507
Tel: 907-346-1077
Email: tmeacham@gci.net

*Attorney for Proposed Intervenor-Defendant*
*Matanuska Telephone Association, Inc*.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA RAILROAD CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS ASSOCIATION, | ) ) ) ) | Case No. 3:20-cv-00232-JMK |
| | ) | |
| Defendant, | ) | **REPLY IN SUPPORT OF** |
| | ) | **MOTION TO INTERVENE** |
| and | ) | **OF DEFENDANT-APPLICANT** |
| | ) | **MATANUSKA TELEPHONE** |
| MATANUSKA TELPHONE ASSOCIATION, INC., | ) | **ASSOCIATION, INC.** |
| | ) | |
| [Proposed] Intervenor-Defendant. | ) ) | |

The motion by Matanuska Telephone Association, Inc ("MTA") to intervene as a defendant in this case is opposed by plaintiff Alaska Railroad Corporation ("ARRC").

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK       Page 1 of 12

MTA's present Reply memorandum will respond to ARRC's opposition.[1]

**A. Intervention as of right.** MTA has moved to intervene as of right, pursuant to Federal Civil Rule 24. MTA has satisfied each of the four factors necessary to obtain intervention as of right.[2] The court is to "generally interpret the requirements broadly in favor of intervention."[3]

**1. MTA's motion to intervene was timely.** ARRC has acknowledged the timeliness of MTA's intervention filing.[4]

**2. MTA has a "significant protectable interest" in the outcome of the present litigation.** An intervention applicant generally satisfies the "relationship" requirement if the resolution of the plaintiff's claims actually will affect the applicant.[5] MTA's required showing of a "significant protectable interest" is reflected in its continued use and occupancy, as a telephone utility, of the 1914 easement reservation that has been reserved and used for those legislated purposes under authority of former 43 U.S.C. Sec.

---

[1] Motion and supporting documents, Dockets 41-44; ARRC's Opposition, Docket 51.

[2] *Donnelley v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

[3] *Donnelley*, at p. 409.

[4] Docket 51, at p. 2.

[5] *Montana v. U.S. Envtl. Protection Agency*, 137 F.3d 1135, 1141-42 (9th Cir. 1998).

REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK           Page 2 of 12

975 (the "1914 easement reservation"),[6] and later under its successor act, the Alaska Railroad Transfer Act of 1982 ("ARTA").[7] It is plaintiff ARRC's asserted interpretation of the 1914 easement reservation *vis a vis* Flying Crown that will also directly impinge upon MTA's legal relationship with ARRC.

ARRC's claim that MTA has no protectable interest is premised on the Railroad's claim that the only lawful connection that MTA could have to the 1914 easement's "telephone" purposes is through permits now issued and controlled by ARRC, and as to which ARRC has sought to impose drastic fee increases upon MTA.[8] Yet this argument has as its basic premise ARRC's assertion that it will prevailing on its "exclusive-use for railroad purposes" claim against Flying Crown. ARRC's defense against MTA's intervention turns the standard for intervention on its head. The Railroad cannot prevent the intervention of a proposed quiet-title defendant by asserting the correctness of its own position regarding land title (the very issue it has raised in this litigation), and then use that position to prevent MTA's interest and participation on that very issue.

Further, ARRC may not defeat intervention by claiming that the principle that a tenant is estopped from challenging its landlord's title prevents MTA from challenging the

---

[6] Section 1 of the Act of March 12, 1914 (codified at 43 U.S.C. §§ 975c and 975d); 38 Stat. 305, repealed by ARTA, Pub. L. 97-468, Title VI, § 615(a)(1).

[7] 45 U.S.C. Sec. 1201, *et seq.*, Pub. L. 97-468, 96 Stat 2556 (Jan 14, 1983).

[8] Docket 51 at p. 2; Dockets 43, 43-1.

