IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION,<br><br>        Plaintiff,<br><br>    vs.<br><br>FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS ASSOCIATION,<br><br>        Defendant,<br><br>MUNICIPALITY OF ANCHORAGE, DEPARTMENT OF LAW,<br><br>        Intervenor-<br>        Defendant. | Case No. 3:20-cv-00232-JMK<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I.   <u>INTRODUCTION</u>

Before the Court at Docket 13 is Plaintiff Alaska Railroad Corporation's ("ARRC") Motion for Summary Judgment. Defendant Flying Crown Subdivision Addition No. 1 and Addition No. 2 Property Owners Association ("Flying Crown") filed an abbreviated Response in Opposition at Docket 81. ARRC filed a consolidated Reply in

support of its Motion for Summary Judgment and Response in Opposition to Flying Crown's cross motion at Docket 91.[1]

Additionally, before the Court at Docket 84 is Defendant Flying Crown's Cross Motion for Summary Judgment. Flying Crown supports its Cross Motion for Summary Judgment with a "Consolidated Memorandum In Opposition to Plaintiff's Motion for Summary Judgment and In Support of Flying Crown's Cross-Motion for Summary Judgment" at Docket 85. ARRC's consolidated Response is filed at Docket 91. Flying Crown filed its Reply at Docket 94.

Intervenor-Defendant Municipality of Anchorage ("the Municipality") filed a Response in Opposition to ARRC's Motion for Summary Judgment, entitled "Municipality of Anchorage's Memo in Support of Opposition to Plaintiff's Motion for Summary Judgment" at Docket 86.

Amici curiae ENSTAR Natural Gas Company and Alaska Pipeline Company (collectively, "ENSTAR") filed an amicus brief at Docket 88 in support of Flying Crown's Opposition to ARRC's Motion for Summary Judgment. Amicus curiae Matanuska Telecom Association, Inc. ("MTA") filed an amicus brief at Docket 97 in support of Flying Crown's Motion for Summary Judgment. With the Court's permission, ARRC filed a sur-reply to MTA's amicus brief at Docket 111.

---

[1] ARRC's original consolidated Reply/Response appears at Docket 89, but was incorrectly filed. Docket 91, therefore, appears as an Errata but contains the complete, correctly filed version.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*            Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment            Page 2
Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 2 of 28

The Parties presented oral arguments on November 30, 2021, and December 15, 2021, before this Court.[2] Per the discussion below, ARRC's Motion for Summary Judgment at Docket 13 is **GRANTED**. Flying Crown's Cross Motion for Summary Judgement at Docket 84 is **DENIED** without prejudice.

## II. BACKGROUND

The Court's analysis requires an understanding of complicated legislative and factual context dating back to the turn of the 20th century. During the early 1900s, in the wake of the Klondike Gold Rush, as many as fifty private companies were formed for the purpose of constructing railroads in the Territory of Alaska.[3] Observing the failures and financial ruin of these private companies, while recognizing the importance of reliable rail travel to the commercial development of the Territory, Congress passed the Alaska Railroad Act of 1914 ("1914 Act").[4] The 1914 Act authorized the President to locate, construct, and operate a federal railroad in Alaska and to "acquire rights of way, terminal grounds, and all other rights" necessary for its construction.[5] The Act also directed the

---

[2] Due to inclement weather, the Court was forced to continue the November 30, 2021, oral argument to December 15, 2021. *See* Docket 120.

[3] Docket 1 at 3.

[4] Act of March 12, 1914, 38 Stat. 305 (formerly codified at 43 U.S.C. § 975, *et seq.*) ("1914 Act"), *repealed by* Alaska Railroad Transfer Act, Pub. L. 97-468, Title VI, § 615(a)(1), 96 Stat. 2556, 2577–78 (1983).

[5] 1914 Act, § 1 ("Terminal and station grounds and rights of way through the lands of the United States in the Territory of Alaska are hereby granted for the construction of railroads, telegraph and telephone lines authorized by this Act, and in all patents for lands hereafter taken up, entered or located in the Territory of Alaska there shall be expressed that there is reserved to the United States a right of way for the construction of railroads, telegraph and telephone lines to the extent of one hundred feet on either side of the center line of any such road. . . .").

federal government to reserve a right-of-way in patents issued for all lands conveyed out of federal ownership.[6]

On February 15, 1950, the United States issued federal patent No. 1128320 to Thomas Sperstad ("1950 Sperstad Patent"), Flying Crown's predecessor-in-interest, granting a parcel of land known as the Sperstad Homestead.[7] The Sperstad Patent explicitly "reserved to the United States a right-of-way for the construction of railroads, telegraph and telephone lines in accordance with the Act of March 12, 1914 [(]38 Stat. 305)."[8] An airstrip was later developed on the Sperstad Homestead, along the federal government's right-of-way ("ROW"), and coexisted peacefully with the operations of the railroad.[9] According to Flying Crown, when it developed the subdivision, a portion of this airstrip was included and it is now used by the homeowners.[10] The Municipality has at least three properties passed to it by federal patents that contain the same language as the Sperstad Patent, *i.e.*, reserving the federal government's interest in its ROW pursuant to the 1914 Act.[11]

In 1981, Senator Ted Stevens introduced "on behalf of himself and Senator [Frank] Murkowski S.1500, a bill to provide for the transfer of the Alaska Railroad to the State of Alaska."[12] Later, in 1983, Congress enacted the Alaska Railroad Transfer Act of

---

[6] *Id.*
[7] Docket 85 at 7.
[8] *Id.* (quoting Docket 13-1).
[9] According to Flying Crown, "[a] portion of the airstrip overlaps with the outer edges of Plaintiff Alaska Railroad Corporation's [] easement." Docket 85 at 4.
[10] *Id.* at 8.
[11] Docket 86 at 4.
[12] S. Rep. No. 97-479, at 5 (1982).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                Page 4
Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 4 of 28

