ASHBURN & MASON, P.C.
Donald W. McClintock
Eva R. Gardner
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Fax: (907) 277-8235
E-mail: don@anchorlaw.com
E-mail: eva@anchorlaw.com

THOMAS E. MEACHAM, ATTORNEY AT LAW
Thomas E. Meacham
9500 Prospect Drive
Anchorage, Alaska 99507
Telephone (907)346-1077
E-mail: tmeacham@gci.net

Attorneys for Defendant Flying Crown Subdivision Addition No. 1 and Addition No. 2 Property Owners Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RAILROAD CORPORATION., <br><br> Plaintiff, <br><br> v. <br><br> FLYING CROWN SUBDIVISION ADDITION NO. 1 AND ADDITION NO. 2 PROPERTY OWNERS' ASSOCIATION, a non-profit corporation, <br><br> Defendant, <br><br> MUNICIPALITY OF ANCHORAGE, DEPARTMENT OF LAW, <br><br> Intervenor-Defendant. | Case No. 3:20-cv-00232-JMK <br><br><br> **FLYING CROWN'S MOTION FOR RECONSIDERATION** |

Defendant Flying Crown Subdivision Addition No. 1 and Addition No. 2 Property

Owners Association ("Flying Crown") requests that the Court vacate and reconsider its

April 6, 2022 entry of judgment in this case under Local Rule 7.3(h)(5) and Federal Rules of Civil Procedure 59(e) and 60(b). The Court's March 10, 2022 Order on Cross Motions for Summary Judgment, which was the basis for the entry of judgment, relies on manifest errors of law and fact, and it would be preferable to correct those errors now, rather than after a lengthy appeal process. Specifically, the Court incorrectly assumed that the Alaska Railroad Corporation ("ARRC") is actually using the full right-of-way for a railroad purpose; disregarded the precedent set in *Marvin M. Brandt Revocable Trust v. United States*;[1] and erroneously relied on subsequent legislation and legislative history to interpret the 1914 Act.

I.  **LEGAL STANDARD**

Local Rule 7.3(h)(5) provides that "[a] motion for reconsideration of an order granting a dispositive motion must be filed pursuant to Federal Rule of Civil Procedure 59 or 60." Flying Crown brings its motion under both rules as both are applicable,[2] but primarily invokes Civil Rule 59(e). "Rule 59(e) provides a mechanism by which a trial judge can correct an otherwise erroneous judgment without implicating the appellate process."[3] Errors in the trial court can often be most efficiently corrected by the trial judge, and a motion for reconsideration under Rule 59(e) provides an opportunity to "avoid the

---

[1] 572 U.S. 93 (2014).
[2] *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) ("A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment).").
[3] *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1249 (9th Cir. 1982).

**MOTION FOR RECONSIDERATION** PAGE 2 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 2 of 13

necessity of an appeal."[4]

The Ninth Circuit has held that there are four basic grounds for granting a Rule 59(e) motion:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."[5]

This list is not exclusive; "[s]ince specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion."[6]

## II. ARGUMENT

As explained below, the Court's decision contains manifest errors of law and fact that justify reconsideration and correction.

### A. The Court Incorrectly Assumed that ARRC Is Actually Using the Full Right-of-Way for a Railroad Purpose.

The Court stated that there was no dispute that ARRC was using its right-of-way to operate its railway, or that the permit was "incident to its use of the ROW for railroad purposes."[7] This mistakes the factual record in this case as well as Flying Crown's position. While Flying Crown did not dispute that ARRC is using *a portion* of the right-of-way for railroad purposes, it vigorously disagreed that ARRC was using the *full width*

---

[4] *Id.* (quotation omitted).
[5] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted).
[6] *Id.*
[7] Docket 121 at 12.