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK         Page 3 of 12

scope of ARRC's interest in the 1914 easement reservation, or that MTA has no "standing" to raise such a challenge.[9] The estoppel principle cannot apply to a circumstance where, as here, it is plaintiff ARRC that is newly alleging a broad, "exclusive-use" scope of its title against a defendant, and which defendant and others adversely affected by that very claim are legitimately compelled to defend against it by challenging the scope of ARRC's claim.[10] It is the Railroad, as plaintiff, that has placed the scope of its title at issue in this lawsuit.

    **a.  The 1914 easement reservation is the common thread between Flying Crown and MTA**.  ARRC asserts in its Complaint and related filings that it has ownership (or "exclusive use" (effectively amounting to *de facto* ownership) of the 1914 reservation, thereby excluding all other compatible uses, except at the sufferance of ARRC.  This broad claim, if lawful, would negate the property rights of the many underlying, servient landowners (such a Flying Crown) to make concurrent and compatible use of the easement; it would also negate the compatible easement occupancy rights of other legitimate users of the 1914 reservation.  ARRC's assertions in this litigation have a direct, negative connection not only to Flying Crown, but to all entities

---

[9] Docket 51 at pp. 5-6.

[10] *See Findley v. Lynn*, 164 P.2d 989, 991 (Okla. 1945) (holding defendant is "not estopped to set up his superior title against the landlord" *where case was "instituted by plaintiffs to quiet title, and to determine adverse claims of title*" [emphasis suppled]).

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK              Page 4 of 12

that either own land burdened by the 1914 reservation, or who (like MTA) occupy and use the 1914 reservation for purposes specifically recognized in the 1914 Act.

The outcome of the present litigation will give definition to these competing claims of right. The legitimate legal scope and content of the 1914 easement reservation are central to reaching this definition.[11] In this aspect, MTA is as greatly, and as directly, affected by this litigation as is Flying Crown, although their separate relationships to ARRC and their uses of the 1914 easement are not identical.[12]

**b. The 1914 easement reservation continues to have relevance to the parties' and intervenor-applicant MTA's legal claims.** As MTA emphasized in its motion to intervene, the 1914 easement reservation contained specific authorization for use of the reservation for "telephone and telegraph" purposes, as well as for railroads. Despite

---

[11] The 1914 reservation is not identifiable as "fragmented" or "segmented," with one specific location applicable to the Flying Crown lands, and another applicable to MTA's telephone facilities. The unitary, indivisible 1914 easement reservation for railroad, telephone and telegraph uses was imposed, without internal distinctions or limitations, on all federal land conveyances occurring after the date of its enactment.

[12] Before the present litigation, ARRC's focus appeared to be centered on ARTA, 45 U.S.C. §1203(b)(1)(C), (D) (implementing a new "exclusive-use easement"), and 45 U.S.C. § 1202(6) (defining such an easement). With the present lawsuit, ARRC -- apparently for the first time -- is asserting that an "exclusive-use easement" for railroad purposes has in fact existed throughout, as the controlling element of the 1914 statutory easement reservation. This broader claim has thus implicated the telephone easement interests of MTA, which has been occupying and using significant portions of the 1914 easement reservation for its telephone purposes since 1953. *See* Declaration of Eric Anderson, Docket 43, at p. 2.

REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK        Page 5 of 12

ARRC's argument seeking to de-legitimize the 1914 easement reservation because it "has been repealed for nearly 40 years,"[13] this Act continues to have crucial relevance in the present litigation. This is because when ARTA was implemented, only those real property interests that the federal Alaska Railroad possessed under the 1914 easement reservation were to be conveyed by the United States to the state-owned ARRC under ARTA,[14] with the specific exception of certain Denali National Park lands and unresolved Native land claims that were to have an "exclusive-use easement;" *see* fn. 3 above.[15]

ARRC's dismissive posture toward the 1914 Act's relationship to MTA belies this Act's vital importance to the Railroad's position in relation to both Flying Crown and MTA. If ARRC fails to prove that the federal Alaska Railroad in fact held an "exclusive-use easement" reserved to it by the 1914 Act and under applicable case law (and thus that this existing "exclusive-use" right for railroad purposes could arguably be conveyed to ARRC under ARTA), ARRC's entire case against Flying Crown must fail. Therefore, intervenor-applicant MTA has a "significant protectable interest" in the Court's

---

[13] Doc. 51, at p. 4

[14] ARTA, 45 U.S.C. §§1202, 1203, 1205.