1982 ("ARTA"), which authorized the transfer of nearly all the federal Alaska Railroad's property rights to the State of Alaska's new Alaska Railroad Corporation ("ARRC").[13]  The Secretary of Transportation was directed to transfer "all rail properties of the Alaska Railroad" to ARRC, which received all interests that were held at that time by the United States.[14]  Relevant to this case, Section 1203 of ARTA describes the procedures that the Secretary was directed to follow in making such transfers.[15]  The federal Alaska Railroad's ROW contained in the Sperstad Patent was transferred to ARRC via interim conveyance which "vest[ed] in the State exactly the same right, title, and interest in and to the rail properties identified therein as the State would have received had it been issued a patent by the United States."[16]  The Secretary then was directed to survey the land conveyed by interim conveyance and issue a patent.[17]

In 2006, the United States apparently perfected this interim conveyance and transferred its full interest to the state of Alaska in Patent No. 50-2006-0363 ("2006 Patent"), which conveyed an exclusive-use easement across the property subject to the 1950 Sperstad Patent.[18]  The 2006 Patent states:  "[p]ursuant to [ARTA], the right, title,

---

[13] *See* 45 U.S.C. § 1203(a) ("Subject to the provisions of this chapter, the United States, through the Secretary, shall transfer all rail properties of the Alaska Railroad to the State.").

[14] ARTA defines all "rail properties of the Alaska Railroad" to mean "all right, title, and interest of the United States to lands, buildings, facilities, machinery, equipment, supplies, records, rolling stock, trade names, accounts receivable, goodwill, and other real and personal property, both tangible and intangible, in which there is an interest reserved, withdrawn, appropriated, owned, administered or otherwise held or validly claimed for the Alaska Railroad by the United States or any agency or instrumentality thereof as of January 14, 1983, but excluding any such properties acquired, in the ordinary course of business after that date but before the date of transfer. . . ." 45 U.S.C. § 1202(10).  The definition goes on to include several exclusions irrelevant to this case.

[15] *See id.* at § 1203(b)(1)(A)–(D).

[16] *Id.* at § 1203(b)(3).

[17] *Id.*

[18] Docket 13 at 10.

---

and interest granted by the United States in the above-described real property that is located within the right-of-way of the Alaska Railroad shall be not less than an exclusive-use easement as defined in Sec. 603(6) of ARTA."[19]  Flying Crown alleges it was not notified of the issuance of the 2006 Patent.[20]  Although Flying Crown currently accesses the portion of the runway underlying the ROW free of charge, ARRC previously has charged $4,500 per year for a permit to use the property.[21]

In 2019, Flying Crown sent a letter to ARRC claiming that the transfer of the federal Alaska Railroad's ROW had "attempted to award property rights no longer owned by the federal government."[22]  Flying Crown demanded that "ARRC immediately proclaim, by means of a legally recordable document, that it relinquishes any and all claim to 'exclusive use' of the right-of-way[.]"[23]  This ongoing dispute appears to be at least partially born out of Flying Crown's displeasure with ARRC's insistence that the subdivision obtain a permit to access lands (*i.e.*, the airstrip) encumbered by the ROW.[24]  According to Flying Crown, many homeowners have purchased homes and made significant alterations to their properties within the Flying Crown subdivision to gain access to the airstrip, and are concerned about future access.[25]

On September 21, 2020, in response to Flying Crown's demand letter, ARRC filed this action seeking a "judgment quieting title in the ROW crossing defendant's

---

[19] Docket 13-2 at 2.
[20] Docket 85 at 10.
[21] *Id.* at 12.
[22] Docket 13 at 10.
[23] *Id.* at 11.
[24] Docket 85 at 11–12.
[25] *Id.*

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                                        Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                    Page 6
Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 6 of 28

property and a finding that ARRC's interest in that ROW includes the entire interest previously held by the United States federal government, and all rights contained within the definition of an 'exclusive use easement' under 45 U.S.C. § 1202(6)."[26]  ARRC maintains that it cannot continue to operate the railroad safely or efficiently without clarifying the rights to and retaining authority over its ROW on Flying Crown's property.[27]

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[28]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[29]  To present a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."[30]  "A fact is material if it could affect the outcome of the suit under the governing substantive law."[31]  If the evidence provided by the nonmoving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[32]  Once the moving party has met its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the

---

[26] Docket 1 at 10.
[27] *Id.* at 8.
[28] Fed. R. Civ. P. 56(a).
[29] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).
[30] *Anderson*, 477 U.S. at 248.
[31] *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Anderson*, 477 U.S. at 248).
[32] *Anderson*, 477 U.S. at 249–50.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*     Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment     Page 7

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 7 of 28

adverse party's pleading," but must provide evidence that "set[s] forth specific facts showing that there is a genuine issue for trial."[33] Conclusory allegations will not suffice.[34]

As a threshold matter, the Court finds that summary judgment is appropriate in this case. In determining whether to grant or deny summary judgment, a court need not "scour the record in search of a genuine issue of triable fact."[35] A court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."[36] The Parties agree that the record presents no disputed issues of material fact.[37]

## IV. DISCUSSION

Set to this storied background, the matter before the Court boils down to one relatively straightforward question: what property interest does ARRC possess in its ROW that crosses Flying Crown's property? ARRC posits that it possesses at least an "exclusive-use interest" in the ROW.[38] ARRC requests that this Court grant summary judgment in its favor, quieting title to the ROW, and finding that "ARRC's interest in that ROW includes the entire interest previously held by the United States federal government, and all rights contained within the definition of an 'exclusive use easement' under 45 U.S.C. § 1202(6)."[39]

---

[33] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (internal citations omitted).
[34] See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).
[35] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation and citation omitted).
[36] *Id.* (internal quotation and citation omitted).
[37] *See* Dockets 13 at 12; 85 at 5; 86 at 3.
[38] Docket 13 at 1.
[39] Docket 1 at 10.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                    Page 8
Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 8 of 28