**MOTION FOR RECONSIDERATION**  **PAGE 3 OF 13**
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 3 of 13

of the right-of-way for railroad purposes. The factual record supporting this position was undisputed. ARRC did not counter Flying Crown's evidence that in the many decades of the airstrip's operation, ARRC has never needed to use the portion of the right-of-way that is in the airstrip; in fact, it has so little practical use for the airstrip that in the 1970s, it allowed Flying Crown to build a fence along the airstrip's border that has remained in place continuously since that time.[8]

While Flying Crown does not dispute ARRC's ability to use the right-of-way for railroad purposes, it does dispute that ARRC has the right to control portions that are entirely unnecessary to railroad operations and utilize them for revenue-generation. That is the fact pattern at play here. ARRC seeks control of the full right-of-way not so that it can exclude users for safety purposes; it seeks that control so that it can *permit* users—such as Flying Crown, MOA, ENSTAR, and MTA—to use the right-of-way, in exchange for potentially hefty fees. As the U.S. Supreme Court held long ago in *United States v. Denver & Rio Grande Ry. Co.*, when addressing the 1875 Act, railroad reservations were "not a mere bounty for the benefit of the railroads[.]"[9] ARRC's attempted monetization of its right-of-way moreover flies in the face of the Ninth Circuit's express ruling in *Barahona v. Union Pac. R.R. Co.* that for post-1871 easements, a railroad's use of the right-of-way is limited to uses incident to actual railroad operations.[10] The record is clear that ARRC's desire for control over the Flying Crown airstrip is not incident to any railroad purpose.

---

[8] Docket 83 at 2.
[9] 150 U.S. 1, 8 (1893).
[10] 881 F.3d 1122, 1135 (9th Cir. 2018).

**MOTION FOR RECONSIDERATION** PAGE 4 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK Document 123 Filed 04/07/22 Page 4 of 13

The Court overlooked this point in its order and, as a result, reached a faulty conclusion that is not supported by the record on summary judgment.

### B. The Court Disregarded the Precedent Set in *Brandt*.

The Court found that the reservation of a railroad right-of-way in the Sperstad Patent prevents the owner of the land burdened by it from exercising non-interfering uses—an outcome which is foreclosed by the holding in *Marvin M. Brandt Revocable Tr. v. United States*.[11] To reach this incorrect finding, the Court disregarded the majority opinion in *Brandt*, and instead relied on the dissent to distinguish the 1914 Act from its contemporaries[12]--even though the 1914 Act uses essentially the same language as the 1875 Act.

The holding in *Brandt* is controlling as to the nature of the rights reserved in the Sperstad Patent and the non-interfering uses of the patentee. *Brandt* revived the common-law nature of modern railroad easements first made plain in *Great Northern*.[13] Contrary to this Court's characterization of *Brandt*'s holding as limited to the reversionary context, the *Brandt* court in fact phrased its ruling more broadly, including when it explicitly

---

[11] 572 U.S. 93 (2014).
[12] Docket 121 at 14.

[13] *Brandt*, 572 U.S. at 104 (examining the rights of the parties at the time the easement was reserved, rather than when it was abandoned, and concluding that, under *Great Northern*, "the railroad thus had an easement in its right of way over land owned by the Brandts. The essential features of easements . . . are well settled as a matter of property law. An easement is a 'nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement'").

**MOTION FOR RECONSIDERATION**  PAGE 5 OF 13
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 5 of 13

rebutted the dissent:

> The dissent is wrong to conclude that *Great Northern* merely held that 'the right of way did not confer a particular attribute of fee title. . . . To the contrary, the Court specifically rejected the notion that the right of way conferred even a 'limited fee.'[14]

The Court appears to have overlooked that a simple easement *allows* non-interfering uses. Again, as Flying Crown acknowledged at argument, a simple easement for railroad purposes comes with a heavier burden; for example, there may be fewer truly non-interfering uses. But such an approach better balances the expectations of the parties and respects the needs of both the easement holder and the fee owner. The degree of exclusivity applied by the Court in its order unnecessarily overturns these expectations in a manner contrary to *Brandt*. And its reliance on inapposite decisions addressing pre-1871 rights-of-way[15] defies the clear distinction the courts have drawn between the nature of pre- and post-1871 reservations.[16]

---

[14] *Id.* at 105.

[15] Docket 121 at 14 (citing *New Mexico v. United States Trust Co. of New York*, 172 U.S. 171, 176-77 (1898) (examining effect of statutory tax exemption in 1866 railroad company land grant charter, cited and quoted by ARRC to support an "unchanged" and "substantive" post-1875 railroad right to "'more than an ordinary easement'" with "'attributes of fee, perpetuity and exclusive use and possession'"); *Western Union Tel. Co. v. Pennsylvania R.R. Co.*, 195 U.S. 540, 567, 575 (1904) (finding 1866 grant to telegraph companies to construct lines over the public domain did not grant right to enter private property without landowner consent, leaving a multi-state line operator no recourse upon ejectment from railroad right-of-way by the underlying fee owner to bring in a higher-dollar lessee, a situation the Court noted gives "sinister power to railroad companies" while giving "no power to those companies but that which appertains to the ownership of their property")).