[15] The Alaska Legislature has sought to implement this crucial factor, *i. e.,* the content and extent of the federal railroad 's real property ownership under the 1914 reservation existing at the time of the ARTA transfer from the United States; *see* Alaska Statutes 42.40.350(a). ARRC is a state entity, and thus is subject to the Alaska Constitution and statutes; *see Laverty v. Alaska Railroad Corp.*, 13 P.3d. 725, 731 (Alaska 2000).

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK  Page 6 of 12

Case 3:20-cv-00232-JMK   Document 56   Filed 03/31/21   Page 6 of 12

determination of the scope of the 1914 easement reservation, just as does Flying Crown -- an interpretation that ARRC has placed at issue as the central legal component of its lawsuit.

ARRC's opposition to MTA's intervention asserts that "as a repealed statute, [the 1914 Act] cannot on its own support any new claims of possessory rights by MTA."[16] MTA is not asserting "*new* claims" against ARRC. Its relationship with the federal Alaska Railroad began in 1953 under the 1914 Act.[17] It continues on the same basis after ARTA, which transferred to the State and ARRC only those real property interests that the federal railroad had held under the 1914 Act.[18]

**3. Disposition of this action may, as a practical matter, impede or impair MTA's ability to protect its interest.** As argued above, any judicial interpretation of the 1914 easement reservation will be the keystone to the resolution of ARRC's suit against Flying Crown. Any court decision regarding ARRC's asserted ongoing "exclusive-use right," as ARRC claims was embodied in the 1914 Act, may be a decision of first impression in Alaska. Flying Crown's posture as the named defendant arises from its status as a servient landowner, and not from a position as a co-user of the 1914 easement.

---

[16] Docket 51, at p. 4.

[17] Anderson Declaration, Docket 43 at p. 2.

[18] ARTA at 45 U.S.C. §§1202, 1203, 1205; AS 42.40.350(a).

REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK    Page 7 of 12

Thus absent MTA's intervention, any judicial decision on the scope and content of the 1914 easement reservation will examine the 1914 Act from only the plaintiff's and the servient-landowner's standpoints, and yet may have a precedential effect on MTA's continued telephone utility use of the easement.

Flying Crown cannot be reasonably expected to argue its own position regarding the nature of the 1914 easement reservation by asserting circumstances and effects that are not inherent to it as a servient-estate landowner. Yet a judicial decision as to ARRC's "exclusive-use" claim and Flying Crown's defense will have direct and anticipated implications for MTA, whether those implications may arise by way of future collateral estoppel, persuasive legal precedent, or otherwise.

**4. The existing parties may not adequately represent the applicant's interest.**

From the foregoing, it should be clear that defendant Flying Crown, as a servient-estate landowner, does not (and cannot) represent the interests of a user and occupant of the 1914 easement reservation such as MTA. MTA asserts that it is, as a telephone utility, is one of the listed dominant-estate easement holders under the 1914 easement reservation and thus that ARRC's occupancy is not "exclusive," an assertion that ARRC has challenged. Nevertheless, MTA's interests as an asserted occupant of the dominant estate are not (and cannot be expected to be) parallel to or compatible with Flying Crown's own position as a servient-estate occupant.

REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK    Page 8 of 12

ARRC cites *Union Central Life Ins. Co. v. Hamilton Steel Products Inc*.[19] for the proposition that representation is "adequate" where the same attorney may represent an original defendant (Flying Crown) and a proposed intervenor-defendant (MTA). The cited case is not relevant to the present circumstances because it arose out of the specialized field of labor relations law, closely governed by specialized federal statutes and procedural precedents. In fact, the appellate court, rejecting the application of United Steel Workers of America, AFL-CIO to intervene as of right, held that

> ... *appropriate officers and agents of the Union have been sued in their representative capacities and indeed are represented by the same counsel as the Union*. There has been no showing by the Union why these representatives cannot adequately represent the Union's interests [citing cases]...... *In effect, the Union is already a party through the four named defendant representatives*. In this posture, it is difficult to understand what the Union seeks to accomplish by intervening itself. Surely its four class representatives, already appearing through Union counsel, can safeguard its interests in this controversy.[20]

The inapplicability of *Union Central* to the present case on the issue of shared attorney representation should be evident. Flying Crown and MTA, while sharing an attorney, have no common business or fiduciary relationships whatsoever, and even their individual relationships with plaintiff ARRC are separate and distinct.

---

[19] 374 F. 2d 820, 823 (7th Cir. 1967).

[20] *Id*. [emphasis supplied],

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK      Page 9 of 12

ARRC's claim (unsupported by case citations) that MTA's intervention should be denied because it is somehow "stack[ing] multiple parties and counterclaims," and essentially piling-on ARRC by "coordinating" with intervenor-applicant ENSTAR, lacks any veracity or support. ARRC has failed to show that MTA and ENSTAR, as separate public utilities adversely affected by ARRC's claims in separate ways, have somehow conspired to join together to illegitimately complicate this lawsuit.

In view of the foregoing, MTA urges the Court to hold that MTA may intervene in this litigation as of right, under Federal Civil Rule 24.

**B. MTA has sought permissive intervention under Federal R. Civ Proc. 24(b)(1)(B).** MTA's application for permissive intervention in this case has also been opposed by plaintiff ARRC. MTA meets the recognized permissive-intervention criteria. It has (1) a defense that shares a common question of law or fact with the main action (*i. e.*, the scope of the 1914 easement reservation as asserted by ARRC); (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *See Donnelley v. Glickman*.[21] The only case cited by ARRC in opposition to criterion (3) held that voters of one voting district in Louisiana lacked standing to intervene to challenge alleged gerrymandering in another district, a district that was the sole focus of the

---

[21] 159 F.3d. 405, 412 (9th Cir. 1998).

REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK       Page 10 of 12

litigation.[22] The *Hays* case is inapplicable because ARRC, as plaintiff, has asserted the "exclusive-use" scope of the 1914 easement reservation without qualification or limitation, and that assertion directly affects both Flying Crown and MTA. As MTA's Declaration and Exhibits have shown, ARRC's assertion regarding the 1914 reservation poses the direct threat of significant and imminent financial injury in fact to MTA, one of the three essential elements comprising standing.[23] The other elements (the cause-and-effect relationship between MTA's injury and ARRC's "exclusive-use" claim, and the fact that a an outcome of the litigation favorable to MTA will redress the threat) are also met here.[24]

    **C. Conclusion**. For all of the foregoing reasons, MTA urges that the Court determine that MTA should be allowed to intervene as a defendant in this litigation under either intervention as of right or permissive intervention, pursuant to applicable court rules.

    Dated at Anchorage, Alaska this 31st day of March, 2021.

                                      /S/
                                    Thomas E. Meacham, ABA No. 7111032
                                    Counsel to intervenor-defendant applicant
                                    Matanuska Telephone Association, Inc.

---

[22] *United States v. Hays*, 515 U.S. 737, 742 (1995).

[23] *See* Dockets 43, 43-1.

[24] *Hays, id.*, at p. 742.

**REPLY OF PROPOSED INTERVENOR-
DEFENDANT MATANUSKA TELEPHONE ASSN., INC.**
*Alaska Railroad Corp. v. Flying Crown*, No. 3:20-cv-00232-JMK         Page 11 of 12

Certificate of Service

I hereby certify that on March 31, 2021, I filed a true, correct and complete copy of the foregoing document with the Clerk of Court for the United States District Court, District of Alaska by using the CM/ECF system  Participants in Case No. 3:20-cv-00232-JMK who are registered CM/ECF users will be served by the CM/ECF system.

Thomas E. Meacham, Attorney at Law
By:     /S/ Thomas E. Meacham