Flying Crown answers that ARRC can possess no more than a "common-law simple easement" for the purpose of railroad construction and operation.[40]  Flying Crown does not dispute that the federal government's interest in the ROW passed to ARRC under ARTA.[41]  It does, however, dispute the nature of the interest that was transferred.  The crux of Flying Crown's contention is that the federal government reserved a simple easement in the ROW at the time the 1950 Sperstad Patent was issued, and, therefore, that is the greatest interest that could be conveyed to ARRC under ARTA.  In other words, the United States could not "lawfully convey a property interest greater than what it actually possessed."[42]  Flying Crown requests that this Court grant summary judgment in its favor and find that: (1) "[t]he 1914 Act right of way reserved across federal lands, as reflected in the Sperstad Patent, is a common-law simple easement for the purpose of railroad construction and operation, not an 'exclusive-use' or other 'near-fee' land interest"; (2) "United States lacked the legal authority to convey to ARRC, under ARTA, any rights in the Sperstad Homestead beyond its 1914 Act easement rights, because the United States did not actually possess broader rights in 1983"; (3) "ARTA did not newly create and grant ARRC an 'exclusive-use easement' across the Sperstad Homestead because previously patented lands do not contain 'unresolved claims of valid existing rights,' and thus were not subject to the new 'exclusive-use easement' created for other land categories in ARTA"; and (4) "[i]f the Court determines that ARTA did convey to ARRC a greater interest than the

---

[40] Docket 85 at 12.
[41] Id. at 13.
[42] Id.

common-law easement that the United States possessed in the Sperstad Homestead, this will constitute an unconstitutional taking of Flying Crown's property without just compensation and due process of law."[43]  The Municipality supports Flying Crown's position, but describes ARRC's interest in the ROW as an "easement for railroad purposes."[44]

Resolution to the overarching question of what interest ARRC possesses in its ROW hinges on two distinct legal issues.  First, what was the nature of the interest reserved by the federal government in the ROW when it issued the 1950 Sperstad Patent? Second, what is the nature of the interest conveyed to ARRC in the ROW pursuant to ARTA?  Each of these questions relies entirely on what property interest Congress intended to convey in the 1914 Act.

## A.    The Federal Government Reserved at Least an "Exclusive-Use Easement" in the 1950 Sperstad Patent Pursuant to the 1914 Act.

ARRC asserts that the railway ROW reserved in the 1950 Sperstad patent, issued pursuant to the 1914 Act, "included rights to exclusive possession and control of all areas within the ROW."[45]  Because the legal scope of a railway ROW is not defined in the 1914 Act, ARRC urges this Court to "(1) look to the meaning of a railroad 'right-of-way' as that term was understood at the time of the 1914 Act; and (2) resolve any ambiguities in favor of the United States as sovereign grantor."[46]

---

[43] Docket 84 at 2.
[44] Docket 86 at 6.
[45] Docket 13 at 12–13.
[46] *Id.* at 14.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                                                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                                                    Page 10

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 10 of 28

Defendants agree with ARRC that the Court must look to case law to determine the commonly understood scope of a railroad's right-of-way. However, Flying Crown alleges that only cases decided after 1871 are relevant due to a Congressional shift in policy concerning land grants to railroads after that year.[47] Flying Crown maintains that a railway easement is no different from an easement as understood under the common law, meaning that it is a nonpossessory interest and entitles the railroad to less than full control.[48]

### (1) Right-of-way as defined in the 1914 Act

At the outset, the Court notes that resolution of this first issue does not require the Court to precisely define the contours of the interest the federal government reserved to itself in the 1950 Sperstad Patent. Ultimately, ARRC asks this Court to declare that its current ROW takes the form of at least an exclusive-use easement as defined in Section 1202(6) of ARTA.[49] That definition specifies that an "exclusive-use easement" affords the easement holder:

> (A)  the exclusive right to use, possess, and enjoy the surface estate of the land subject to this easement for transportation, communication, and transmission purposes and for support functions associated with such purposes;

> (B)  the right to use so much of the subsurface estate of the lands subject to this easement as is necessary for the transportation, communication, and transmission purposes and associated support functions for which the surface of such lands is used;

---

[47] Docket 85 at 16.
[48] *Id.* at 15–16.
[49] Docket 1 at 10.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment    Page 11

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 11 of 28

(C)     Subjacent and lateral support of the lands subject to the easement; and

(D)     The right (in the easement holder's discretion) to fence all or part of the lands subject to this easement and to affix track, fixtures, and structures to such lands and to exclude other persons from all or part of such lands[.][50]

Therefore, the Court need only to determine whether ARRC's interest in the ROW crossing Flying Crown's property gives it the exclusive right to use, possess, and enjoy the *surface* estate of the land for the defined purposes and supportive functions.[51]

Article IV, Section 3, Clause 2 of the United States Constitution gives Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]"  Therefore, when Congress grants an interest in property, it may specify terms or elements different from those that would otherwise apply by virtue of common law.  Congress enacted both the 1914 Act and ARTA pursuant to this constitutional authority.

Turning to the plain language of the 1914 Act, Congress declared that:

in all patents for lands hereafter taken up, entered, or located in the Territory of Alaska there shall be expressed that there is reserved to the United States a **right of way** for the construction of railroads, telegraph, and telephone lines to the

---

[50] 45 U.S.C. § 1202(6).