[16] *See, e.g., Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122 (9th Cir. 2018).

**MOTION FOR RECONSIDERATION** PAGE 6 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 6 of 13

Overall, in light of *Brandt*'s holding, there is no basis in case law to find that Congress intended to create exclusivity in the 1914 Act, and the Court erred in finding otherwise.

### C. The Court Erroneously Relied on Subsequent Legislation and Legislative History to Interpret the 1914 Act.

The Court relied on a single line in *Great Northern Railway Co. v. United States* to support its use of ARTA to interpret the 1914 Act.[17] In other words, it found that the actions of a subsequent Congress were relevant in interpreting legislation enacted 68 years earlier. But this defies "the oft-repeated warning that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."[18] A passing reference in *Great Northern*—a case decided in 1942—does not give the Court license to ignore this warning. The Court's reliance on ARTA as a tool to interpret the 1914 Act was thus erroneous.

The Court's reliance on the *legislative history* of ARTA is even farther removed from norms of statutory interpretation. Compounding this problem, portions of the legislative history cited by the Court comment on text that did not even make it in the final version of ARTA.

For example, the Court relied heavily on comments made in the Senate Committee on Commerce, Science and Transportation regarding a version of S. 1500 that passed out

---

[17] Docket 121 at 20 (citing *Great Northern*, 315 U.S. 262, 271 (1942)).
[18] *United States v. Lyle*, 742 F.3d 434, 439-40 (9th Cir. 2014) *(*quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117-18 (1980)).

**MOTION FOR RECONSIDERATION** PAGE 7 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 7 of 13

of the committee.[19] This version would have transferred rail properties in one warranty deed of conveyance, noting in its "Transfer Authorization" section that:

> Such deed shall confirm, convey to, and vest in the State all reservations, *except the unexercised reservations to the United States Government for future rights-of-way*, made or required by the [1914 Act, notwithstanding its repeal in another section], regardless of whether such reservations were expressed in a particular patent or other document of title.[20]

The issue of unexercised rights-of-way reserved in federal patents drew considerable public testimony at Committee field hearings in Alaska in August of 1981. Committee member and Alaska Senator Ted Stevens was adamant that rights-of-way would no longer be reserved in federal patents without actual existing construction.[21] Instead, the Committee offered the State future rights-of-way granted "across Federal lands for transportation and related purposes" in accordance with "applicable provisions of law"[22] and certain

---

[19] Docket 121 at 20-21, 23 (citing S. Rep. No. 97-479, at 1, 8 (1982)).

[20] S. 1500, as reported, at §4(a)(2)(A) (June 22, 1982) (emphasis added). The comma in this version clarifies the 1914 Act reference applies to all federal reservations, in a patent or not, in actual use or not, and that Congress was transferring only those reservations in actual use.

[21] Field Hearings at 74 (statement of Senator Stevens) ("I cannot believe that Alaskans would support the concept that those people who homesteaded the State are subject forever to a right-of-way for the Railroad or for telephone or telegraph lines without compensation for their lands. . . . To extend the Federal policy of 1914 into the 1980's as far as the new State ownership of the Railroad, to me, is oppressive. I want everyone to know I'm not going to support that recommendation. That is not going to continue if I have anything to do with it."). When one witness lamented the "enormous" cost "of acquiring property for expansion" the Senator replied, "That's all perfectly right so long as it's not your land. You know, this is their land." *Id.*

[22] S.1500, 97th Cong. §9(a) (as reported by S. Comm. on Commerce, Sci & Transp., June 22, 1982) ("SC 1500").