[51] The Municipality of Anchorage spends nearly the entirety of its brief asserting that ARRC's interest in the ROW is an "Easement for Railroad Purposes."  *See* Docket 86 at 6–30.  The phrase "railroad purpose" is derived from "the Supreme Court's description in *Union Pacific* of the nature of the rights acquired under" the pre-1871 Acts and the 1875 Act.  *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1131 (9th Cir. 2018) (citing to *United States v. Union Pac. R.R. Co.*, 353 U.S. 112, 114 (1957)).  However, the Parties' cross motions for summary judgment do not contest the purpose and use of ARRC's ROW across Flying Crown's property, or ARRC's ability to require a lease incident to its use of the ROW for railroad purposes.  It appears that ARRC is utilizing its ROW to operate a functioning railway, a universally recognized use under the pre-1871 Acts and the 1875 Act.  The Court specifically declined to analyze this aspect of ARRC's interest in the ROW when it denied ENSTAR's and MTA's Motions to Intervene.  *See* Dockets 59; 60.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                              Page 12

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 12 of 28

extent of one hundred feet on either side of the center line of any such road and twenty-five feet on either side of the center line of any such telegraph or telephone lines.[52]

Central to this case is the meaning Congress intended to attach to the phrase "right of way" at the time the statute was enacted. This Court is unaware of any case law squarely defining the contours of the federal government's right-of-way under that Act, and therefore looks to case law interpreting other acts for guidance. Case law distinguishes a railroad right-of-way, although often characterized as an easement, from a traditional private easement and recognizes that the term carries an elevated and particularized meaning in this context.[53] A "simple easement" generally has been used to describe an interest only in the right to use another's land, or an area above or below it, for a particular purpose (such as a right-of-way);[54] while a complete conveyance in all rights associated with the property generally is described as "fee simple."[55] However, there exists a wide range of interests between the two terms depending on the exclusivity of the possession, the duration of the interest, and the completeness of the rights granted. As articulated recently by the Tenth Circuit:

> the degree of exclusivity of the rights conferred by an easement or profit is highly variable. At one extreme, the holder of the easement or profit has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. On the other end of the spectrum,

---

[52] Act of March 12, 1914, 38 Stat. 305 (formerly codified at 43 U.S.C. § 975, *et seq.*) ("1914 Act"), *repealed by* Alaska Railroad Transfer Act, Pub. L. 97-468, Title VI, § 615(a)(1), 96 Stat. 2556, 2577–78 (1983) (emphasis added).

[53] *See e.g.,* Western Union Telegraph Co. v. Pennsylvania R.R. Co., 195 U.S. 540, 570 (1904).

[54] Under RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2(1) (Am. Law Inst. 2000), an easement is a "nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." *See also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining an easement as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.").

[55] *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining fee simple as "the broadest property interest allowed by law").

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                               Page 13

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 13 of 28

the holder of the easement or profit has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries.[56]

A railroad's right-of-way historically has leaned closer to the latter. In *Western Union Telegraph Company v. Pennsylvania Railroad Company*, the Supreme Court held that

> [a] railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. . . . [I]f a railroad's right-of-way was an easement it was one having the attributes of the fee, perpetuity and exclusive use and possession. . . . A railroad's right of way has, therefore, the substantiality of the fee, and it is private property, even to the public, in all else but an interest and benefit in its uses.[57]

The Supreme Court also has been careful to note that the terminology used between courts is less important than the actual property rights and interests described.[58]

Flying Crown agrees that "[w]hen the United States first began supporting railroads with land dedications, it legislatively granted public land in fee to the railroads."[59] However, citing to *Great Northern Railway Company v. United States*,[60] it argues that this practice ended in 1871 and railroads thereafter were granted simple common law easements. In *Great Northern*, the Supreme Court was asked to rule on the narrow question

---

[56] *LKL Assocs., Inc. v. Union Pac. R.R. Co.*, 17 F.4th 1287, 1295 (10th Cir. 2021) (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 cmt. c (Am. Law Inst. 2000)) (internal quotations omitted).

[57] *Western Union*, 195 U.S. 540, 570 (1904) (internal quotation and citation omitted).

[58] *See New Mexico v. U.S. Trust Co. of New York*, 172 U.S. 171, 183 (1898) ("the right acquired by the railroad company, though technically an easement, yet requires for its enjoyment a use of the land permanent in its nature and practically exclusive.") (internal quotation omitted); *see also Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 114 (2014) ("federal and state decisions in this area have not historically depended on 'basic common law principles.' To the contrary, this Court and others have long recognized that in the context of railroad rights of way, traditional property terms like 'fee' and 'easement' do not neatly track common-law definitions.") (Sotomayor, J., dissenting).

[59] Docket 85 at 16.

[60] 315 U.S. 262, 271 (1942).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                Page 14

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 14 of 28

of whether the Great Northern Railway Company possessed oil and mineral rights underlying its right-of-way acquired pursuant to the Act of March 3, 1875, also known as the General Railroad Right-of-Way Act ("1875 Act").[61] The 1875 Act provided that "[t]he right of way through the public lands of the United States is granted to any railroad company" meeting certain requirements.[62] To claim its right-of-way, a railway company was expected to file a proposed map of its rail corridor with a local Department of Interior office, and, upon approval, "all such lands over which such right of way shall pass shall be disposed of subject to the right of way."[63] Analyzing the "language of the Act, its legislative history, its early administrative interpretation, and the construction placed upon it by Congress in subsequent enactments[,]" the Supreme Court ruled that the 1875 Act "clearly grant[ed] only an easement, and not a fee" to the Great Northern Railway Company.[64] Reconciling Congress's clear intent to grant land in fee simple to the railroads prior to 1871, the Court observed that "[a]fter 1871 outright grants of public lands to private railroad companies seem to have been discontinued."[65] The Supreme Court also noted that any ambiguity in a grant should be resolved favorably to the sovereign grantor and went on to find that there was nothing in the statute which clearly and explicitly conveyed mineral rights to the railway companies.[66] The United States therefore retained control of subsurface mineral rights.

---

[61] *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 270 (1942).
[62] 43 U.S.C. § 934.
[63] *Id.* at § 937.
[64] *Great Northern*, 315 U.S. at 277, 271.
[65] *Id.* at 274.
[66] *Id.* at 272, 276–77.