**MOTION FOR RECONSIDERATION**                                                    PAGE 8 OF 13
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 8 of 13

specifications that were "derived from the historical characteristics of rights-of-way and incidental rights authorized under the 1914 Alaska Railroad Act."[23]

The "Transfer Authorization" section also provided that:

> In such deed, the United States shall warrant to the State that the State receives a fee simple title in the right of way for the main line and branch line tracks and for lands not determined pursuant to section 6 of this Act to be equitably owned by a third party.[24]

Section 6 was the Committee bill's "Lands to be Transferred" section, which directed that all lands "shall be transferred *subject to valid existing rights* and *subject to reconveyance* to satisfy final adjudications of valid existing rights"[25] arising in

> *lands which are among the rail properties* of the Alaska Railroad transferred pursuant to section 4 of this Act. The Secretary of the Interior shall issue written decisions following such adjudication and, *after such reconveyance of legal title to the United States as may be necessary*, shall issue appropriate documents of title.[26]

The next Committee bill subsection required the Secretary of the Interior to determine the "smallest practicable tract (within the meaning of [ANCSA section 3(e)(1)]) on lands which are among the rail properties of the Alaska Railroad."[27] In making such a

---

[23] S. REP. NO. 97-479, at 21 ("Thus, future rights-of-way are thereby made equivalent to the pretransfer rights-of-way of the Alaska Railroad.").

[24] *See* SC 1500 §4(a)(2)(A).

[25] SC 1500 §6(a) (emphasis added).

[26] SC 1500 §6(b)(1) (emphasis added).

[27] SC 1500 §6(b)(2). Section 3(e) of ANCSA is codified at 43 U.S.C. 1602(e) to define "public lands" eligible for selection and conveyance as "all Federal lands and interests therein located in Alaska except: (1) the smallest practicable tract, as determined by the Secretary [of the Interior], enclosing land actually used in connection with the administration of any Federal installation[.]"

**MOTION FOR RECONSIDERATION** PAGE 9 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 9 of 13

determination, the Secretary would identify the precise contours of the unreserved right-of-way on lands selected for conveyance by Alaska Native corporations, covering an estimated 34% of the constructed track line.[28]  To limit the exercise of discretion, the

---

[28] June Hearing, at 211 (statement of William P. Horn, Deputy Undersecretary, U.S. Dep't of the Interior) (noting 4,100 of the 12,000 acres with a constructed right-of-way in 38,000 acres of rail properties "may be subject to possible conveyance to Native corporations").  Just before the Senate Committee met to debate, amend, and report out its version, Interior Department officials testified before a House Subcommittee, stating:

> we as the administration are uncomfortable with the full concept of a warranty deed per se. . . . We would suggest, however, that there may be alternative positions . . . .  Two alternatives we suggest . . . would be to provide in the legislation the amount of land or interest in land minimally necessary to operate the railroad.  Then the legislation could provide the mechanism by which the United States could grant or obtain and grant the necessary interests.
>
> Another approach would be to give the State immediate operational control of the railroad while preserving the opportunity of the United States to recognize third-party rights and insure the quality of land title conveyed to the State.  We envision something along the line of the tentative approval process used with Statehood Act land selections in which we tentatively approve transfer of certain lands and interests to the State, the State takes immediate equitable control of the lands, and we go through the final adjudication of whatever third-party interests might exist.

*Id*. at 209 (statement of Bill Horn).  The official also addressed transfer in fee simple:

> We do not believe that in all instances the State requires a fee simple interest to operate the railroad.  In appropriate circumstances an easement, right-of-way, or other equitable interest should suffice as it has in the past for the federally operated railroad. . . .
>
> Approximately 5,600 acres of the right-of-way now cross lands held by the State or other private interests, primarily homesteaders.  Currently on most of those lands the railroad possesses an easement or a right-of-way across the State or private holdings.

*Id.* at 211 (note 5,600 acres plus 4,100 acres is 9,700 acres, or 80% of the track right-of-way).

**MOTION FOR RECONSIDERATION**  PAGE 10 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 10 of 13

Committee advised the Secretary to consider that "transfer of a right-of-way in fee" that was "in actual use within the meaning" of ANCSA section 3(e)(1) "is necessary for the operation and future expansion of the State-owned railroad".