The Supreme Court had chance again to interpret the scope of a railroad's right-of-way under the 1875 Act in *Marvin M. Brandt Revocable Trust v. United States*.[67] This time, the Supreme Court grappled with the question of who possesses the rights to underlying minerals when a railroad abandons its right-of-way: the federal government, or the landowner?[68] The federal government argued that the abandoned railway right-of-way at issue was "tantamount to a limited fee with an implied reversionary interest,"[69] and therefore "vested in the United States when the right of way was relinquished."[70] Relying heavily on its decision in *Great Northern*, the Court rejected the government's characterization and found that the right-of-way was an easement which terminated upon the railroad's abandonment, leaving the landowner's property unburdened.[71] The Supreme Court again explicitly found that cases describing rights-of-way granted prior to 1871 were not controlling due to a major shift in Congressional policy concerning land grants to railroads after that year.[72] This interpretation entitled landowners to the mineral rights upon abandonment of the right-of-way.

Flying Crown asks this Court to adopt a simplistic view of the case law and find that, based on the Supreme Court's ruling in *Brandt*, the United States cannot reserve more than a common law simple easement in a railroad right-of-way under *any* statute enacted after 1871. But *Brandt* does not demand this result. While it is true that the 1875

---

[67] 572 U.S. 93 (2014).
[68] *Id.* at 102–03.
[69] *Id.* at 110.
[70] *Id.* at 102.
[71] *Id.* at 110.
[72] *Id.* at 107.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                Page 16

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 16 of 28

Act unquestionably granted an easement to a qualifying railroad in its right-of-way, rather than an interest in fee simple, the Supreme Court in *Brandt* left unresolved the degree of exclusivity the easement grants the railroad in its right-of-way.[73]

Although not binding on this Court, the Tenth Circuit's decision in *LKL Associates., Inc., v. Union Pacific Railroad Co.*[74] is illustrative to the question of easement exclusivity left open in *Brandt*.[75] In *LKL*, plaintiff Union Pacific Railroad Company ("Union Pacific") charged the defendants rent under a lease that allowed the defendants to continue operating a business on land owned in fee simple, but encumbered by the railroad's right-of-way pursuant to the 1875 Act.[76] After the Supreme Court declared in *Brandt* that a railroad's right-of-way under the 1875 Act is a "nonpossessory" easement, the defendants filed suit to have their leases rescinded and restitution for past rents paid, among other declaratory relief.[77] Recognizing that this case dealt primarily with surface level rights, rather than mineral rights, the Tenth Circuit first analyzed "whether a railroad's 1875 Act right of way includes the right to exclude others."[78] After affirming the

---

[73] *See LKL Assocs., Inc. v. Union Pac. R.R. Co.*, 17 F.4th 1287, 1295 (10th Cir. 2021) ("The Court in *Brandt* also used common law principles to define the essential features of an easement—mainly, that it is a 'nonpossessory right to enter and use and in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.' But the Court left unresolved the degree of exclusivity this right of way affords the grantee.") (internal citations omitted).

[74] 17 F.4th 1287, 1295 (10th Cir. 2021).

[75] The Parties agree that *LKL* is factually akin to the dispute between ARRC and Flying Crown. *See* Dockets 85 at 18; 115 at 1.

[76] *See LKL*, 17 F.4th at 1291.

[77] *Id.* Flying Crown similarly argues that because an easement is by nature "nonpossessory," it cannot be "exclusive-use," because exclusive-use implies "full control." Docket 85 at 15–16. However, ARRC agrees that its interest is nonpossessory. *See* Docket 91-1 at 5. Nonpossessory is an irrelevant characterization in this context because a nonpossessory interest such as a right-of-way can certainly include the right to exclude even the servient owner from using the land. *See* Restatement (Third) of Property: Servitudes § 1.2(1) (Am. Law Inst. 2000).

[78] *LKL*, 17 F.4th at 1294.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                Page 17

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 17 of 28

undisputed fact that the 1875 Act "grants only an easement and not a fee interest," the court then found that this did not preclude a nonpossessory easement from providing a grantee with exclusivity.[79] In other words, "[a]s long as the grantor has not 'clearly and unequivocally relinquished all interest in the subject area,' courts can certainly find that an exclusive easement is not a fee."[80] The court ultimately determined that Union Pacific had the right to exclude defendants from its property pursuant to its right-of-way under the 1875 Act, in congruence with *Great Northern* and *Brandt*, because "[a] railroad easement is exclusive in character."[81]

This Court agrees with the Tenth Circuit's observation that *Brandt* is not particularly illustrative to determining the surface level exclusivity of a railroad's right-of-way.[82] Where it was principally concerned with the rights to the underlying minerals, the Supreme Court in *Brandt* had no occasion to determine whether the federal government could exclude all parties from the surface. It is hard to imagine that an operational railroad would not possess this stick in the bundle, especially in a residential area such as the Flying Crown Subdivision where residents actively use the land burdened by the ROW and safety is of the utmost concern. As described *supra*, ARRC does not ask this Court to determine who possesses the rights to underlying mineral resources or the disposition of its interests upon abandonment. Nor does ARRC request that this Court declare its current interest in

---

[79] *Id.* at 1295.
[80] *Id.* at 1296–97 (citing Jon W. Bruce & James W. Ely, Jr., THE LAW OF EASEMENTS & LICENSES IN LAND § 1:28 (2019)).
[81] *Id.* at 1297.
[82] *See id.* at 1295.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                              Page 18

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 18 of 28

the ROW is held in fee simple.[83]  Although the Court finds that *Brandt* is not necessarily

inapposite to this case, it does find that *Brandt* is of limited import in determining whether

the federal government's interest in the ROW was at least an exclusive-use easement

pursuant to the 1914 Act.