The Committee bill directed that "reservations for the Alaska Railroad" previously "withheld from Federal patents or other title documents under authority of the March 12, 1914 Alaska Railroad Act, other than unexercised reservations for the expansion of the railroad" simply "pass to the State . . . by direct operation of the" 1914 Act:[29]

> For example, the reservation for a railroad right-of-way in a homestead patent is to be transferred to the State, thereby creating the same title in the State as that currently held by the United States for the railroad.[30]

If the Alaska Railroad needed a fee or near-fee ownership interest in the right-of-way to safely operate,[31] Congress was not sympathetic to that position in deciding which burdens to place on the U.S. as the landowner. At the same time, members showed they were willing to act on concerns in conveying unpatented federal interests in fee simple, even where lands were selected for conveyance to Alaska Native corporations. A state right-of-way over lands where one Native corporation controls the surface and another controls the subsurface—including rock, gravel, minerals, and rights to lease, sell, and access them from the surface—would create "divided ownership in substantial segments

---

[29] *Id.* at 15.

[30] *Id.*

[31] *See* Docket 121 at 18 (finding safety to be a justification for exclusivity). It is, however, undisputed in this case that Flying Crown's airstrip has an unblemished, decades-long history of safe operation alongside the track.

**MOTION FOR RECONSIDERATION**  **PAGE 11 OF 13**
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 11 of 13

of right-of-way" (34%) that had not been patented out of federal ownership.[32]

The legislative history thus does not universally support the Court's conclusion. Equally problematically, aside from the direct transfer of the exercised 1914 reservation in federal homestead patents,[33] *very little of this committee language made it into ARTA.* To resolve the lingering land issues and concerns, an "exclusive-use easement" was created to be the: (1) right-of-way transferred across Denali National Park and Preserve, with specific conditions;[34] (2) standards for future rights-of-way over federal lands, alongside the 1914 right-of-way standards, to the extent possible under applicable law;[35] and, (3) minimum federal interest to be retained in ANCSA conveyances.[36]

The committee comments on which the Court relies certainly do not represent "the statements of Congress"[37] regarding ARTA as it was actually enacted. Even if the Court

---

[32] *See* ARTA §1205(b)(4) and ANCSA, Pub. L. No. 92-203, §14(f), 85 Stat. 704 (1971).

[33] *See* ARTA § 604(c)(1), codified at 45 U.S.C. § 1203(c)(1) ("Interim conveyances and patents issued to the State pursuant to subsection (b) of this section shall confirm, convey and vest in the State all reservations to the United States (whether or not expressed in a particular patent or document of title), except the unexercised reservations to the United States for future rights-of-way made or required by the first section of the Act of March 12, 1914[.]").

[34] *Id*. §§ 603(10), 604(b)(1)(D), 608(d), codified at 45 U.S.C. §§ 1202(10), 1203(b)(1)(D), 1207(d).

[35] *Id*. § 609(b)-(c), formerly codified at 45 U.S.C. § 1208(b)-(c) (2000), repealed in part by Pub. L. No. 108-7, 108th Cong., 1st Sess., § 345(5), 117 Stat. 418 (2003) (striking a provision requiring that reversion "of any portion of any right-of-way *or* exclusive-use easement granted to the State or State-owned railroad . . . occur only as provided in section 610 of this title", which was also repealed (emphasis added)).

[36] *See* ARTA § 606(b)(4)(A)-(B), codified at 45 U.S.C. § 1205(b)(4)(A)-(B).

[37] Docket 121 at 21.

**MOTION FOR RECONSIDERATION** PAGE 12 OF 13
*Alaska Railroad Corp. vs. Flying Crown*, Case No. 3:20-cv-00232-JMK

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 12 of 13

could properly rely on legislative history from a 1982 act to interpret legislation that was passed in 1914 (which it cannot), its reliance on irrelevant portions of the legislative history would still be erroneous.

## III. CONCLUSION

For the foregoing reasons, Flying Crown requests that the Court reconsider and correct its judgment.

DATED April 7, 2022.

By: s/Eva R. Gardner
Eva R. Gardner
Alaska Bar No. 1305017
Donald W. McClintock
Alaska Bar No. 8108061
Thomas E. Meacham
Alaska Bar No. 7111032

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court – District of Alaska by using the CM/ECF system. All participants in Case No. 3:20-cv-000232-JMK who are registered CM/ECF users will be served by the CM/EFC system.

ASHBURN & MASON, P.C.
By: s/ Eva R. Gardner
Eva R. Gardner

**MOTION FOR RECONSIDERATION**  PAGE 13 OF 13
*Alaska Railroad Corp. vs. Flying Crown, Case No. 3:20-cv-00232-JMK*

Case 3:20-cv-00232-JMK   Document 123   Filed 04/07/22   Page 13 of 13