This Court also must recognize the stark differences between the 1875 Act

and the 1914 Act, including the circumstances leading to their enactments.  First, the 1875

Act reserved a right-of-way to qualifying private railroad companies, while the 1914 Act

specifically reserved the ROW to the federal government.[84]  Indeed, the Ninth Circuit noted

in 1971 that the federal Alaska Railroad was the only railroad in the United States wholly

owned and operated by the federal government.[85]  Other courts have recognized this

disparity and refused to find the two statutes comparable on this basis alone.[86]

Second, the development of a railway in the Alaska Territory was unlike any

other infrastructure endeavor in the continental United States.  At its inception, many

private railroad companies attempted and failed to establish a functional railway system in

---

[83]  *See* Docket 1 at 10.  ARRC's position is that the federal government reserved "a ROW equivalent to the type of 'limited fee' described in *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903)," in the 1950 Sperstad Patent.  Docket 13 at 14.  Indeed, the Court notes that subsequent legislative history, Congressional remarks, and the historical underpinnings of the Alaska railroad, discussed *infra*, support a finding that the federal government intended to reserve its ROW in fee simple, pursuant to the 1914 Act. However, the Court need only determine that ARRC's current interest in the ROW is at least paramount to an "exclusive-use easement," as defined by ARTA, which only specifies exclusive rights to the surface and subsurface rights as necessary to support surface uses.  The Court therefore declines to consider whether the federal government's interest in the 1950 Sperstad Patent was reserved in fee simple.

[84]  *Compare* 43 U.S.C. § 934 *with* 1914 Act § 1.

[85]  *United States v. City of Anchorage, State of Alaska*, 437 F.2d 1081, 1082 (9th Cir. 1971).

[86]  *See, e.g., King Cnty. v. Abernathy*, No. C20-0060-RAJ-SKV, 2021 WL 3472379, *6 n.6 (W.D. Wash. July 26, 2021) ("The [1914 Act] likewise authorized the President to 'perform any and all acts in addition to those specifically set out in the statutory language which were necessary to accomplish the purposes and declared objects of the Act.' . . . No such language exists in the 1875 Act.").

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                              Page 19

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 19 of 28

the Territory of Alaska. The Ninth Circuit has recognized that "[a]t the time of the passage of the [1914] Act . . . the interior of Alaska was, for most purposes, completely isolated from the outside world. The construction of a railroad was absolutely essential to the development of the interior."[87] The Ninth Circuit even went as far as to describe the establishment of the federal Alaska Railroad as a "public exigency" and found that the 1914 Act unquestionably reserved lands under navigable waters in fee to the United States.[88] Given the importance of the federal Alaska Railroad to the development of the Territory, and its unique nature as a railway owned exclusively by a sovereign, the Court can only rely on case law interpreting the contours of the 1875 Act so much.

In this case, the Court finds that Congress's interpretation of the 1914 Act in subsequent enactments is more persuasive than case law exclusively interpreting the 1875 Act. In *Great Northern*, on which *Brandt* heavily relies, the Supreme Court found "it is settled that 'subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject.'"[89] As discussed *infra* in Section IV.B. of this Order, the Senate Committee on Commerce, Science, and Transportation concluded that the subsequently enacted ARTA

> would convey to the State a **fee interest** in the 200-foot strip comprising the railroad track right-of-way, amounting to roughly 12,000 acres. This fee estate is recognized by the Committee to be the current interest of the Alaska Railroad derived from common practice and authorized under section 1 of the March 12, 1914 Alaska Railroad Act.[90]

---

[87] *City of Anchorage,* 437 F.2d at 1084.
[88] *Id.* at 1085.
[89] *Great Northern,* 315 U.S. at 277 (citing *Tiger v. W. Inv. Co.*, 221 U.S. 286, 309 (1911)).
[90] S. Rep. No. 97-479, at 8 (1982) (emphasis added).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                Page 20

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 20 of 28

The Committee further explained that "[t]he reported bill . . . ensures conveyance of the track right-of-way in fee so that the State can continue to operate the railroad."[91] Congress in 1982 thus interpreted the 1914 Act as reserving the federal government's ROW in fee simple. Although the Supreme Court in *Brandt* cautioned against relying on the views of a subsequent Congress in interpreting the intent of an earlier one, that remark referred to statutes that did not speak directly to the issue at hand.[92] It is difficult for this Court to simply ignore the statements of Congress directly relating to its intent in enacting ARTA and *in pari materia* with the 1914 Act.[93]

### (2) Resolution of ambiguities

Where land grants are ambiguous, such ambiguity must be resolved in favor of the sovereign grantor.[94] Further, "nothing passes but what is conveyed in clear and explicit language."[95] Flying Crown argues that there is no ambiguity in the 1914 Act or the ROW reservation pursuant to that Act, and therefore this canon of construction is irrelevant.[96] The Court disagrees. A "right-of-way," especially in the context of a railway, without further delineation of rights, is an inherently ambiguous term in property law. The

---

[91] *Id.*

[92] *Brandt*, 572 U.S. at 109.

[93] *See United States v. Freeman*, 44 U.S. 556, 564–65 (1845) ("If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute; if it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.") (internal citations omitted).

[94] *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 272 (1942) ("[t]he Act is also subject to the general rule of construction that any ambiguity in a grant is to be resolved favorably to a sovereign grantor"); *United States v. Union Pac. R.R. Co.*, 353 U.S. 112, 116 (1957) ("[L]and grants are construed favorably to the Government . . . if there are doubts they are resolved for the Government, not against it.").

[95] *Great Northern*, 315 U.S. at 272 (quoting *Caldwell v. United States*, 250 U.S. 14, 20 (1919)).

[96] Docket 85 at 23. The Municipality also argues that ARTA is unambiguous, but agrees that all ambiguity must be resolved in favor of the sovereign grantor. Docket 86 at 7.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                Page 21

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 21 of 28

Parties and this Court have gone to great lengths to parse legislative history and case law to decipher the meaning Congress intended to attach to the phrase "right-of-way" in the 1914 Act, as that phrase is not defined within the statute. Further, the federal government did not clearly or explicitly give away its interest in the exclusive occupancy and use of the ROW in the 1950 Sperstad Patent. Therefore, even if Flying Crown could argue that the *Brandt* decision is persuasive, this Court still would find that the latent ambiguity in the 1950 Sperstad Patent must be resolved in favor of the federal government.

In summary, based on the unique circumstances facing railroad companies in constructing the Alaskan railroad, the interpretation of Congress in subsequent enactments, and the well-settled principle that uncertainty in a land grant from a sovereign grantor must be resolved in favor of that grantor, this Court finds that the federal government reserved at least an exclusive-use easement, as defined by ARTA, in its ROW in the 1950 Sperstad Patent pursuant to the 1914 Act.

**(B)    ARRC Received at Least an "Exclusive-Use" Easement in the ROW Pursuant to ARTA**

Finding that the federal government reserved *at least* an exclusive-use easement in the 1950 Sperstad Patent pursuant to the 1914 Act, the Court now must determine what interest was transferred to ARRC pursuant to ARTA, first via interim conveyance, and later via the 2006 Patent. The Court engages in the same analysis to determine the scope of that interest and looks to the plain language and legislative history of ARTA.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                                    Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                                          Page 22

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 22 of 28

In unanimously reporting S. 1500, the Senate Committee on Commerce, Science, and Transportation declared that the bill, as amended, would "facilitate the transfer of the railroad lands [to the State] by providing for the conveyance of the track right-of-way in fee and an expedited process for adjudicating Native and other third party claims of valid existing rights to other railroad lands."[97]  Taking into account the variety of claims that might arise, Congress identified four categories of conveyances in section 1203(b)(1) of ARTA:  (A) "all rail properties of the Alaska Railroad except any interest in real property" to be delivered by bill of sale to the State; (B) "all rail properties of the Alaska Railroad that are not conveyed pursuant to subparagraph (A) of this paragraph and are not subject to unresolved claims of valid existing rights" to be delivered to the State via interim conveyance; (C) "all rail properties of the Alaska Railroad not conveyed pursuant to subparagraphs (A) or (B) of this paragraph pending conveyances in accordance with the review and settlement or final administrative adjudication of claims of valid existing rights" to be delivered to the State via an exclusive license; and (D) "an exclusive-use easement for that portion of the right-of-way of the Alaska Railroad within the Denali National Park and Preserve" to be conveyed to the State via deed.[98]

The Parties appear to agree that the 1950 Sperstad Patent was transferred to the State pursuant to section 1203(b)(1)(B) because it was transferred via interim

---

[97] S. Rep. No. 97-479, at 1 (1982).
[98] 45 U.S.C. § 1203(b)(1)(A)-(D).

conveyance and not subject to any unresolved claims.[99]  Referring specifically to that

subsection in section 1205(b)(4)(B), ARTA states

> [w]here lands within the right-of-way, or any interest in such lands, have been conveyed from Federal ownership prior to January 14, 1983, or is subject to a claim of valid existing rights by a party other than a Village Corporation, the conveyance to the State of the Federal interest in such properties pursuant to **section 1203(b)(1)(B)** or (2) of this title shall grant not less than an exclusive-use easement in such properties.[100]

Mr. Sperstad was granted the patent to the Sperstad Homestead in 1950, well before

January 1983.  A simple reading of ARTA plainly indicates that Congress authorized the

transfer of its interest in the ROW, as reserved in the 1950 Sperstad Patent, from federal

ownership to ARRC.  ARTA is clear that such interest shall not be less an exclusive-use

easement.  ARRC therefore maintains an exclusive-use easement in the ROW crossing

Flying Crown's property.

The Court's reading is bolstered by subsequent administrative interpretations

of ARTA.  Though not binding, the Court finds the Interior Board of Land Appeals'

("IBLA") interpretation of ARTA in *Peter Slaiby & Rejani Slaiby* ("*Slaiby*") to be

persuasive.[101]  In *Slaiby*, two landowners appealed the Bureau of Land Management's

decision allowing the Secretary of Transportation to grant a patent to ARRC for an

---

[99] *See* Dockets 85 at 29–30; 13 at 10; 86 at 21.
[100] 45 U.S.C. § 1205(b)(4)(B) (emphasis added).  Flying Crown argues that ARRC interprets this section to mean that "for all properties transferred under ARTA, regardless of which category they are in or what their title history includes, ARRC received a near-fee interest in an exclusive-use easement, or the full fee interest."  Docket 85 at 37.  But the Court focuses this Order only on those interim conveyances made pursuant to section 1203(b)(1)(B), which includes the 1950 Sperstad Patent.  It makes no observation concerning the remaining transfer mechanisms.
[101] 186 IBLA 143 (2015).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*                        Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment                                             Page 24

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 24 of 28

exclusive-use easement over their property adjacent to a portion of ARRC's ROW.[102] The

original landowner was granted a patent for 150 acres of land in 1950.[103] However, after

the Good Friday 1964 earthquake, railway trackage needed revision and realignment.[104]

Pursuant to that process, in 1965, the federal Alaska Railroad purchased several parcels of

land from the original landowner as well as a "perpetual right of way and easement [ROW]

to construct, reconstruct, operate and maintain a railroad line and appurtenances."[105] The

Slaibys later acquired a home on the parcels encumbered by the federal Alaska Railroad's

ROW. Counsel for ARRC represented that the ROW had not yet been conveyed pursuant

to ARTA and was still owned by the federal government.[106] The Slaibys claimed that the

interest acquired by the federal government in 1965 was a "limited easement" and urged

the Bureau of Land Management not to grant an exclusive-use easement.[107] Finding the

language of ARTA clear, the IBLA determined that where the landowners' property was

"conveyed out of Federal ownership prior to January 14, 1983, the U.S. Secretary of

Transportation 'shall not grant less than an exclusive-use easement in such properties [to

ARRC].'"[108] In ruling for ARRC, the IBLA interpreted ARTA in the same way the Court

does in this case.

　　　　　Flying Crown's interpretation of ARTA requires this Court to find that "the

exclusive-use easement requirement" contained in section 1205(b)(4)(B) does not apply to

---

[102] *Id.* at 146.
[103] *Id.*
[104] *Id.*
[105] *Id.* (alterations in original).
[106] *Id.*
[107] *Id.*
[108] 186 IBLA at 148 (quoting 45 U.S.C. § 1205(b)(4)(B)) (alteration in original).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*　　　　　Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment　　　　　Page 25

Case 3:20-cv-00232-JMK　 Document 121　 Filed 03/10/22　 Page 25 of 28

the ROW reserved in the 1950 Sperstad Patent.[109] This is difficult where the text of section 1205(b)(4)(B) specifically cites its applicability to interim conveyances made pursuant to section 1203(b)(1)(B), under which Flying Crown states the 1950 Sperstad Patent was transferred. Flying Crown acknowledges this, but it argues that section 1205(b)(4)(B) of ARTA only applies to "such claims to *federally-owned land* that *remained unresolved* at ARTA's enactment" because section 1205(b) broadly specifies adjudicatory procedures and, significantly, includes the phrase "unresolved claims of valid existing rights."[110] Because the federal government's ROW was contained in a patent, it was resolved, and therefore section 1205(b)(4)(B) does not apply.[111]

For this reading to make sense, Flying Crown requires us to find that "as to patented lands . . . all provisions in ARTA that involve the procedures and the requirements for the Secretary to resolve 'claims of valid existing rights' simply have no applicability" because "there are no remaining 'unresolved claims' to patented lands."[112] In other words, the Court must determine that Congress committed a massive drafting error. First, ARTA specifically defines a "claim of valid existing rights" as "any claim to the rail properties of

---

[109] Docket 85 at 33.
[110] *Id.* at 34 (emphasis in original).
[111] *Id.* at 36.
[112] *Id.* Flying Crown appears to base its argument, in part, on the fact that section 1205(b)(4)(B) is found under the subtitle "Review and settlement of claims; administrative adjudication process; management of lands; procedures applicable." 45 U.S.C. § 1205(b). However, section 1205 is broadly entitled "Lands to be Transferred." A "review and settlement process" is specifically identified in subsection (1)(A); however, subsection (B) stands apart. *See* 45 U.S.C. § 1205(b)(2) ("Upon completion of the review and settlement process required by paragraph (1)(A) of this subsection . . . ."). Section 1205(4), which states the purposes of subsections (1)(A) and (B), clarifies that in addition to providing adjudicatory procedures, these subsections are meant to "avoid potential impairment of railroad operations resulting from joint or divided ownership in substantial segments of right-of-way." *Id.* at § 1205(4).

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*  Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment  Page 26

Case 3:20-cv-00232-JMK  Document 121  Filed 03/10/22  Page 26 of 28

the Alaska Railroad on record in the Department of the Interior as of January 13, 1983."[113]

If Congress intended for this definition to apply only to unresolved claims, it would have

said so, as it does in other places in the statute.[114] Further, Flying Crown cherry-picks its

conclusion that section 1205(b)(4)(B) only applies to "claim[s] of valid existing rights," by

ignoring the first half of that subsection, which states that the exclusive-use easement also

applies to "lands within the right-of-way, or any interest in such lands, [that has] been

conveyed from Federal ownership prior to January 14, 1983, *or* is subject to a claim of

valid existing rights[.]"[115] The Court declines to divine a contrary Congressional intent

from the statute where the plain language suggests a clear application.

      Even assuming, *arguendo*, Flying Crown is correct that the exclusive-use

easement mandate contained in section 1205(b)(4)(B) does not apply to the 1950 Sperstad

Patent, it is irrelevant to ARRC's interests in the ROW at issue in this case. This is because

regardless of the Court's interpretation of ARTA, both Parties still agree that ARTA

conveyed precisely the interest that was reserved by the federal government pursuant to the

1914 Act.[116] This Court already has determined that the federal government reserved at

least an exclusive-use easement in the ROW pursuant to that Act. It therefore follows that

its entire interest was transferred to ARRC under ARTA.[117]

---

[113] 45 U.S.C. § 1202(3).

[114] *See, e.g.,* 45 U.S.C. § 1203(b)(1)(B).

[115] 45 U.S.C. § 1205(b)(4)(B) (emphasis added).

[116] *See* Dockets 91-1 at 14–15; 85 at 30.

[117] Flying Crown also asserts that ARRC's interpretation of ARTA is barred by the canon of constitutional avoidance because "it would require the Court to find that ARTA effectuated an unconstitutional taking by giving ARRC greater rights over Flying Crown's property than the federal government actually possessed." Docket 85 at 27. This argument is circular. To determine there was an unconstitutional taking, the Court first would need to adopt Flying Crown's interpretation of ARTA. The Court expressly rejects that interpretation and therefore does not address this argument any further.

*Alaska R. R. Corp. v. Flying Crown Subdivision et al.*      Case No. 3:20-cv-00232-JMK
Order on Cross Motions for Summary Judgment      Page 27

Case 3:20-cv-00232-JMK   Document 121   Filed 03/10/22   Page 27 of 28

The Court's determinations that (1) the United States reserved at least an exclusive-use easement in its right-of-way in the 1950 Sperstad Patent, and (2) this entire interest was transferred to ARRC pursuant to ARTA and perfected in the 2006 Patent, and forecloses the remainder the of Flying Crown's assertions in its Cross Motion for Summary Judgment. Premised on its claim that the United States reserved a common law simple easement in the ROW and therefore could not convey the full panoply of rights articulated under ARTA to ARRC, Flying Crown argues that it is entitled to compensation under the Fifth Amendment of the United States Constitution.[118] The Court has determined that the United States did not transfer an expanded interest to ARRC upon enactment of ARTA. Accordingly, there is no taking, and Flying Crown's constitutional claim fails.

## V. CONCLUSION

The Court finds that ARRC possesses the interest to at least an exclusive-use easement, as defined by ARTA, in its ROW crossing Flying Crown's property, reserved in Federal Patent 50-2006-0363. Based on the foregoing, ARRC's Motion for Summary Judgment at Docket 13 is **GRANTED**. Flying Crown's Cross Motion for Summary Judgment at Docket 84 is **DENIED** without prejudice.

IT IS SO ORDERED this 10th day of March, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[118] Docket 85 at 44–45.